COPY

(26)

Case No. 1:CV-00-2143

Pro se Exhibits Supporting Substantial Claim

Supporting Exhibits / Appointment Of Counsel

Alan T. BROOKS, Appellant,

v.

KYLER, Superintendent; Porterfield, Sgt; Rupinski, C.O.; All defendants are being sued in their official and individual capacity, C.O.

No. 98-7626.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 27, 1999.

Filed Feb. 18, 2000.

State prisoner brought § 1983 action against four prison officials, alleging that he was violently beaten by prison guards in violation of his Eighth Amendment rights. Defendants moved for summary judgment. The United States District Court for the Middle District of Pennsylvania, Edwin M. Kosik, J., granted motion. Prisoner appealed. The Court of Appeals, Becker, Chief Judge, held that: (1) fact that prisoner had only minor injuries did not preclude Eighth Amendment claim, and (2) triable issues existed regarding whether guards acted out of malice or in good faith.

Affirmed in part, reversed and remanded in part.

1. Criminal Law ⇐1213.10(3)

A deliberate failure to provide medical treatment to a prisoner motivated by non-medical factors can present a constitutional claim under the Eighth Amendment. U.S.C.A. Const.Amend. 8.

2. Criminal Law ⇐1213.10(3)

Evidence that state prisoner allegedly beaten by prison guards was denied his initial request to see a physician was insufficient to establish that guards were deliberately indifferent to prisoner's medical needs, as would violate prisoner's Eighth Amendment rights; a nurse passing out prisoner's regular medication looked at prisoner's injuries within minutes of alleged beating, prisoner was treated by prison medical staff that same day, and prisoner presented no evidence of any harm resulting from delay in treatment. U.S.C.A. Const.Amend. 8.

3. Federal Courts ⇐766, 802

Court of Appeals exercises plenary review over a district court's grant of summary judgment and reviews the facts in the light most favorable to the party against whom summary judgment was entered. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

4. Federal Civil Procedure ⇐2552

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Fed.Rules Civ. Proc.Rule 56(c), 28 U.S.C.A.

5. Criminal Law ⇐1213.10(2)

After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified.

6. Criminal Law ⇐1213.10(2)

In a prisoner's excessive force claim under the Eighth Amendment, the central question is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. U.S.C.A. Const.Amend. 8.

7. Federal Civil Procedure ⇐2491.5

For purposes of a prisoner's excessive force claim under the Eighth Amendment, summary judgment in favor of defendant prison guard is not appropriate if it appears that the evidence, viewed in the light most favorable to the prisoner, will support a reliable inference of wantonness in the infliction of pain. U.S.C.A. Const.

Amend. 8; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

8. Criminal Law ⇐1213.10(2)

In determining whether a correctional officer has used excessive force against a prisoner for failing to end his telephone call within allotted time acted out of malice or in good faith to cause harm to prisoner discipline precluded summary judgment on prisoner's excessive force claim under the Eighth Amendment, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. U.S.C.A. Const.Amend. 8.

9. Criminal Law ⇐1213.10(2)

Fact that the only visible injuries to prisoner, who was allegedly beaten by three prison guards for failing to end a phone conversation after allotted time, were scratches on prisoner's face and hands did not preclude prisoner's excessive force claim under the Eighth Amendment; prisoner alleged that he was repeatedly punched in head, slammed into a wall, choked, threatened, and nearly rendered unconscious while handcuffed to a waist restraint belt. U.S.C.A. Const.Amend. 8.

10. Criminal Law ⇐1213.10(2)

The absence of significant resulting injury is not a per se reason for dismissing an Eighth Amendment claim based on alleged wanton and unnecessary use of force against a prisoner. U.S.C.A. Const. Amend. 8.

11. Criminal Law ⇐1213.10(2)

While extent of injuries sustained by prisoner alleging excessive force claim under the Eighth Amendment provides a means of assessing the legitimacy and scope of force used, constitutional touchstone of claim is whether punishment is cruel and unusual. U.S.C.A. Const.

