ORIGINAL

MCC:JJT:mel:2001V00126

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CHARLES KENNEY,
        Plaintiff

        v.                        Civil No.  1:CV-00-2143
                                (McClure, J.)
JAKE MENDEZ;                  (Blewitt, M.J.)
JESUS "JESSE" GONZALEZ;
JAMES "JIMMY" SCARBOROUGH; and
KELLY M. KEISER,
        Defendants

FILED
WILLIAMSPORT, PA

MAR 0 4 2002

MARY E. D'ANDREA, CLERK
Per _____
     Deputy Clerk

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS**

    John Charles Kenney is an inmate at USP Allenwood.  On December 12, 2000, he initiated this <u>Bivens</u> action against four USP Allenwood staff members:  Jake Mendez, Warden; Jesse Gonzalez, former Unit Manager; Kelly Keiser, Case Manager; and James Scarborough, former Correctional Officer.  Kenney seeks compensatory damages for injuries he incurred while allegedly being assaulted by staff on September 29, 1999.  An answer to the complaint was filed on September 7, 2001.  On February 15, 2002, a motion for judgment on the pleadings was filed on behalf of defendants.  This brief is submitted in support of defendants' motion.

<u>Statement of Facts</u>

A.    <u>Facts As Alleged by Plaintiff in the Complaint</u>

    According to the complaint, Kenney was viciously attacked and brutally beaten on September 29, 1999, in the Unit III office

area of USP Allenwood by defendants Gonzalez and Scarborough. Specifically, Kenney claims that, while his limbs were pinned down by Officer Scarborough, he was beaten about the head and face with large sharp metal keys by Unit Manager Gonzalez. Case Manager Keiser, who stood only a few feet away, observed the attack and allegedly failed to protect Kenney. There are no allegations against Warden Mendez. (See Compl., passim.)

Kenney was subsequently treated by medical staff for "mild superficial abrasions throughout the head." (See Injury Exhibit to Compl.) As relief, he seeks $4 million in monetary damages "for the physical injuries that defendants . . . inflicted upon [him]" and an additional $4 million for the emotional injuries he suffers as a result of the physical injuries sustained. (Compl., p. 3.)

B.   **Exhaustion of Administrative Remedies**

The Bureau of Prisons has established an administrative remedy procedure where inmates can seek formal review of any complaint regarding any aspect of their imprisonment. This process involves the filing of a request for administrative remedy to the Warden of the institution where the inmate is confined within *twenty* days following the date on which the basis for the complaint occurred. 28 C.F.R. § 542.14(a). In the event the inmate is dissatisfied with the Warden's response, he may file an appeal to the Regional Director within twenty days. 28

2

C.F.R. § 542.15(a). The final step in the administrative remedy process is an appeal to the General Counsel within thirty days of the Regional Director's response. Id. No administrative remedy appeal is considered to have been finally exhausted until considered by the General Counsel. 28 C.F.R. §§ 542.14, 542.15.

In the ordinary course of business, computerized indexes of all administrative appeals filed by inmates are maintained by the Regional and Central Offices so that rapid verification may be made as to whether an inmate has exhausted administrative appeals on a particular issue. (Exh. 1, Decl. of S. Albert-Blosser, ¶ 5.) A review of these computerized indexes reveals that Kenney has filed thirty-one administrative remedies, three of which relate to an alleged assault by a staff member. The first, an administrative remedy request to the Warden, was received on October 13, 2000, but rejected the same day for being untimely. (Id. ¶ 8.) Kenney thereafter filed a second and then a third administrative remedy request with the Regional Director and General Counsel in an effort to exhaust the issue of his complaint. However, these two requests were also rejected as untimely. (Id. ¶ 9.) In sum, Kenney has not exhausted his administrative remedies regarding the issue presented in his complaint.

## Questions Presented

Should judgment be granted to defendants because: (1) Kenney failed to exhaust his administrative remedies

3

under the Prison Litigation Reform Act; and (2) the doctrine of <u>respondeat</u> <u>superior</u> cannot form the basis of liability in a <u>Bivens</u> action?

**Argument**

1. **Fulton Has Failed To Exhaust His Administrative Remedies.**

The Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a), provides that "no action shall be brought with respect to prior conditions under . . . any . . . Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that this provision is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, ___ U.S. ___, 2002 WL 261683, *10 (Feb. 26, 2002)(copy attached); <u>Booth v. Churner</u>, 531 U.S. 956 (2001).

As demonstrated above, <u>see</u> text <u>supra</u> at 3, Kenney's attempts at exhaustion were made more than a year after the alleged assault upon him and, as such, were rejected as untimely. Section 1997e(a) requires that Kenney's federal claim be dismissed for the failure to exhaust administrative remedies. See <u>Ahmed v. Sromovski</u>, 103 F. Supp.2d 838 (E.D. Pa. 2000)(the failure to complete the administrative remedy process when an administrative appeal was filed untimely required dismissal of

4

the lawsuit under § 1997e.) Therefore, judgment in favor of defendants is appropriate.