12. Federal Civil Procedure ⇐2491.5

Genuine issues of material fact regarding whether prison guards who beat prisoner for failing to end his telephone call within allotted time acted out of malice or in good faith to cause harm to prisoner for purposes of causing harm to prisoner or in good faith to maintain or restore discipline precluded summary judgment on prisoner's excessive force claim under the Eighth Amendment. U.S.C.A. Const. Amend. 8; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

Alan T. Brooks, Appellant Pro Se, Graterford, PA.

D. Michael Fisher, Attorney General, Howard G. Hopkirk, Deputy Attorney General, Calvin R. Koons, Senior Deputy Attorney General, John G. Knorr, III, Chief Deputy Attorney General, Chief Appellate Litigation Section, Office of the Attorney General, Harrisburg, PA, for Appellees.

Before: BECKER, Chief Judge, McKEE and COWEN, Circuit Judges.

OPINION OF THE COURT

BECKER, Chief Judge.

Appellant Alan T. Brooks, a Pennsylvania state prisoner, brought this suit under 42 U.S.C. § 1983 against four prison officials, claiming, among other things, that they violated his right under the Eighth Amendment to be free from cruel and unusual punishment. Brooks has appealed the District Court's final order granting summary judgment in favor of the defendants. The appeal presents the question whether a prisoner who testifies that he was violently beaten by three prison guards, but who adduces no objective evidence of anything but de minimis injuries, may survive a summary judgment motion on his Eighth Amendment claim. We conclude that he may, and hence we reverse. In so doing, we look to *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), in which the Supreme

Exhibit A-1

**104**   **204 FEDERAL REPORTER, 3d SERIES**

Court concluded that proof of significant injury was not an independent requirement for an Eighth Amendment claim of excessive and wanton force. Following *Hudson's* focus on the force used, as opposed to the injury inflicted, we conclude that although the degree of injury is relevant for any Eighth Amendment analysis, there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force.

**I.**

In May, 1994, Brooks was confined at the State Correctional Institution in Camp Hill, Pennsylvania (SCI–Camp Hill). Defendants, Superintendent Kenneth Kyler, Sergeant Russell Porterfield, Correctional Officer Michael Rupinski, and Correctional Officer Gerald Devlin, were assigned to SCI–Camp Hill during the time in question.[1] Brooks contends that on the evening of May 5, 1994, Officers Devlin and Rupinski and Sergeant Porterfield physically assaulted him while he was attempting to complete an authorized phone call. The facts adduced by Brooks in opposition to the defendants' motion for summary judgment are as follows.

According to Brooks, before the assault took place, Devlin and Rupinski came to his cell in the isolation confinement unit and told him that he had been approved for a legal phone call. They then handcuffed him to a waist restraint belt and conducted a pat down search. After being escorted to another cell, Brooks placed his blood pressure. The nurse told Brooks to file a grievance. Brooks claims that shortly thereafter he, as well as other inmates, saw Devlin, Rupinski, and Porterfield congregating with a lieutenant in what appeared to be an attempt to cover up the assault. When the lieutenant passed Brooks's cell roughly thirty minutes later, Brooks told him what had happened. The lieutenant allegedly blood pressure remained very high for two to three weeks after the alleged assault.[2] Brooks also alleges that he was given medication for anxiety, stress, and depression as a result of being attacked.[3]

[1-4] Based on the described events, Brooks commenced this pro se action claiming, among other things, that the defendants' actions violated the Eighth Amendment's prohibition against the use of excessive force.[4] The defendants filed an answer denying the allegations of the complaint and, after discovery, moved for summary judgment. Brooks responded to the motion by submitting an affidavit setforth the familiar standard of review in the margin.[5]

told Brooks that he did not believe him and walked away. When the shift changed, Brooks, upon his request, was examined and treated by a physician and, the following day, received various pain medications. Brooks maintains that his blood pressure remained very high for two to three weeks after the alleged assault.[2] Brooks also alleges that he was given medication for anxiety, stress, and depression as a result of being attacked.[3]

call. Approximately ten minutes later, Devlin told Brooks to terminate his conversation. Brooks maintains that he acknowledged the directive but that less than a minute after Devlin issued his order, and while he was in the process of hanging up, Sergeant Porterfield pushed Devlin aside, ran into the cell, and pushed down the telephone receiver.