2. **Defendant Mendez, As a Supervisory Official, Is Not Personally Liable in a Bivens Action under the Doctrine of Respondeat Superior.**

Warden Mendez is listed as a defendant to this action in the caption and in the "Defendants" section of his form complaint. However, there is no mention of the Warden in the "Statement of Claim" or "Relief" sections of the complaint. To the extent the complaint is read as alleging liability by virtue of the Warden's position, it is well settled that the doctrine of respondeat superior cannot form the basis of a Bivens claim. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Robertson v. Sichel, 127 U.S. 507, 515-17 (1888); Farmer v. Carlson, 685 F. Supp. 1335, 1338 (M.D. Pa. 1988) (Nealon, C.J.); Fayerweather v. Bell, 447 F. Supp. 913 (M.D. Pa. 1978) (Herman, J.). Cf. Young v. Quinlan, 960 F.2d 351, 358, n.14 (3d Cir. 1992). In Haynesworth v. Miller, 820 F.2d 245 (D.C. Cir. 1987), this proposition was concisely explained:

> [I]n order to find a supervisory official personally liable in damages for the unconstitutional [or otherwise wrongful] acts of his subordinate, it must be shown that he was responsible for supervising the wrongdoer; that a duty to instruct the subordinate to prevent constitutional [or other harm arose from the surrounding circumstances; and that, as a result of the official's failure to instruct, the plaintiff was harmed in the manner threatened.

5

Id. at 1262.  See generally Farmer v. Brennan, 511 U.S. 825, 837 (1994) (a prison official cannot be found liable under the eighth amendment unless he knows of and disregards an excessive risk to an inmate's health or safety).

Furthermore, personal involvement or some affirmative action on the part of a defendant is necessary before he may be found liable for a civil rights violation.  See Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988); Stoneking v. Bradford Area School District, 882 F.2d 720, 729-30 (3d Cir. 1980); Flanagan v. Shively, 783 F. Supp. 922 (M.D. Pa. 1992) (McClure, J.), aff'd, 980 F.2d 722 (3d Cir. 1992); Farmer v. Carlson, 685 F. Supp. 1335 (M.D. Pa. 1988) (Nealon, C.J.).

Thus, to impose liability in a Bivens action, Kenney must plead: (1) that the Warden had contemporaneous knowledge of the offending conduct and (2) some set of circumstances to demonstrate that the Warden approved of the conduct.  Chinchello v. Fenton, 805 F.2d 126, 133-34 (3d Cir. 1986).  Kenney fails to plead any "affirmative link" between the Warden's "personal participation, his exercise of control or direction, or his failure to supervise," with dismissal therefore appropriate. McKay v. Hammock, 730 F.2d 1367, 1374 (10th Cir. 1984).  The fact that the Warden holds a supervisory position does not in and of

6

itself expose him to <u>Bivens</u> liability.  Therefore, Warden Mendez should be granted judgment in his favor.

## Conclusion

For the above stated reasons, defendants' motion for partial judgment on the pleadings should be granted with a certification that any appeal would be deemed frivolous, lacking in probable cause and not taken in good faith.

>Respectfully submitted,
>
>MARTIN C. CARLSON
>United States Attorney
>
>*[signature: Joseph J. Terz]*
>
>JOSEPH J. TERZ
>Assistant U.S. Attorney
>MICHELE E. LINCALIS
>Paralegal Specialist
>316 Federal Building
>240 West Third Street
>Williamsport, PA  17703

Date:  March 4, 2002

2002 WL 261683
--- S.Ct. ---
(Cite as: 2002 WL 261683 (U.S.))

Page 1

Only the Westlaw citation is currently available.

Supreme Court of the United States

Correction Officer PORTER, et al., Petitioners,
v.
Ronald NUSSLE.

No. 00-853.

Argued Jan. 14, 2002.
Decided Feb. 26, 2002.

State inmate who allegedly was beaten by corrections officers without justification sued officers in their individual capacities, asserting state-law claims for assault and battery and § 1983 claims for alleged constitutional violations. Officers moved to dismiss on exhaustion grounds. The United States District Court for the District of Connecticut, Alan H. Nevas, J., granted motion. Inmate appealed. The United States Court of Appeals for the Second Circuit, 224 F.3d 95, reversed and remanded. Certiorari was granted. The Supreme Court, Justice Ginsburg, held that exhaustion requirement under Prison Litigation Reform Act (PLRA) for prison conditions claims applied to inmate's claims.