When Brooks turned and asked Devlin what was happening, Porterfield is said to have struck the right side of Brooks's head with his fist, and then to have continued with more punches. Brooks, still handcuffed to the waist restraint belt, fell face down as Porterfield allegedly continued to punch him in the head while Devlin and Rupinski stomped on his back and neck. As Porterfield continued punching him in the back of the head, Brooks represents that he went "unconscious semi-conscious," and that several minutes later, Rupinski placed him in leg shackles. According to Brooks, he was then raised about four feet from the floor by the leg shackles' chains and waist restraint belt, and slammed into a cell wall. At that point, Porterfield allegedly began choking Brooks with both hands, nearly rendering Brooks unconscious. As he was choking Brooks, Porterfield is said to have threatened to kill Brooks and to have told him that "no one will ever find out." Finally, Brooks alleges that, after the attack, the officers transported him back to his cell where he was subjected to further physical and verbal abuse prior to being unshackled.

As a result of the alleged attack, Brooks suffered injuries including abrasions (or "scratches" as the defendants call them) on his neck and hands. When the assault ended, Brooks requested to see the shift commander and to receive medical treatment. A nurse arrived five minutes later and gave Brooks his daily medication for a previously diagnosed condition of high blood pressure. The nurse told Brooks to file a grievance. Brooks claims that shortly thereafter he, as well as other inmates, saw Devlin, Rupinski, and Porterfield congregating with a lieutenant in what appeared to be an attempt to cover up the assault. When the lieutenant passed Brooks's cell roughly thirty minutes later, Brooks told him what had happened. The lieutenant allegedly

---

1. Although Devlin's name does not appear in the caption, he was a defendant in the District Court, and summary judgment was granted in his favor.

**BROOKS v. KYLER**   **105**
Cite as 204 F.3d 102 (3rd Cir. 2000)

ting forth his version of the events and arguing that he had been provided with inadequate discovery. The District Court found that Brooks's claims of being violently beaten by three correctional officers were unsupported by the medical evidence:

Although there are material facts in dispute regarding the underlying cause and events at issue, it is apparent that the type of vicious, prolonged attack alleged by Brooks would have resulted in far greater injuries than those which he indisputably sustained.

Accordingly, the Court entered an order granting summary judgment in favor of the defendants. Brooks now appeals. The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1342. We have jurisdiction under 28 U.S.C. § 1291. We set forth the familiar standard of review in the margin.[5]

2. Defendants have submitted the declaration of SCI–Huntingdon Medical Records Technician Sharon Wolfe to the effect that Brooks's institutional medical records show that: Brooks's blood pressure was not checked on the date of the incident contrary to Brooks's allegations; Brooks had a history of high blood pressure; and Brooks was prescribed Vistaril on March 29, 1994, prior to the events at issue. See Appellees' Appendix at SA-69, ¶¶ 11-14. Given summary judgment posture, we construe this disputed fact in the light most favorable to plaintiff.

3. Brooks apparently contacted Superintendent Kyler and filed a grievance. Two inhouse investigations were conducted and Brooks was cited for misconduct against Porterfield and for failing to obey an order. After a hearing, Brooks was found guilty of both charges and was sanctioned to 140 days in solitary confinement.

4. Brooks also alleges that the defendants were deliberately indifferent to his medical needs, that his due process rights were violated, that his request to file criminal charges against correctional officers was improperly denied, and that he was provided insufficient discovery. We agree with the District Court that Brooks cannot survive summary judgment as to these claims. Although a deliberate failure to provide medical treatment motivated by non-medical factors can present a constitutional claim, *see Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993), in this case, it is uncontroverted that a nurse passing out medications looked at Brooks's injuries within minutes of the alleged beating, and that Brooks was treated by prison medical staff on the same day. Moreover, he presented no evidence of any harm resulting from a delay in medical treatment. *See Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious."). There was no evidence to the effect that officers who did not immediately grant his request for a doctor thought that Brooks needed immediate medical treatment, or that the temporary denial "exposed[d] the inmate 'to undue suffering or the threat of tangible residual injury.'" *Monmouth Cty. Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.1987) (citations omitted).