Reversed and remanded.

[1] Civil Rights ⌘0

78k0 k.

Ordinarily, plaintiffs pursuing civil rights claims under § 1983 need not exhaust administrative remedies before filing suit in court. 42 U.S.C.A. § 1983.

[2] Prisons ⌘0
310k0 k.

Exhaustion of administrative remedies, pursuant to Prison Litigation Reform Act (PLRA), is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violation based on use of excessive force or some other wrong. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

[3] Federal Courts ⌘0
170Bk0 k.

Supreme Court generally presumes that Congress expects its statutes to be read in conformity with Court's precedents.

Syllabus [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

*1 Without filing a grievance under applicable Connecticut Department of Correction procedures, plaintiff-respondent Nussle, a state prison inmate, commenced a federal court action under 42 U.S.C. § 1983, charging that corrections officers, including defendant-petitioner Porter, had subjected him to a sustained pattern of harassment and intimidation and had singled him out for a severe beating in violation of the Eighth Amendment's ban on 'cruel and unusual punishments.' The District Court dismissed Nussle's suit, relying on a provision of the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. §1997e(a), that directs: 'No action shall be brought with respect to prison conditions under section 1983 ... , or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted.' The Second Circuit reversed, holding that exhaustion of administrative remedies is not required for a claim of the kind Nussle asserted. The appeals court concluded that §1997e(a)'s 'prison conditions' phrase covers only conditions affecting prisoners generally, not single incidents that immediately affect only particular prisoners, such as corrections officers' use of excessive force. In support of its position, the court cited legislative history suggesting that the PLRA curtails frivolous suits, not actions seeking relief from corrections officer brutality; the court also referred to pre-PLRA decisions in which this Court distinguished, for proof of injury and mens rea purposes, between excessive force claims and conditions of confinement claims.

Held: The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

2002 WL 261683                                                                                                                                        Page 2
(Cite as: 2002 WL 261683, *1 (U.S.))

wrong. Cf. Wilson v. Seiter, 501 U.S. 294, 299, n. 1, 111 S.Ct. 2321, 115 L.Ed.2d 271. Pp. 5-14.

(a) The current exhaustion provision in §1997e(a) differs markedly from its predecessor. Once within the district court's discretion, exhaustion in §1997e(a) cases is now mandatory. See Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958. And unlike the previous provision, which encompassed only §1983 suits, exhaustion is now required for all 'action [s] ... brought with respect to prison conditions.' Section 1997e(a), designed to reduce the quantity and improve the quality of prisoner suits, affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Id., at 737. In other instances, the internal review might filter out some frivolous claims. Ibid. And for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. See, e.g., ibid. Pp. 5-7.

(b) Determination of the meaning of §1997e(a)'s 'prison conditions' phrase is guided by the PLRA's text and context, and by this Court's prior decisions relating to '[s]uits by prisoners,' as §1997e is titled. The pathmarking opinion is McCarthy v. Bronson, 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194, in which the Court construed the Federal Magistrates Act's authorization to district judges to refer 'prisoner petitions challenging conditions of confinement' to magistrate judges. This Court concluded in McCarthy that, read in its proper context, the phrase 'challenging conditions of confinement' authorizes the nonconsensual reference of all prisoner petitions to a magistrate, id., at 139. The McCarthy Court emphasized that Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, had unambiguously placed cases involving single episodes of unconstitutional conduct within the broad category of prisoner petitions challenging conditions of confinement, 500 U. S., at 141; found it telling that Congress, in composing the Magistrates Act, chose language that so clearly paralleled the Preiser opinion, 500 U. S., at 142; and considered it significant that the latter Act's purpose--to lighten overworked district judges' caseload--would be thwarted by allowing satellite litigation over the precise contours of an exception for single episode cases, id., at 143. The general presumption that Congress expects its statutes to be read in conformity with this Court's precedents, United States v. Wells, 519 U.S. 482, 495, 117 S.Ct. 921, 137 L.Ed.2d 107, and the PLRA's dominant concern to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court, see Booth v. Churner, 532 U. S., at 737, persuade the Court that §1997e(a)'s key words 'prison conditions' are properly read through the lens of McCarthy and Preiser. Those decisions tug strongly away from classifying suits about prison guards' use of excessive force, one or many times, as anything other than actions 'with respect to prison conditions.' Nussle misplaces principal reliance on Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S.Ct. 995, 117 L.Ed.2d 156, and Farmer v. Brennan, 511 U.S. 825, 835- 836, 114 S.Ct. 1970, 128 L.Ed.2d 811. Although those cases did distinguish excessive force claims from conditions of confinement claims, they did so in the context of proof requirements: what injury must a plaintiff allege and show; what mental state must a plaintiff plead and prove. Proof requirements, once a case is in court, however, do not touch or concern the threshold inquiry at issue here: whether resort to a prison grievance process must precede resort to a court. There is no reason to believe that Congress meant to release the evidentiary distinctions drawn in Hudson and Farmer from their moorings and extend their application to §1997e(a)'s otherwise invigorated exhaustion requirement. It is at least equally plausible that Congress inserted 'prison conditions' into the exhaustion provision simply to make it clear that preincarceration claims fall outside §1997e(a), for example, a §1983 claim against the prisoner's arresting officer. Furthermore, the asserted distinction between excessive force claims and exhaustion-mandatory 'frivolous' claims is untenable, for excessive force claims can be frivolous, and exhaustion serves purposes beyond weeding out frivolous allegations. Pp. 7-12.