5. We exercise plenary review over a District Court's grant of summary judgment and review the facts in the light most favorable to the party against whom summary judgment was entered. *See Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 146 (3d Cir.1993). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See F.R.C.P. 56(c); Celotex*

**106**

made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (citations omitted).

In support of their motion for summary judgment, the defendants maintain that they employed only the minimal force necessary to protect their safety and institutional security, as we describe in the margin.[6] They also rely on two internal investigations which concluded that Brooks's claims of excessive force were unfounded. *See* Appellees' Appendix at SA–88–9, ¶¶ 4–7. On this evidence, the defendants assert that they are entitled to summary judgment. While these considerations support the defendants' position, and might well lead to the defendants' verdict at trial, they are controverted by facts adduced by Brooks. If Brooks is believed, while the application of some force may have been needed to reign in Brooks's apparently overtime telephone call, he was shackled at the time so that the extent of his threat to staff would not have been great.

What the appeal turns on then, under the Whitley factors, is the defendants' third argument that the medical evidence in the record does not support Brooks's allegation that he was violently beaten. They contend that Brooks's visible injuries, which include a few scratches to his neck and wrists, were *de minimis* and create a presumption that the force used against him was inadequate to state an Eighth Amendment claim:

against the wall, spun around, and grabbed Porterfield's shirt. *See id.* at ¶ 10. With the assistance of Devlin and Rupinski, Porterfield states that he then restrained Brooks and shackled Brooks's legs. *See id.* at ¶ 11. Finally, Porterfield denies each of Brooks's allegations of verbal and physical abuse, adding that Brooks remained conscious throughout the entire incident and was issued a misconduct for assault and refusing to obey an order. *See id.* at ¶¶ 16–26. Devlin and Rupinski also deny Brooks's allegations of excessive physical abuse and substantiate the version of events Porterfield set forth in his sworn declaration.

II.

A.

[5–7] After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. *See Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322, 106 S.Ct. 1078; *see also Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir.1983) (holding that wantonness exists when a prison guard intends to harm an inmate).

[8] In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts

*Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

6. In his declaration, Porterfield states that after Brooks ignored three orders to hang up the telephone, Porterfield entered the cell and terminated the conversation. *See* Appellees' Appendix at SA–59–60, ¶¶ 3–9. Thereafter, Porterfield contends, Brooks threw the phone