*2 (c) Other infirmities inhere in the Second Circuit's disposition. See McCarthy, 500 U. S., at 143. In the prison environment, a specific incident may be symptomatic of a systemic problem, rather than aberrational. Id., at 143-144. Nussle urges that his case could be placed in the isolated episode category, but he might equally urge that his complaint describes a pattern or practice of harassment climaxing in the alleged beating. It seems unlikely that Congress, when it included in the PLRA a firm exhaustion requirement, meant to leave the need to exhaust to the pleader's option. Cf. Preiser, 411 U. S., at 489-490. Moreover, the appeals court's disposition augurs complexity; bifurcated proceedings would be normal

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

thereunder when, for example, a prisoner sues both the corrections officer alleged to have used excessive force and the supervisor who allegedly failed adequately to monitor those in his charge. Finally, scant sense supports the single occurrence, prevailing circumstance dichotomy. For example, prison authorities' interest in receiving prompt notice of, and opportunity to take action against, guard brutality is no less compelling than their interest in receiving notice and an opportunity to stop other types of staff wrongdoing. See id., at 492. Pp. 12-14.

*3 224 F.3d 95, reversed and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Richard Blumenthal, for petitioners.

Irving L. Gornstein, for United States as amicus curiae, by special leave of the Court, supporting the petitioners.

John R. Williams, for respondent.

Justice GINSBURG delivered the opinion of the Court.

This case concerns the obligation of prisoners who claim denial of their federal rights while incarcerated to exhaust prison grievance procedures before seeking judicial relief. Plaintiff-respondent Ronald Nussle, an inmate in a Connecticut prison, brought directly to court, without filing an inmate grievance, a complaint charging that corrections officers singled him out for a severe beating, in violation of the Eighth Amendment's ban on 'cruel and unusual punishments.' Nussle bypassed the grievance procedure despite a provision of the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-73, as amended, 42 U. S. C. §1997e(a) (1994 ed., Supp. V), that directs: 'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'

The Court of Appeals for the Second Circuit held that §1997e(a) governs only conditions affecting prisoners generally, not single incidents, such as corrections officers' use of excessive force, actions that immediately affect only particular prisoners. Nussle defends the Second Circuit's judgment, but urges that the relevant distinction is between excessive force claims, which, he says, need not be pursued administratively, and all other claims, which, he recognizes, must proceed first through the prison grievance process. We reject both readings and hold, in line with the text and purpose of the PLRA, our precedent in point, and the weight of lower court authority, that §1997e(a)' s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences.

I

*4 Respondent Ronald Nussle is an inmate at the Cheshire Correctional Institution in Connecticut. App. 38. According to his complaint, corrections officers at the prison subjected him to 'a prolonged and sustained pattern of harassment and intimidation' from the time of his arrival there in May 1996. Id., at 39. Nussle alleged that he was singled out because he was 'perceived' to be a friend of the Governor of Connecticut, with whom corrections officers were feuding over labor issues. Ibid.

Concerning the episode in suit, Nussle asserted that, on or about June 15, 1996, several officers, including defendant-petitioner Porter, ordered Nussle to leave his cell, 'placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair.' Ibid. Nussle alleged that the attack was unprovoked and unjustified, and that the officers told him they would kill him if he reported the beating. Ibid.

Then, as now, the Connecticut Department of Correction provided a grievance system for prisoners. See id., at 5-18. Under that system, grievances must be filed within 30 days of the 'occurrence.' Id., at 11. Rules governing the grievance process include provisions on confidentiality and against reprisals. Id., at 17-18.

Without filing a grievance, on June 10, 1999, Nussle commenced an action in federal district court under 42 U. S. C. §1983; he filed suit days before the three-year statute of limitations ran out on the §1983 claim. [FN1] Nussle charged, principally, that the corrections officers' assault violated his right to be free from cruel and unusual punishment under the Eighth Amendment, as made applicable to the States

2002 WL 261683
(Cite as: 2002 WL 261683, *4 (U.S.))

Page 4

by the Fourteenth Amendment. App. 38. The District Court, relying on §1997e(a), dismissed Nussle's complaint for failure to exhaust administrative remedies. Nussle v. Willette, 3:99CV1091(AHN) (D Conn., Nov. 22, 1999), App. 43.