---

**BROOKS v. KYLER**   **107**
Cite as 204 F.3d 102 (3rd Cir. 2000)

[T]he undisputed medical evidence is use of force could be constitutionally shows that the only injuries to his significant.
neck and hands. Even assuming that 
the corrections officials were not justi-    We need not now resolve whether *de*
fied in using force against Brooks, he   *minimis* force would support a constitu-
has failed to present any medical evi-   tional claim in this case, however, because
dence which would demonstrate that he   Brooks's allegations rise far above the *de*
sustained anything more than *de min-*   *minimis* level. Three correctional officers
*imis* injuries.                         allegedly assaulted Brooks by repeatedly
(Brief of Appellees, p. 20).             punching him in the head, stomping on his
                                         back and neck, slamming him into a wall,
B.                                       choking him, threatening him, and nearly
                                         rendering him unconscious—all while he
The Supreme Court case most on point     was handcuffed to a waist restraint belt
is *Hudson v. McMillian*. In *Hudson*, an   and, at some points, even restrained by leg
inmate sued after an alleged assault in   shackles—simply because he did not
which he suffered minor bruises and swell-   promptly respond to an order to end a
ing of his face, mouth, and lip, as well as a   phone call. If a jury believes Brooks's
cracked dental plate. *See* 503 U.S. 1, 4,   version of the facts, there is no question
112 S.Ct. 995, 117 L.Ed.2d 156 (1992).   that the defendants' use of force was ex-
The defendants in that case argued that   cessive in light of the circumstances con-
these injuries were "minor" and therefore   fronting them.
could not be redressed through an Eighth
Amendment suit, but the Court insisted               C.
that "[t]he dissent's theory that . . . an
inmate who alleges excessive use of force   [9] The defendants claim that Brooks's
[must] show serious injury *in addition to*   evidence does not support his claim, and
the unnecessary and wanton infliction of   that we cannot rely on his declarations
pain misapplies *Wilson* and ignores the   because there is a requirement of objective
body of our Eighth Amendment jurispru-   or independent proof of something more
dence." *Id.* at 10, 112 S.Ct. 995. There-   than *de minimis* injury in order to end
fore, *Hudson* primarily stands for the   this kind of Eighth Amendment claim.
proposition that a showing of "significant"   The absence of medical evidence support-
or "serious" injury is not necessary to   ing Brooks's allegations of being violently
make an Eighth Amendment claim. *Id.* at   beaten is conclusive proof, they submit,
8, 112 S.Ct. 995.                        that the force used was *de minimis* by
                                         constitutional standards. In granting
Hudson dictates that we must assess the   summary judgment in favor of the defen-
degree of force employed in relation to the   dants, the District Court endorsed this
apparent need for it. In discussing this   view. The Court's conclusion finds sup-
balance the Court used language indicating   port in an opinion of the Court of Appeals
that *de minimis* force may, in extreme   for the Fourth Circuit, which decided in a
instances, violate the Eighth Amendment.   similar case (but with less egregious alle-
The statement in *Hudson* that there is no   gations) that evidence of only *de minimis*
constitutional violation for "*de minimis*   injury provided "conclusive evidence" that
uses of physical force, provided that the   only *de minimis* force was used. *Norman
use of force is not of a sort repugnant to   v. Taylor*, 25 F.3d 1259 (4th Cir.1994) (en
the conscience of mankind," *id.* at 9–10,   banc). Focusing on the following passage
112 S.Ct. 995 (citations omitted), counsels   in *Hudson*:
that, where the force is "repugnant to the   The blows directed at Hudson . . . are
conscience of mankind," even a *de minim-*   not *de minimis* for Eighth Amendment
                                         purposes. The extent of Hudson's inju-

ries thus provides no basis for dismissal....

*Id.* at 1282 (quoting *Hudson,* 503 U.S. at 10, 112 S.Ct. 995), the *Norman* court concluded that the conjunction of these sentences negatively implied that certain injuries could be so insignificant as to warrant dismissal.

[10, 11] We disagree. Although the *Norman* reading is plausible, drawing instruction from Supreme Court passages through the use of the negative pregnant is risky and unsatisfactory. We find the better reading of these sentences to be the more straightforward one, drawn from the general teaching of *Hudson*: i.e., the absence of significant resulting injury is not a per se reason for dismissing a claim based on alleged wanton and unnecessary use of force against a prisoner. Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used (the blows). "[T]he constitutional touchstone is whether punishment is cruel and unusual." *Hudson,* 503 U.S. at 11, 112 S.Ct. 995 (emphasis added).

We acknowledge that *Hudson* itself leaves open the possibility that there is some minimum amount of injury required to make a wanton infliction of force claim. However, a thorough probe of the *Hudson* opinion indicates that the absence of proof of minor or significant injury should not mandate dismissal. As we read the opinion, the Supreme Court is committed to an Eighth Amendment which protects against cruel and unusual force, not merely cruel and unusual *force* that results in sufficient *injury.* In *Hudson,* the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot

survive without evidence that a deprivation was "harmful enough" (because contemporary standards of decency do not require that the government give succor to the medical and maintenance needs of inmates), the latter kind of claim has no such requirement:

When prison officials use force to cause harm, sadistically and maliciously, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Id.* at 9, 112 S.Ct. 995.