> FN1. The Second Circuit has held that § 1983 actions in Connecticut are governed by that State's three-year statute of limitations for tort actions. Williams v. Walsh, 558 F.2d 667, 670 (1977).

Construing §1997e(a) narrowly because it is an exception 'to the general rule of non-exhaustion in § 1983 cases,' the Court of Appeals for the Second Circuit reversed the District Court's judgment; the appeals court held that 'exhaustion of administrative remedies is not required for [prisoner] claims of assault or excessive force brought under §1983.' Nussle v. Willette, 224 F.3d 95, 106 (2000). Section 1997e(a) requires administrative exhaustion of inmates' claims 'with respect to prison conditions,' but contains no definition of the words 'prison conditions.' The appeals court found the term 'scarcely free of ambiguity.' Id., at 101. [FN2] For purposes of the PLRA's exhaustion requirement, the court concluded, the term was most appropriately read to mean ' 'circumstances affecting everyone in the area,' ' rather than ' 'single or momentary matter[s],' such as beatings ... directed at particular individuals.' Ibid. (quoting Booth v. Churner, 206 F.3d 289, 300-301 (C.A.3 2000) (Noonan, J., concurring and dissenting), aff'd on other grounds, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)).

> FN2. Another provision of the PLRA, 18 U. S. C. §3626(g)(2) (1994 ed., Supp. V), the court observed, does define 'prison conditions.' Nussle v. Willette, 224 F.3d 95, 101 (C.A.2 2000). That provision, which concerns prospective relief, defines 'prison conditions' to mean 'the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison.' The Second Circuit found the §3626(g)(2) definition 'no less ambiguous' than the bare text of §1997e(a). Neither of the alternative §3626(g)(2) formulations, the court said, would be used in 'everyday' speech to describe 'particular instances of assault or excessive force.' Id., at 102. But see Booth v. Churner, 206 F.3d 289, 294-295 (C.A.3 2000), aff'd on other grounds, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (reading §3626(g)(2) to cover all prison conditions and corrections officer actions that 'make [prisoners'] lives worse'). The Second Circuit ultimately concluded that it would be improper, in any event, automatically to import §3626(g)(2)'s 'definition of 'civil actions brought with respect to prison conditions' into 42 U. S. C. §1997e(a)' because the two provisions had 'distinct statutory purposes.' 224 F.3d, at 105.

The Court of Appeals found support for its position in the PLRA's legislative history. Floor statements 'overwhelmingly suggest[ed]' that Congress sought to curtail suits qualifying as 'frivolous' because of their 'subject matter,' e.g., suits over 'insufficient storage locker space,' 'a defective haircut,' or 'being served chunky peanut butter instead of the creamy variety.' 224 F.3d, at 105 (internal quotation marks omitted). Actions seeking relief from corrections officer brutality, the Second Circuit stressed, are not of that genre. Further, the Court of Appeals referred to pre-PLRA decisions in which this Court had 'disaggregate[d] the broad category of Eighth Amendment claims so as to distinguish [for proof of injury and mens rea purposes] between ' excessive force' claims, on the one hand, and 'conditions of confinement' claims, on the other.' Id., at 106 (citing Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), and Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

*5 In conflict with the Second Circuit, other Federal Courts of Appeals have determined that prisoners alleging assaults by prison guards must meet § 1997e(a)'s exhaustion requirement before commencing a civil rights action. See Smith v. Zachary, 255 F.3d 446 (C.A.7 2001); Higginbottom v. Carter, 223 F.3d 1259 (C.A.11 2000); Booth v. Churner, 206 F.3d 289 (C.A.3 2000); Freeman v. Francis, 196 F.3d 641 (C.A.6 1999). We granted certiorari to resolve the intercircuit conflict, 532 U. S. 1065 (2001), and now reverse the Second Circuit's judgment.

II

[1] Ordinarily, plaintiffs pursuing civil rights claims under 42 U. S. C. §1983 need not exhaust administrative remedies before filing suit in court. See Patsy v. Board of Regents of Fla., 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Prisoner suits alleging constitutional deprivations while incarcerated once fell within this general rule. See Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam).

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 261683
(Cite as: 2002 WL 261683, *5 (U.S.))