Requiring objective or independent proof of minor or significant injury, would ignore this teaching and place protection from wanton force, at the hub of the Eighth Amendment. *See Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir.1993) ("No actual injury needs to be proven to state a viable Eighth Amendment claim."). *But see Gomez v. Chandler,* 163 F.3d 921, 924 (5th Cir.1999) ("[T]o support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than *de minimis* physical injury."). This is not to say, as the *Hudson* court observed, that the degree of resulting injury is not highly relevant to the determination of the unreasonableness of the force used; rather, it merely says that the absence of objective proof of non-*de minimis* injury does not alone warrant dismissal. If we were to adopt the District Court's reasoning, a prisoner could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted in visible (or palpable or diagnosable) injuries that were *de minimis*.[7]

---

7. In his concurring opinion in *Hudson,* Justice Blackmun observed that requiring significant (i.e., externally observable) injury would not

constrain prison officials from lashing prisoners with leather straps, whipping them with rubber hoses, beating them with naked fists, shocking them with electric currents, asphyxiating them short of death, intention-

ally exposing them to undue heat or cold, or forcibly injecting them with psychosis-inducing drugs.

*Hudson,* 503 U.S. at 14, 112 S.Ct. 995 (Blackmun, J., concurring in the judgment).

We note in this regard that Brooks cannot seek independent medical advice from a specialist or his personal physician to corroborate his allegations regarding his injuries (or that he suffered from high blood pressure as a result of the attack, *see supra* n. 2). There-

---

In sum, in light of *Hudson,* the District Court's ruling cannot stand. The defendants' acts are not shielded from constitutional scrutiny simply because Brooks did not proffer objective evidence of more than *de minimis* injuries. We have, throughout the opinion, used the language of *de minimis,* minor, and significant injury as if there were such categories, because the problem presented to us by the District Court, and the Fourth Circuit's opinion in *Norman,* and the defendants, required us to respond to their effort to make such delineations. However, we do not deem these differences constitutionally significant; rather, an essential aspect of our holding is that a plaintiff's claim does not turn on these definitions.

[12] Therefore, our opinion should not be read to conclude that the superficial lacerations and abrasions that Brooks indisputably suffered were *de minimis* or minor. Regardless of the category of the injury, Brooks adduced evidence of the use of wanton, unnecessary force resulting in severe pain. This creates a disputed issue of material fact for the trier of fact to resolve. Accepting Brooks's allegations as true, as we must, a jury could find that the defendants acted not merely in good faith to maintain or restore discipline, but rather out of malice for the very purpose of causing harm. *See Hudson,* 503 U.S. at 7, 112 S.Ct. 995. On this record, we cannot say as a matter of law, viewing the facts in the light most favorable to Brooks, that excessive force was not used. Accordingly, it was improper to grant summary judgment on this claim.

### D.

We will reverse the District Court's judgment with respect to the Eighth Amendment excessive force claim and remand the case for further proceedings consistent with this opinion. In all other respects, the judgement of the District Court will be affirmed.



Dana HEDGES; George Hedges, on behalf of C.D. Minor, Appellants

v.

Ralph MUSCO, Individually and as Principal of Northern Highlands Regional High School; Greg McDonald; Cathy Kiely; Northern Highlands Regional High School Board of Education; Alan Geisenheimer, individually and as President and a member of the Northern Highlands Regional High School Board of Education; William Beisswanger, individually and as President and a member of the Northern Highlands Regional High School Board of Education; Mary Laurent; Barclay Blayman; Harold De Niear; Lynnette Krueger; Patricia Dubie; Linda Kempey; Nora Oliver; Tina Malizia; Neal Strohmeyer, individually and as members of the Northern Highlands Regional High School

---

fore, when courts do focus on the injury, it is important that they recognize that "an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate 'record evidence' on his behalf . . . . [U]nder these circumstances, his affidavits . . . are about the best that can be expected from him [at the summary judgment phase of] the proceedings." *Norman v. Taylor,* 25 F.3d 1259, 1265 (4th Cir.1994) (Hall, J., dissenting).