Page 5

In 1980, however, Congress introduced an exhaustion prescription for suits initiated by state prisoners. See Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U. S. C. § 1997e (1994 ed.). This measure authorized district courts to stay a state prisoner's §1983 action 'for a period not to exceed 180 days' while the prisoner exhausted available 'plain, speedy, and effective administrative remedies.' §1997e(a)(1). Exhaustion under the 1980 prescription was in large part discretionary; it could be ordered only if the State's prison grievance system met specified federal standards, and even then, only if, in the particular case, the court believed the requirement 'appropriate and in the interests of justice.' §§1997e(a) and (b). We described this provision as a 'limited exhaustion requirement' in McCarthy v. Madigan, 503 U.S. 140, 150-151, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), and thought it inapplicable to prisoner suits for damages when monetary relief was unavailable through the prison grievance system.

In 1995, as part of the PLRA, Congress invigorated the exhaustion prescription. The revised exhaustion provision, titled 'Suits by prisoners,' states: 'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.' 42 U. S. C. § 1997e(a) (1994 ed., Supp. V).

*6 The current exhaustion provision differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. See Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' See ibid.; see also id., at 740, n. 5. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. See id., at 741. And unlike the previous provision, which encompassed only §1983 suits, exhaustion is now required for all 'action[s] ... brought with respect to prison conditions,' whether under §1983 or 'any other Federal law.' Compare 42 U. S. C. §1997e (1994 ed.) with 42 U. S. C. §1997e(a) (1994 ed., Supp. V). Thus federal prisoners suing under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a §1983 suit.

Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Booth, 532 U. S., at 737. In other instances, the internal review might 'filter out some frivolous claims.' Ibid. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. See ibid.; see also Madigan, 503 U. S., at 146.

[2] Congress described the cases covered by § 1997e(a)'s exhaustion requirement as 'action[s] ... brought with respect to prison conditions. ' Nussle's case requires us to determine what the §1997e(a) term 'prison conditions' means, given Congress' failure to define the term in the text of the exhaustion provision. [FN3] We are guided in this endeavor by the PLRA's text and context, and by our prior decisions relating to '[s]uits by prisoners,' §1997e. [FN4]

> FN3. The parties dispute the meaning of a simultaneously enacted provision, § 3626(g)(2), which concerns prospective relief, and for that purpose, defines the expression 'civil action with respect to prison conditions.' See supra, at 3, n. 2 (noting, inter alia, divergent constructions of Second and Third Circuits). We rest our decision on the meaning of 'prison conditions' in the context of §1997e, and express no definitive opinion on the proper reading of §3626(g)(2).

> FN4. In reaching its decision, the Second Circuit referred to its 'obligation to construe statutory exceptions narrowly, in order to give full effect to the general rule of non-exhaustion in §1983.' 224 F.3d, at 106 (citing City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 731-732, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995), and Patsy v. Board of Regents of Fla., 457 U.S. 496, 508, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). The Second Circuit did not then have available to it our subsequently rendered decision in Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Booth held that §1997e(a) mandates initial

recourse to the prison grievance process even when a prisoner seeks only money damages, a remedy not available in that process. See id., at 741. In so ruling, we observed that 'Congress ... may well have thought we were shortsighted' in failing adequately to recognize the utility of the administrative process to satisfy, reduce, or clarify prisoner grievances. Id., at 737. While the canon on which the Second Circuit relied may be dependable in other contexts, the PLRA establishes a different regime. For litigation within §1997e(a)'s compass, Congress has replaced the 'general rule of non-exhaustion' with a general rule of exhaustion.

As to precedent, the pathmarking opinion is McCarthy v. Bronson, 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991), which construed 28 U. S. C. §636(b)(1)(B) (1988 ed.), a Judicial Code provision authorizing district judges to refer to magistrate judges, inter alia, 'prisoner petitions challenging conditions of confinement.' [FN5]The petitioning prisoner in McCarthy argued that §636(b)(1)(B) allowed nonconsensual referrals 'only when a prisoner challenges ongoing prison conditions.' 500 U. S., at 138. The complaint in McCarthy targeted no 'ongoing prison conditions'; it homed in on 'an isolated incident' of excessive force. Ibid. For that reason, according to the McCarthy petitioner, nonconsensual referral of his case was impermissible. Id., at 138-139.

> FN5. Title 28 U.S.C. §636(b)(1)(B) provides in relevant part:
> '(b)(1) Notwithstanding any provision of law to the contrary--
> .....
> 'a judge may ... designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, ... of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.'

*7 We did not 'quarrel with' the prisoner's assertion in McCarthy that 'the most natural reading of the phrase 'challenging conditions of confinement,' when viewed in isolation, would not include suits seeking relief from isolated episodes of unconstitutional conduct.' Id., at 139. We nonetheless concluded that the petitioner's argument failed upon reading the phrase 'in its proper context.' Ibid. We found no suggestion in §636(b)(1)(B) that Congress meant to divide prisoner petitions 'into subcategories.' Ibid. 'On the contrary,' we observed, 'when the relevant section is read in its entirety, it suggests that Congress intended to authorize the nonconsensual reference of all prisoner petitions to a magistrate.' Ibid. The Federal Magistrates Act, we noted, covers actions of two kinds: challenges to 'conditions of confinement'; and 'applications for habeas corpus relief.' Id., at 140. Congress, we concluded, 'intended to include in their entirety th[ose] two primary categories of suits brought by prisoners.' Ibid.