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**INMATE INJURY - ASSESSMENT AND FOLLOWUP**
(Medical)

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| ALP | Leann, John | 06038-041 |

| 4. Injured's Duty Assignment | 5. Housing Assignment | 6. Date and Time of Injury |
|---|---|---|
| Camp Janitor | III A | 9/29/99  12:45 |

| 7. Where Did Injury Happen (Be specific as to location) | Work Related? | 8. Date and Time Reported for Treatment |
|---|---|---|
| III A | ☐ Yes ☒ No | 9/29/99  13:05 |

9. Subjective: (Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)

"The unit manager said 'Fuck you you're getting a cellie' and started hitting me on the head with his keys."

Signature of Patient _____

10. Objective: (Observations or Findings from Examination)

X-Rays Taken ____  X-Ray Results ____  Not Indicated ☒

Head: Numerous small cuts all over head. Mild bleeding lateral side of ® eye. Small cut ® eye. PERRL. No other injuries noted.

11. Assessment: (Analysis of Facts Based on Subjective and Objective Data)

Mild superficial abrasions throughout head

12. Plan: (Diagnostic Procedures with Results, Treatment and Recommended Follow-up)

① Head abrasions cleaned c̄ peroxide. Antibiotic ointment applied
② Band aid
③ Alert medical staff if any problems arise.

13. This Injury Required:
- ☐ a. No Medical Attention
- ☒ b. Minor First Aid
- ☐ c. Hospitalization
- ☐ d. Other (explain)
- ☐ e. Medically Unassigned
- ☐ f. Civilian First Aid Only
- ☐ g. Civilian Referred to Community Physician

Signature of Physician or Physician Assistant: Rosa, PA

Self Carboned Form — If ballpoint pen is used, PRESS HARD

Original — Medical File
Canary — Safety
Pink — Work Supervisor (Work related only)

Defendant's copy portion of discovery material / Dist. Ct. No. 4:99 CR 230 Williamsport, PA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA



| | |
|---|---|
| JOHN CHARLES KENNEY, | CIVIL ACTION NO. 1:CV-00-2143 |
| Plaintiff | (Judge Ranbo) |
| v. | (Magistrate Judge Blewitt) |
| JAKE MENDEZ, Warden, et al., | FILED SCRANTON |
| Defendants | DEC 2 2 2000 |

ORDER

PER _____ DEPUTY CLERK

AND NOW, this 22nd day of December, 2000, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Leave to Proceed In Forma Pauperis (**Doc. 2**) is construed as a motion to proceed without full prepayment of fees and costs.

2. Said Motion is **GRANTED**.

3. The Clerk of Court is directed to serve Plaintiff's Complaint (**Doc. 1**) in accordance with Rule 4 of the Federal Rules of Civil Procedure. The Defendants are requested to waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.[1]

THOMAS M. BLEWITT
United States Magistrate Judge

Dated: December 22, 2000

Exhibit A-3

---

1. The Marshal will send the form Notice of Lawsuit and Request for Waiver of Service of Summons to each defendant.

Attachment list

# "Cop Out" Request

Monday, March 19, 2001

Dear, Mr. K.M. Sullivan: (Paralegal / Legal Dept.)
RE: John Charles Kenney v. Jake Mendez, et al.
In re: Inmate's Request For Use Of A Typewriter

Sir, due to the ongoing civil litigation, I am requesting to use an electronic typewriter (similar or same to those available to inmates in the general population). Because, the (3) three-inch flimsy plastic "fillit" ink pens are wholly insufficient, thus inadequate for me to attempt, or file motions to and from the Court. Resulting in denial of access to the Courts. I am in isolation segregation, it is impossible for me to file such motions under these conditions, absent the use of an electric-typewriter. The stationery supplies in isolation-segregation here at Allenwood USP are insufficient to file such motions during the course of ongoing civil-litigation. Therefore, it is reasonably necessary for me to have access to an electric-typewriter.

Respectfully requested,
by:

_Kenney_ pro se

Mr. John Charles Kenney, pro se
Register No. 00000-000

cc: jck

cc: Hon. Judge Kambo
Harrisburg Division

cc: Mr. Donovan
Lewisburg

Exhibit A-4