'Just three years before [§636(b)(1)(B)] was drafted,' we explained in McCarthy, 'our opinion in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), had described [the] two broad categories of prisoner petitions: (1) those challenging the fact or duration of confinement itself; and (2) those challenging the conditions of confinement.' Ibid. Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), left no doubt, we further stated in McCarthy, that 'the latter category unambiguously embraced the kind of single episode cases that petitioner's construction would exclude.' 500 U. S., at 141. We found it telling that Congress, in composing the Magistrates Act, chose language 'that so clearly parallel[ed] our Preiser opinion.' Id., at 142. We considered it significant as well that the purpose of the Magistrates Act--to lighten the caseload of overworked district judges--would be thwarted by opening the door to satellite litigation over 'the precise contours of [the] suggested exception for single episode cases.' Id., at 143.

As in McCarthy, we here read the term 'prison conditions' not in isolation, but 'in its proper context.' Id., at 139. The PLRA exhaustion provision is captioned 'Suits by prisoners,' see §1997e; this unqualified heading scarcely aids the argument that Congress meant to bi- sect the universe of prisoner suits. See ibid.; see also Almendarez-Torres v. United States, 523 U.S. 224, 234, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ('[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.' (internal quotation marks omitted)).

*8 [3] This Court generally 'presume[s] that Congress expects its statutes to be read in conformity with th[e] Court's precedents.' United States v. Wells, 519 U.S. 482, 495, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). That presumption, and the PLRA's dominant

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 261683                                                                                                     Page 7
(Cite as: 2002 WL 261683, *8 (U.S.))

concern to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court, see Booth, 532 U. S., at 737, persuade us that §1997e(a)'s key words 'prison conditions' are properly read through the lens of McCarthy and Preiser. Those decisions tug strongly away from classifying suits about prison guards' use of excessive force, one or many times, as anything other than actions 'with respect to prison conditions.'

Nussle places principal reliance on Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), and Farmer v. Brennan, 511 U.S. 825, 835-836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), and the Second Circuit found support for its position in those cases as well, 224 F.3d, at 106. Hudson held that to sustain a claim of excessive force, a prisoner need not show significant injury. 503 U. S., at 9. In so ruling, the Court did indeed distinguish excessive force claims from 'conditions of confinement' claims; to sustain a claim of the latter kind 'significant injury' must be shown. Id., at 8-9. Hudson also observed that a 'conditions of confinement' claim may succeed if a prisoner demonstrates that prison officials acted with 'deliberate indifference,' id., at 8 (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)), while a prisoner alleging excessive force must demonstrate that the defendant acted 'maliciously and sadistically to cause harm.' Hudson, 503 U. S., at 7. Farmer similarly distinguished the mental state that must be shown to prevail on an excessive force claim, i.e., 'purposeful or knowing conduct,' from the lesser mens rea requirement governing 'conditions of confinement' claims, i.e., 'deliberate indifference.' 511 U. S., at 835-836. We do not question those decisions and attendant distinctions in the context in which they were made. But the question presented here is of a different order.

Hudson and Farmer trained solely and precisely on proof requirements: what injury must a plaintiff allege and show; what mental state must a plaintiff plead and prove. Proof requirements once a case is in court, however, do not touch or concern the threshold inquiry before us: whether resort to a prison grievance process must precede resort to a court. We have no reason to believe that Congress meant to release the evidentiary distinctions drawn in Hudson and Farmer from their moorings and extend their application to the otherwise invigorated exhaustion requirement of §1997e(a). Such an extension would be highly anomalous given Congress' elimination of judicial discretion to dispense with exhaustion and its deletion of the former constraint that administrative remedies must be 'plain, speedy, and effective' before exhaustion could be required. See supra, at 6; Booth, 532 U. S., at 739; cf. id., at 740-741 ('Congress's imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms.').

*9 Nussle contends that Congress added the words 'prison conditions' to the text of §1997e(a) specifically to exempt excessive force claims from the now mandatory exhaustion requirement; he sees that requirement as applicable mainly to ' 'prison conditions' claims that may be frivolous as to subject matter, ' 224 F.3d, at 106. See Brief for Respondent 2, 26-27. It is at least equally plausible, however, that Congress inserted 'prison conditions' into the exhaustion provision simply to make it clear that preincarceration claims fall outside §1997e(a), for example, a Title VII claim against the prisoner's preincarceration employer, or, for that matter, a § 1983 claim against his arresting officer.

Furthermore, the asserted distinction between excessive force claims that need not be exhausted, on the one hand, and exhaustion-mandatory 'frivolous' claims on the other, see id., at 2, 26-27, is untenable, for '[e]xcessive force claims can be frivolous,' Smith, 255 F.3d, at 452 ('Inmates can allege they were subject to vicious nudges.'), and exhaustion serves purposes beyond weeding out frivolous allegations, see supra, at 6-7.

Other infirmities inhere in the Second Circuit's disposition. See McCarthy, 500 U. S., at 143 ('Petitioner's definition would generate additional work for the district courts because the distinction between cases challenging ongoing conditions and those challenging specific acts of alleged misconduct will often be difficult to identify.'). As McCarthy emphasized, in the prison environment a specific incident may be symptomatic rather than aberrational. Id., at 143-144. An unwarranted assault by a corrections officer may be reflective of a systemic problem traceable to poor hiring practices, inadequate training, or insufficient supervision. See Smith, 255 F.3d, at 449. Nussle himself alleged in this very case not only the beating he suffered on June 15, 1996; he also alleged, extending before and after that date, 'a prolonged and sustained pattern of harassment and

2002 WL 261683                                                                                                     Page 8
(Cite as: 2002 WL 261683, *9 (U.S.))

intimidation by correction officers.' App. 39. Nussle urges that his case could be placed in the isolated episode category, but he might equally urge that his complaint describes a pattern or practice of harassment climaxing in the alleged beating. It seems unlikely that Congress, when it included in the PLRA a firm exhaustion requirement, meant to leave the need to exhaust to the pleader's option. Cf. Preiser, 411 U. S., at 489-490 ('It would wholly frustrate explicit congressional intent to hold that [prisoners] could evade this [exhaustion] requirement by the simple expedient of putting a different label on their pleadings.').

Under Nussle's view and that of the Second Circuit, moreover, bifurcation would be normal when a prisoner sues both a corrections officer alleged to have used excessive force and the supervisor who allegedly failed adequately to monitor those in his charge. Tr. of Oral Arg. 31. The officer alone could be taken directly to court; the charge against the supervisor would proceed first through the internal grievance process. Similarly split proceedings apparently would be in order, under the Second Circuit's decision, when the prisoner elects to pursue against the same officers both discrete instance and ongoing conduct charges.

*10 Finally, we emphasize a concern over and above the complexity augured by the Second Circuit's disposition: Scant sense supports the single occurrence, prevailing circumstance dichotomy. Why should a prisoner have immediate access to court when a guard assaults him on one occasion, but not when beatings are widespread or routine? See Smith, 255 F.3d, at 450. Nussle's distinction between excessive force claims and all other prisoner suits, see supra, at 2, presents a similar anomaly. Do prison authorities have an interest in receiving prompt notice of, and opportunity to take action against, guard brutality that is somehow less compelling than their interest in receiving notice and an opportunity to stop other types of staff wrongdoing? See Preiser, 411 U. S., at 492 ('Since [the] internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems.'). [FN6]

> FN6. Other provisions of §1997e that refer to 'prison conditions' would have less scope under the Second Circuit's construction of the term. Section 1997e(c)(1) provides for dismissal on the court's own initiative of 'any action brought with respect to prison conditions' that is 'frivolous [or] malicious.' No specific incident complaint would be subject to that prescription under the view that such suits do not implicate 'prison conditions.' Further, §1997e(f)(1) provides that pretrial proceedings in 'any action brought with respect to prison conditions' may be held at the prison via telephone, video conference, or other telecommunications technology so that the prisoner need not be physically transferred to participate. Surely such arrangements would be appropriate in Nussle's case and others of its genre. But on what authority would these practical procedures rest if cases like Nussle's do not qualify as actions regarding 'prison conditions'?

* * *

For the reasons stated, we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Cf. Wilson, 501 U. S., at 299, n. 1. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

END OF DOCUMENT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CHARLES KENNEY,  :
    Plaintiff  :
  :
    v.  :  Civil No. 1:CV-00-2143
  :  (McClure, J.)
JAKE MENDEZ;  :  (Blewitt, M.J.)
JESUS "JESSE" GONZALEZ;  :
JAMES "JIMMY" SCARBOROUGH; and  :
KELLY M. KEISER,  :
    Defendants  :

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

    That this 4th day of March 2002, she served a copy of the attached

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

ADDRESSEE:

John Charles Kenney
Reg. No. 05238-041
U.S. Penitentiary
P.O. Box 3000
White Deer, PA 17887

_____
MICHELE E. LINCALIS
Paralegal Specialist