105

J:00 cv 2143

# ATTACHMENT
# ONE

FILED
SCRANTON

MAR 2 5 2002

PER _____
DEPUTY CLERK

"Attachment One"

COPY

## DECLARATION/EXHAUSTION

I, John Charles Kenney, pro se plaintiff in John Charles Kenney v. Juke Mendez, Warden, et al., Case No. 1:CV-00-2143 hereby declare under penalty of perjury pursuant to 28 USC 1746. That, I have "fully" exhausted all available Administrative Remedies available to me pursuant to the Civil Rights Act of Institutionalized Persons Act, 7(a), as amended, 42 USCA 1997e(a). (See Exhaustion Packet)(reflecting). I, further declare that, I also exhausted Federal Administrative Tort Claim regarding the above civil case No. 1:CV-00-2143. I was "emphatically" denied all relief. As a result the present Civil Rights complaint is ripe for adjudication.

Kenney # 05238-041

Dated: 9/17/01

Mr. John Charles Kenney
Register No. 05238-041
Allenwood USP
P.O. Box 3000
White Deer PA 17887-3000

**FILED**
WILLIAMSPORT, PA

SEP 2 4 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

"Attachment One"

September 17, 2001

FILED
WILLIAMSPORT, PA

MAR 25 2001

MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

Certificate Of Service No. 8/04

COPY

Q.C.K.

I, John Charles Kenney, plaintiff acting pro se in John Charles Kenney v. Jake Mendez, Warden, et al., Civil Case No. 1:CV-00-2143 hereby certify that on September 7, 2001 by Court ORDER that Defendants, named above had filed answers to a civil-rights complaint, which I previously filed on December 22, 2000. As a result, I "strenuously" attempted to adequately respond timely, but was interrupted for (6) six-days. I am in an isolation-segregation cell behind a 400 pound solid steel door. I must rely on Allenwood Prison Officials to copy (photocopy) documents for me, which is unpredictable, because I am suing the above named defendant. Therefore, the documents I forwarded to be copied on 9/11/01 was withheld for six-days. (See Attachment Two)(reflecting). That, today Monday, September 17, 2001, I received the copies. Additionally, as I am indigent. I am unable to provide opposing counsel copies, because I cannot afford postage at this time. As a result, I was only able to provide some originals, and copies to the Court only — in order to avoid any procedural defaults, and preserve my rights in this proceeding.

(28 USC 1746)

Kenney #05238-041

Mr. John Charles Kenney

UNITED STATES GOVERNMENT
MEMORANDUM
FEDERAL BUREAU OF PRISONS
320 First St. NW
Washington, DC 20534

DATE:    November 29, 2000

REPLY TO    Administrative Remedy Coordinator
ATTN OF:    National Inmate Appeals, Central Office

SUBJECT:    Administrative Remedy Appeal:22426-A1

TO:    Inmate         John Kenney
       Reg No.        05238-041
       Location:      USP Allenwood
                      White Deer, PA 17887-3000

FILED
WILLIAMSPORT, PA

SEP 2 4 2001

MARY E. D'ANDREA, CLERK
Per_____
         DEPUTY CLERK

___1.    Your appeal was answered on  .  If you have not received your copy by now, you may ask the
         institution Administrative Remedy Coordinator to provide you with a copy from the Warden's
         Administrative Remedy File.

___2.    Your appeal was filed on and a response is pending.  If more than 40 days have elapsed since
         the filing date, you are entitled to consider your appeal denied.  However, some cases cannot be
         decided within this time period.  In that event, the time for response may be extended for an
         additional 20 days.  Staff will provide you with a computer-generated notice of extension to
         inform you of the extension.  You will receive a written response to your appeal.

___3.    Our records indicate that the appeals you reference has not been filed with this office.

___4.    You have not provided sufficient information for us to respond to your inquiry.  If your inquiry
         concerns an administrative remedy, please provide the case number, the date filed in this office
         or date mailed by you, your name and register number, and the subject of your administrative
         remedy.  If you cannot provide all of this information, please provide as much as possible.

___5.    A review of your inquiry reveals it contains issues you should first bring to the attention of
         institution staff.  If you are unable to resolve the issue(s) informally, you may present your
         complaint to the Warden via the Administrative Remedy Procedure.  This procedure is available
         to inmates confined in federal facilities to complain about any aspect of their confinement.

___6.    Extensions are granted only if an inmate's submission is untimely by no fault of his own.
         Requests for extensions are only considered when submitted with the complete appeal packet.

___7.    Central Office Administrative Remedy Appeal responses are the final agency position.  If you are
         dissatisfied with the response, you may pursue any legal recourse you deem appropriate.

___8.    We can only address issues within the jurisdiction of the Federal Bureau of Prisons.  Your issue
    X    is one of _____ jurisdiction.

___9.    Your appeal was rejected and returned to you on **11-14-00** .

___10. Other:

A112

**UNITED STATES GOVERNMENT
MEMORANDUM
FEDERAL BUREAU OF PRISONS**
320 First St. NW
Washington, DC 20534

DATE: December 5, 2000

EPLY TO
TTN OF: Administrative Remedy Coordinator
National Inmate Appeals, Central Office

UBJECT: Administrative Remedy Appeal: 224261 – A1

```
USP ALLENWOOD
DEC 1 2 2000
WARDEN'S OFFICE
```

TO: John Kenney
05238-041
USP Allenwood
White Deer, PA  17887-3000

__1.  Your appeal was answered on                    .  If you have not received your copy by now, you
may ask the institution Administrative Remedy Coordinator to provide you with a copy from the
Warden's Administrative Remedy File.

__2.  Your appeal was filed on                    , and a response is pending.  If more than 40 days
have elapsed since the filing date, you are entitled to consider your appeal denied.  However,
some cases cannot be decided within this time period.  In that event, the time for response may
be extended for an additional 20 days.   Staff will provide you with a computer-generated notice
of extension to inform you of the extension.  You will receive a written response to your appeal.

___3.  Our records indicate that the appeal you reference has not been filed with this office.

___4.  You have not provided sufficient information for us to respond to your inquiry.  If your inquiry
concerns an administrative remedy, please provide the case number, the date filed in this office
or date mailed by you, your name and register number, and the subject of your administrative
remedy.  If you cannot provide all of this information, please provide as much as possible.

___5.  A review of your inquiry reveals it contains issues you should first bring to the attention of the
institution staff.  If you are unable to resolve the issue(s) informally, you may present your
complaint to the Warden via the Administrative Remedy Procedure.  This procedure is available
to inmates confined in federal facilities to complain about any aspect of their confinement.

___6.  Extensions are granted only if an inmate's submission is untimely by no fault of his own.
Requests for extensions are only considered when submitted with the complete appeal packet.

___7.  Central Office Administrative Remedy Appeal responses are the final agency position.  If you are
dissatisfied with the response, you may pursue any legal recourse you deem appropriate.

___8.  We can only address issues within the jurisdiction of the Federal Bureau of Prisons.  Your issue
is one of _____ jurisdiction.

_X_ 9.  Your appeal was rejected and returned to you on  11-14-00.

___ 10.  Other:

Allenwood USP
P.O. BOX 3000
White Deer PA 17887-3000

Monday, November 20, 2000

Dear, Mrs. Kathleen M Hawk-Sawyer: ("The Central Director")
RE: Inmate Seeking Central Director's Assistance
In re: Inmate's BP-11 National Appeal

I'm sorry to burden you with this request, but I require your assistance in the following matter regarding a BP-11 that I recently filed to General Counsel on 11/7/00, dated 11/6/00. Due to some difficulties I'm experiencing here at Allenwood USP, I had filed Inmate grievances a BP-8, BP-9, BP-10, and a BP-11 pursuant to the provisions of 28 CFR SECTIONS 542.14(α), 542.15(α), and 542.18. I was dissatisfied with the responses on the BP-8, BP-9, and BP-10. As a result, I sought further review by filing a BP-11 for finality by appealing to General Counsel on 11/7/00. However, I never received a receipt acknow- ledging that my appeal was received, nor a response. On 11/14/00, I forwarded a written inquiry to Ms. Wendy J. Roal (Washington BOP's Office) of Inmate National Appeals. Again, I have not received any responses on BP-11. As a result, I please seek your assistance & hope of an appropriate BP-11 response. Thank you in advance for any assistance that you may provide me in this letter.

I declare under penalty of perjury, pursuant to USC 1746 that the above is true and correct to the best of my knowledge, and that this letter was mailed by certification/registered mail no. 7000 0600 0023 1122 0183, placed in a prepaid addressed envelope on 11/20/00.

Respectfully



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*U.S. Custom House*
*2nd & Chestnut Streets - 7ᵗʰ Floor*
*Philadelphia, PA. 19106*

March 15, 2001

John Kenney
Reg. No. 05238-041
USMCFP Springfield
P. O. Box 4000
Springfield, MO 65801-4000

Re: Your Administrative Tort Claims Dated September 29, 1999
    Claim Nos. TRT-NER-2000-02866(Duplicate) and
               TRT-NER-2000-02788(Duplicate)

Dear Mr. Kenney:

This is to acknowledge receipt on September 21 and 27, 2000,
respectively, of your administrative tort claims.  It was determined
that the above submissions are duplicates of Claim No. TRT-NER-2001-
02891 in which compensation was sought for alleged personal injury
suffered at the USP Allenwood on or about September 29, 1999.

On March 2, 2001, your Claim No. TRT-NER-2001-02891 was denied and you
were notified you had six months to bring action against the United
States if you were dissatisfied with the agency's decision.

Sincerely,

Henry J. Sadowski
Regional Counsel

cc: Warden Mendez, USP Allenwood

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 14, 2000

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : JOHN CHARLES KENNEY, 05238-041
      ALLENWOOD USP    UNT: I    QTR: Z01-111LAD
      P.O. BOX 3500
      WHITE DEER,  PA 17887


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 224261-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED  : NOVEMBER 13, 2000
SUBJECT 1      : ASSAULT BY STAFF
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS
                 (BP-10) MUST BE RECEIVED WITHIN 20 DAYS OF THE
                 WARDEN'S AND CCM'S RESPONSE OR RECEIPT OF THE
                 DHO'S DECISION.  THIS TIME INCLUDES MAIL TIME.

REMARKS        : CONCUR WITH RATIONALE FOR REJECTING THIS APPEAL.

ALP-1330.13B
March 1, 1997
Attachment 1

UNITED STATES PENITENTIARY
ALLENWOOD, Pennsylvania

ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
INFORMATION RESOLUTION FORM

**NOTE TO INMATE**: You are advised that prior to receiving and
filing a Request for Administrative Remedy Form BP-9 (BP-229.13),
you MUST attempt to informally resolve your complaint through
your Correctional Counselor.  Briefly state ONE complaint below
and list what efforts you have made to resolve your complaint
informally and state the names of staff contacted.

Issued By: ___ W. BECK _____ Initials of Correctional Counselor
Date Issued To The Inmate: ___ 9-24-00 _____

INMATE'S COMMENTS:

1.  Complaint: _On Wednesday, September 29, 1999 I_
_was viciously beaten and brutally attacked by correction (1)_
_Unit III Unit Manager Gonzalez / Counselor for no_
_reason repeatedly fuck me about my hand has with clarity._
2.  Efforts you have made to informally resolve: _Upon several_
_occasions I have repeatedly tried to inquire as to why_
_Gonzalez physically attacked me._
3.  Names of staff you contacted: _via correspondence to Warden_
_Mendez. Tried to contact SIS lieutenant upon_
_numerous occasions, but SIS is unresponsive. Through_
_letters I have contacted NE BOP Director Mr. Schuylked Regional Counsel._
Date Returned to Correctional Counselor: _9/25/00_

___ The Robt. X my KENNEY ___ _05238-041_ ___ _9/25/00_
Inmate's Signature               Reg. No.          Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1.  Efforts made to informally resolve and staff contacted: _____
    _SEE ATTACHED_

Date BP-9 Issued: _10-6-00_

___ W. Beck / W. B. ___
Correctional Counselor

___ E. Eldridge   10-6-2000 ___
Unit Manager (Date)

RESPONSE TO ADMINISTRATIVE REMEDY (BP-8)


TO: KENNEY, JOHN
     REG. NO.: 05238-041


This is in response to your Administrative Remedy Form (BP-8) submitted on August 24, 2000.
On December 7, 1999 you were found guilty of violation of code 101A, Serious Assault
(Attempted).  This incident report was written on September 29, 1999, after you attempted to
assault your Unit Manager, and staff had to use immediate force to subdue you.



                                   W. Beck
                                   Correctional Counselor

*Sensitive Limited Official Use Only*

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*(See Attachment Sheet)*

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Kenney    John    C.                05238-041    I-B    Allenwood USP

LASTNAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**    Statement of Facts

On Wednesday, Sept. 29, 1999, while an inmate at Allenwood USP I was viciously attacked and brutally, beaten by my (former) Unit III Mgr. Mr. J.W. Gonzalez. Gonzalez had repeatedly struck me about the head and facial areas with large "sharp" metal keys, which caused me numerous physical and emotional injuries. Even though I was non-resistant and remained completely docile. Gonzalez for no apparent reason assaulted me, while Scarborough, C/O assisted Gonzalez by pinning my limbs as Gonzalez assaulted me. Additionally, III-A Case Mgr. Ms. K. Keiser stood as a spectator, she clearly saw/observed Gonzalez and his coconspirator C/O Scarborough assaulting me, but she failed to protect me from being physically assaulted by her co-workers. As a result of this incident I hereby claim "Excessive Force," Conspiracy to Exes- sive force. Deliberate Indifference and Retaliation.

10/10/00    Thos. John C. Kenny

DATE    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____    _____
DATE    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)

<u>BP-9 Attachment</u>
<u>Grounds For Relief</u>

<u>Allenwood USP</u>
<u>Tuesday; ~~Sept.~~ <sup>October</sup> 10, 2000</u>

I have an absolute right under the <u>Eighth Amendment</u> of the U.S. Constitution to be free from "Cruel and Unusual Punishment." The Eighth Amendment applies to incarcerated prisoners. See, <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986); see also, <u>Hudson v. Mc-Millian</u>, 503 U.S. 1, 7 (1992). The force described in this grievance was excessive. <u>Brooks v. Kyler</u>, 204 F.3d 102, 109 (3rd Cir. 2000), and repeatedly applied in "bad faith." Gonzalez's intent was to cause me absolute harm. It was "cruel and unusual" when Gonzalez committed an aggravated assault upon me by repeatedly striking me in my head and facial areas with large "sharp" steel keys which resulted in "deliberate indiffence, because I had received numerous physical injures as a result of Gonzalez's "gross" acts committed upon me. (See, Med Sheet)(med sheet reflects the "numerous" injuries Gonzalez inflicted on me). Case Mgr. III-A, Ms. Kriser and C/O Scarborough are equally responsible, because they either participated in this attack upon me, thus both failed to protect me. All described above was in violation of my <u>Eighth Amendment</u> rights; see also, BOP P.S. 3402 Standards of Employee Conduct and Responsibilit (holding Brutality of inmates by employees will not be permitted ... employees may never strike a restrained inmate). Additionally, I am also being retaliated against from this incident, even though I was victimized.

<u>Relief Requested</u>

I, John Charles Kenney. Reg. No. 05238-041 the author of this grievance hereby request 2-million-dollars #2,000,000.00 for the injuries Gonzalez inflicted on me. I also request deletion of my current designation to USP-Marion, and to be reclassified, because my current classification is incorrect based on biasness.

G.C. Kenny #05238-041

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 18, 2000

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      ALLENWOOD USP

TO  : JOHN CHARLES KENNEY, 05238-041
      ALLENWOOD USP    UNT: I    QTR: Z01-103UAD
      P.O. BOX 3500
      WHITE DEER, PA 17887

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 224261-F1        ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : OCTOBER 13, 2000
SUBJECT 1       : ASSAULT BY STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                 MUST BE RECEIVED WITHIN 20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

CC: *Civil File*

U.S. Department of Justice

CC:

Federal Bureau of Prisons   42 USC 1983, 28 USC 1331, 1343.

Regional Administi   e Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Kenney, John, C.              05238-041        I-B        Allenwood USP
        LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.        UNIT        INSTITUTION

**Part A—REASON FOR APPEAL**

I appeal the BP-9, at Number 224261-F1 to this office for the following reasons:

1. I was never informed of any time limitations for presenting such claims. Therefore, I was unaware of any time limitations.

2. My (former) III Unit Manager - Gonzalez had informed me that there were not any time limitations, and that I could file such claims any time I wished.

3. Due to the "seriousness" of allegations, and injuries I sustained from Gonzalez. That relief should be afforded to me based upon the merits of these claims presented.

10/22/00
DATE                                          *Mr. John C. Kenney*
                                              SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____
DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

_____
REGIONAL DIRECTOR

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 224261-R1

**Part C—RECEIPT**

                                              CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

USP LVN    DATE        Previous editions not usable        SIGNATURE, RECIPIENT OF REGIONAL APPEAL        BP-230(13)
                                                                                                        APRIL 1982

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 25, 2000

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  : JOHN CHARLES KENNEY, 05238-041
      ALLENWOOD USP   UNT: I   QTR: Z01-104LAD
      P.O. BOX 3500
      WHITE DEER,  PA 17887


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID        : 224261-R1      REGIONAL APPEAL
DATE RECEIVED    : OCTOBER 24, 2000
SUBJECT 1        : ASSAULT BY STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS
                 (BP-10) MUST BE RECEIVED WITHIN 20 DAYS OF THE
                 WARDEN'S AND CCM'S RESPONSE OR RECEIPT OF THE
                 DHO'S DECISION.  THIS TIME INCLUDES MAIL TIME.

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

BP-11

*017*
*U. S*
*10-3c*

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: __Kenney, John C__ _____ __05238-041__ __I-B__ __Allenwood USP__
LAST NAME, FIRST, MIDDLE INITIAL              REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL**

I am dissatisfied with the BP-10 Response #224261-R1
from the Northeast Region. As a result, I'm appealing to this
Washington Office for the same reasons contained in the
enclosed BP-10. And that, I should be awarded the
2-million dollars for the injuries I sustained from
Ul/Mgr. Gonzalez.

__11/6/00__
DATE

_Mr. John C. Kenney_
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____
DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

USP LVN

REJECTION NOTICE    ADMINISTRATIVE REMEDY

DATE: NOVEMBER 14, 2000

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : JOHN CHARLES KENNEY, 05238-041
      ALLENWOOD USP    UNT: I    QTR: Z01-111LAD
      P.O. BOX 3500
      WHITE DEER,  PA 17887

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 224261-A1    CENTRAL OFFICE APPEAL
DATE RECEIVED  : NOVEMBER 13, 2000
SUBJECT 1      : ASSAULT BY STAFF
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS
                 (BP-10) MUST BE RECEIVED WITHIN 20 DAYS OF THE
                 WARDEN'S AND CCM'S RESPONSE OR RECEIPT OF THE
                 DHO'S DECISION.  THIS TIME INCLUDES MAIL TIME.

REMARKS        : CONCUR WITH RATIONALE FOR REJECTING THIS APPEAL.

# ATTACHMENT TWO

*"Attachmnt Two"*                                              (*Original*)

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO.
1105-0008
EXPIRES 4-30-88

1. Submit To Appropriate Federal Agency:

Mr. D.M. Rardin, NE Regional Director
Federal Bureau of Prisons
U.S. Customs House - 7th FL.
2nd and Chestnut Streets
Philadelphia PA 19106

2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code)

Mr. John Charles Kenney #05238-041
Allenwood USP
P.O. Box 3000
White Deer PA 17887-3000

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY N/A ☐CIVILIAN | 5/20/65 | Bi-sexual | Wednesday, Sept. 29, 1999 | 12:45 P.M. |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)

On Wednesday, September 29, 1999, while an inmate at U.S. Penitentiary, Allenwood, I was physically assaulted by then my assigned Unit Manager III-A, Mr. "Jesse" Jesus Gonzalez. I hereby state a viable claim of EXCESSIVE FORCE, and conspiracy to EXCESSIVE FORCE. Because, Gonzalez while in the middle of the Unit III Office area had "viciously" and repeatedly struck me about the head + facial areas, thus causing numerous injuries to me. See Med Sheet (enclosed). A C/O James "Timmy" Scarborough had assisted Gonzalez

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

No Property Damage

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

No Property Damage

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Severe Migraine Headaches, sleep disturbances, panic attacks, difficulty in concentration, emotional distress, frightened, extremely paranoid and nervous, great deal of mental agitation, physical head and facial injuries. See, Med Sheet (enclosed).

11. WITNESSES

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| James Scarbrough conspirator | |
| J.W. Gonzalez, Aggressor | All subjects are employed at: |
| Kelly Keiser, Case Mgr. Wit. | U.S. Penitentiary, Allenwood |
| Michele Haines, U/S secretary wit. | P.O. Box 3000 |
| | White Deer PA 17887-3000 |

12. AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| | Personal Injury $100,000,00 | | $100,000,00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Mr. John Charles Kenney #05238-041  John C. Kenney | (570) 547-0963, ext 6630 | Sept. 29, 1999 |

CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM

The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.)

CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS

Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.)

107

NSN 7540-00-634-4046

Previous editions not usable.

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

*"Attachment Two"*

cc: Civil File/2-28 USC 1331

Str Separate page Attached, and B.O.P. Med Sheet Supporting

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

**Complete all items - Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

  (a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

  (b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

  (c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

  (d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

*Specified Amount of (Personal Injury, $100,000.00)*

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

**15. Do you carry accident insurance?** ☐ Yes, if yes, give name and address of insurance company (Number, street, city, State, and Zip Code) and policy number. ☐ No

*NON-Applicable / Incarcerated*

**16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?**

**17. If deductible, state amount**

*NON-Applicable / Incarcerated*

**18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (It is necessary that you ascertain these facts)**

*NON-Applicable To Incarcerated Claimants*

**19. Do you carry public liability and property damage insurance?** ☐ Yes, if yes, give name and address of insurance carrier (Number, street, city, State, and Zip Code) ☐ No

*NON-Applicable To Incarcerated Claimants*

SF 95 (Rev. 7-85) BACK

"Attachment Two"                    (Original)

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 EXPIRES 4-30-88 |

Submit To Appropriate Federal Agency:

Mr. D.M. Rardin, NE Regional Director
Federal Bureau of Prisons
U.S. Customs House - 7th Fl.
2nd and Chestnut Streets
Philadelphia PA 19106

2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code)

Mr. John Charles Kenney #05238-041
Allenwood USP
P.O. Box 3000
White Deer PA 17887-3000

| TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
| ☐ MILITARY ☐ CIVILIAN N/A | 5/20/65 | Bi-sexual | Wednesday, Sept 29, 1999 | 12:45 P.M. |

Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)

On Wednesday, September 29, 1999, while an inmate at Allenwood USP I was viciously attacked and brutally beaten by Unit III Manager, Gonzalez while his conspirator C/O Scarbrough had assisted by pinning my limbs, even though I was non-resistant. While I was being assaulted Case Manager, III-Unit, Ms. Keiser had stepped from her nearby office a few feet away, stood as a spectator with her hands on her hips. Keiser had knowingly, intentionally, and intelligently failed to protect me.

PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

( No Property Damage )

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions reverse side.)

( No Property Damage )

PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Severe infliction of emotional distress. Nightmares, chronic depression, flashbacks of me being assaulted, reoccurring migraine headaches, nervousness, insomnia, fluctuational appetite disorder, inability to concentrate, confusion.

WITNESSES

| NAME | ADDRESS (Number, street, city, and Zip Code) |
| J.W. Gonzalez, U/Mgr III | All witnesses are employed at: |
| C/O Scarborough, | U.S. Penitentiary, Allenwood |
| Michele Haines, U/Sec. | P.O. Box 3000 White Deer PA 17887-3000 |

AMOUNT OF CLAIM (in dollars)

| PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| | Personal Injury ($5,000.00) | | (in cash) Five Thousand Dollars ($5,000.00) |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
| Mr. John Charles Kenney John C. K__ | (570) 547-0963, ext 6430 | 9/29/99 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-107
Previous editions not usable.          NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

cc: Civil File - 28 USC 1331
cc: Hon. John McClure, Jr. (US Dist Ct Judge)

Affidavit in further support supporting claim pursuant to FTCA

PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301. 2S U.S.C 501 et seq. 28 U.S.C 2671 et seq. 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.

C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim 'invalid'.

## INSTRUCTIONS

**Complete all Items - Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT. HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #3 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 26, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

*Sam Certain Five Thousand Dollars ($ 5,000. 00) (in cash)*

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☐ Yes, if yes, give name and address of insurance company (Number, street, city, State, and Zip Code) and policy number.  ☐ No

*NONE*

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

17. If deductible, state amount

*NONE*

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (It is necessary that you ascertain these facts)

*NONE*

19. Do you carry public liability and property damage insurance?  ☐ Yes. If yes, give name and address of insurance carrier (Number, street, city, State, and Zip Code)  ☐ No

*NONE*

# ATTACHMENT
# THREE

102    201 FEDERAL REPORTER, 3d SERIES

Alan T. BROOKS, Appellant,

v.

KYLER, Superintendent; Porterfield, Sgt.; Rupinski, C.O.; All defendants are being sued in their official and individual capacity, C.O.

No. 98-7626.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 27, 1999.

Filed Feb. 18, 2000.

State prisoner brought § 1983 action against four prison officials, alleging that he was violently beaten by prison guards in violation of his Eighth Amendment rights. Defendants moved for summary judgment. The United States District Court for the Middle District of Pennsylvania, Edwin M. Kosik, J., granted motion. Prisoner appealed. The Court of Appeals, Becker, Chief Judge, held that: (1) fact that prisoner had only minor injuries did not preclude Eighth Amendment claim, and (2) triable issues existed regarding whether guards acted out of malice or in good faith.

Affirmed in part, reversed and remanded in part.

1. Criminal Law ⟨key⟩1213.10(2)

A deliberate failure to provide medical treatment to a prisoner motivated by non-medical factors can present a constitutional claim under the Eighth Amendment. U.S.C.A. Const.Amend. 8.

2. Criminal Law ⟨key⟩1213.10(3)

Evidence that state prisoner allegedly beaten by prison guards was denied his initial request to see a physician was insufficient to establish that guards were deliberately indifferent to the prisoner's medical needs, as would violate prisoner's Eighth Amendment rights; a nurse passing out prisoner's regular medication looked at prisoner's injuries within minutes of alleged beating, prisoner was treated by prison medical staff that same day, and prisoner presented no evidence of any harm resulting from delay in treatment. U.S.C.A. Const.Amend. 8.

3. Federal Courts ⟨key⟩766, 802

Court of Appeals exercises plenary review over a district court's grant of summary judgment and reviews the facts in the light most favorable to the party against whom summary judgment was entered. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

4. Federal Civil Procedure ⟨key⟩2552

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

5. Criminal Law ⟨key⟩1213.10(2)

After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. U.S.C.A. Const.Amend. 8.

6. Criminal Law ⟨key⟩1213.10(2)

In a prisoner's excessive force claim under the Eighth Amendment, the central question is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. U.S.C.A. Const.Amend. 8.

7. Federal Civil Procedure ⟨key⟩2491.5

For purposes of a prisoner's excessive force claim under the Eighth Amendment, summary judgment in favor of defendant prison guard is not appropriate if it appears that the evidence, viewed in the light most favorable to the prisoner, will support a reliable inference of wantonness in the infliction of pain. U.S.C.A. Const.

BROOKS v. KYLER    103
Cite as 204 F.3d 102 (3rd Cir. 2000)

Amend. 8; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

8. Criminal Law ⟨key⟩1213.10(2)

In determining whether a correctional officer has used excessive force against a prisoner in violation of the Eighth Amendment, courts look to several factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. U.S.C.A. Const.Amend. 8.

9. Criminal Law ⟨key⟩1213.10(2)

Fact that the only visible injuries to prisoner, who was allegedly beaten by three prison guards for failing to end a phone conversation after allotted time, were scratches on prisoner's face and hands did not preclude prisoner's excessive force claim under the Eighth Amendment; prisoner alleged that he was repeatedly punched in head, slammed into a wall, choked, threatened, and nearly rendered unconscious while handcuffed to a waist restraint belt. U.S.C.A. Const.Amend. 8.

10. Criminal Law ⟨key⟩1213.10(2)

The absence of significant resulting injury is not a per se reason for dismissing an Eighth Amendment claim based on alleged wanton and unnecessary use of force against a prisoner. U.S.C.A. Const.Amend. 8.

11. Criminal Law ⟨key⟩1213.10(2)

While extent of injuries sustained by prisoner alleging excessive force claim under the Eighth Amendment provides a means of assessing the legitimacy and scope of force used, constitutional touchstone of claim is whether punishment is cruel and unusual. U.S.C.A. Const.

12. Federal Civil Procedure ⟨key⟩2491.5

Genuine issues of material fact regarding whether prison guards who beat prisoner for failing to end his telephone call within allotted time acted out of malice for purposes of causing harm to prisoner or in good faith to maintain or restore discipline precluded summary judgment on prisoner's excessive force claim under the Eighth Amendment. U.S.C.A. Const. Amend. 8; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

Alan T. Brooks, Appellant Pro Se, Graterford, PA.

D. Michael Fisher, Attorney General, Howard G. Hopkirk, Deputy Attorney General, Calvin R. Koons, Senior Deputy Attorney General, John G. Knorr, III, Chief Deputy Attorney General, Chief Appellate Litigation Section, Office of Attorney General, Harrisburg, PA., for Appellees.

Before: BECKER, Chief Judge, McKEE and COWEN, Circuit Judges.

OPINION OF THE COURT

BECKER, Chief Judge.

Appellant Alan T. Brooks, a Pennsylvania state prisoner, brought this suit under 42 U.S.C. § 1983 against four prison officials, claiming, among other things, that they violated his right under the Eighth Amendment to be free from cruel and unusual punishment. Brooks has appealed the District Court's final order granting summary judgment in favor of the defendants. The appeal presents the question whether a prisoner who testifies that he was violently beaten by three prison guards, but who adduces no objective evidence of anything but de minimis injuries, may survive a summary judgment motion on his Eighth Amendment claim. We conclude that he may, and hence we reverse. In so doing, we look to Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), in which the Supreme

Court concluded that proof of significant injury was not an independent requirement for an Eighth Amendment claim of excessive and wanton force. Following with *Hudson*'s focus on the force used, as opposed to the injury inflicted, we conclude that although the degree of injury is relevant for any Eighth Amendment analysis, there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force.

**I.**

In May, 1994, Brooks was confined at the State Correctional Institution in Camp Hill, Pennsylvania (SCI–Camp Hill). Defendants, Superintendent Kenneth Kyler, Sergeant Russell Porterfield, Correctional Officer Michael Rupinski, and Correctional Officer Gerald Devlin, were assigned to SCI–Camp Hill during the time in question.[1] Brooks contends that on the evening of May 5, 1994, Officers Devlin and Rupinski and Sergeant Porterfield physically assaulted him while he was attempting to complete an authorized phone call. The facts adduced by Brooks in opposition to the defendants' motion for summary judgment are as follows.

According to Brooks, before the assault took place, Devlin and Rupinski came to his cell in the isolation confinement unit and told him that he had been approved for a legal phone call. They then handcuffed him to a waist restraint belt, and conducted a pat down search. After being escorted to another cell, Brooks placed his call. Approximately ten minutes later, Devlin told Brooks to terminate his conversation. Brooks maintains that he acknowledged the directive but that less than a minute after Devlin issued his order, and while he was in the process of hanging up, Sergeant Porterfield pushed Devlin aside, ran into the cell, and pushed down the telephone receiver.

When Brooks turned and asked Devlin what was happening, Brooks is said to have struck the right side of Brooks's head with his fist, and then to have continued with more punches. Brooks, still handcuffed to the waist restraint belt, fell face down as Porterfield allegedly continued to punch him in the head while Devlin and Rupinski stomped on his back and neck. As Porterfield continued punching him in the back of the head, Brooks represents that he went "unconscious semi-conscious," and that several minutes later, Rupinski placed him in leg shackles. According to Brooks, he was then raised about four feet from the floor by the leg shackles' chains and waist restraint belt, and slammed into a cell wall. At that point, Porterfield allegedly began choking Brooks with both hands, nearly rendering Brooks unconscious. As he was choking Brooks, Porterfield is said to have threatened to kill Brooks and to have told him that "no one will ever find out." Finally, Brooks alleges that, after the attack, the officers transported him back to his cell where he was subjected to further physical and verbal abuse prior to being unshackled.

As a result of the alleged attack, Brooks suffered injuries including abrasions (or "scratches" as the defendants call them) on his neck and hands. When the assault ended, Brooks requested to see the shift commander and to receive medical treatment. A nurse arrived five minutes later and gave Brooks his daily medication for previously diagnosed condition of high blood pressure. The officer accompanying the nurse told Brooks to file a grievance. Brooks claims that shortly thereafter he, as well as other inmates, saw Devlin, Rupinski, and Porterfield congregating with a lieutenant in what appeared to be an attempt to cover up the assault. When the lieutenant passed Brooks's cell roughly thirty minutes later, Brooks told him what had happened. The lieutenant allegedly

[1] Although Devlin's name does not appear in the caption, he was a defendant in the District Court, and summary judgment was granted in his favor.

told Brooks that he did not believe his version of the events and walked away. When the shift changed, Brooks, upon his request, was examined and treated by a physician and, the following day, received various pain medications. Brooks maintains that his blood pressure remained very high for two to three weeks after the alleged assault.[2] Brooks also alleges that he was given medication for anxiety, stress, and depression as a result of being attacked.[3]

[1–4] Based on the described events, Brooks commenced this pro se action claiming, among other things, that the defendants' actions violated the Eighth Amendment's prohibition against the use of excessive force.[4] The defendants filed an answer denying the allegations of the complaint and, after discovery, moved for summary judgment. Brooks responded to the motion by submitting an affidavit setting forth his version of the events and arguing that he had been provided with inadequate discovery. The District Court found that Brooks's claims of being violently beaten by three correctional officers were unsupported by the medical evidence.

Although there are material facts in dispute regarding the underlying cause and events at issue, it is apparent that the type of vicious, prolonged attack alleged by Brooks would have resulted in far greater injuries than those which he indisputably sustained.

Accordingly, the Court entered an order granting summary judgment in favor of the defendants. Brooks now appeals. The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343. We have jurisdiction under 28 U.S.C. § 1291. We set forth the familiar standard of review in the margin.[5]

[2] Defendants have submitted the declaration of SCI–Huntingdon Medical Records Technician Sharon Wolfe to the effect that Brooks's institutional medical records show that Brooks's blood pressure was not checked on the day of the incident. Because Brooks's allegations that Brooks had a history of high blood pressure, and because his blood pressure was prescribed medication for high blood pressure, the events at issue. See Appellees' Appendix at SA-69, 99 ¶¶ 11-14. Given respondent's blood pressure posterior, we construe this disputed fact in the light most favorable to plaintiff.

[3] Brooks apparently contacted Superintendent Kyler and filed a grievance. Two in-house investigations were conducted and Brooks was cited for misconduct against Porterfield and for failing to obey an order. After a hearing, Brooks was found guilty of both charges and was sanctioned to 140 days in confinement.

[4] Brooks also alleges that the defendants were deliberately indifferent to his medical needs, that his due process rights were violated, that his request to file criminal charges against correctional officers was improperly denied, and that he was provided insufficient discovery. We agree with the District Court that Brooks cannot survive summary judgment as to these claims. Although a deliberate failure to provide medical treatment motivated by non-medical factors can present a constitutional issue, see *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993), in this case, it is uncon-

traverted that a nurse passing out medications looked at Brooks's injuries within minutes of the alleged beating, and that Brooks was treated by a prison medical staff on the same day. Moreover, presented no evidence of any harm resulting from a delay in medical treatment. See *Hudson v. McMillan*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"). To the extent that Brooks seeks to challenge the denial or the temporary denial "expose[d] the inmate 'to undue suffering or the threat of tangible residual injury.'" *Monmouth Cty. Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.1987) (citations omitted).

[5] We exercise plenary review over a District Court's grant of summary judgment and review the facts in the light most favorable to the non-moving party, the defendants, here without allegations and resolving all reasonable inferences in the non-moving party's favor. See *Coolspring Stone Supply, Inc. v. American States Insurance Co.*, 10 F.3d 144, 146 (3d Cir. 1993). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. See F.R.C.P. 56(c); *Celotex*

[5-7]   After conviction, the

**II.**

**A.**

The Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. *See Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322, 106 S.Ct. 1078; *see also Sampley v. Ruett-gers*, 704 F.2d 491, 495 (10th Cir.1983) (holding that wantonness exists when a prison guard intends to harm an inmate).

[8]   In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) "the need for the application of force;" (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (citations omitted).

**B.**

In support of their motion for summary judgment, the defendants maintain that they employed only the minimal force necessary to protect their safety and institutional security, as we describe in the margin.[6] They also rely on two internal investigations which concluded that Brooks's claims of excessive force were unfounded. *See* Appellees' Appendix at SA-83-A, ¶ 4-7. On this evidence, the defendants assert that they are entitled to summary judgment. While these considerations support the defendants' position, and might well lead to the defendants' verdict at trial, they are controverted by evidence adduced by Brooks. If Brooks is believed, while the application of some force may have been needed to reign in Brooks's apparently overtime telephone cell, he was shackled at the time so that the extent of this threat to staff would not have been great.

What the appeal turns on then, under the Whitley factors, is the defendants' third argument that the medical evidence in the record does not support Brooks's allegation that he was violently beaten. They contend that Brooks's visible injuries, which include a few scratches to his neck and wrists, were *de minimis* and therefore a presumption that the state and against him was inadequate to state an Eighth Amendment claim:

6. In his declaration, Porterfield states that after Brooks ignored three orders to hang up the telephone, Porterfield terminated the conversation. *See* Appellees' Appendix at SA-59-60, ¶ 3-5. Thereafter, Porterfield contends, Brooks threw the phone against the wall, spun around, and grabbed Porterfield's shirt. *See id.* at ¶ 10. With the assistance of Devlin and Rupinski, Porterfield states that he then restrained and shackled Brooks's legs. *See id.* at ¶ 11. Finally, Porterfield denies each of Brooks's allegations of verbal and physical abuse, adding that Brooks remained conscious throughout the entire incident and was issued a misconduct for assault and refusing to obey an order. *See id.* at ¶ 16-26. Devlin and Rupinski also corroborate Porterfield's version of events. Porterfield set forth in his sworn declaration.

[T]he undisputed medical evidence shows that the only injuries which Brooks had were a few scratches to his neck and hands. Even assuming that the corrections officials were not justified in using force against Brooks, he has failed to present any medical evidence which would demonstrate that he sustained anything more than *de minimis* injuries.

(Brief of Appellees, p. 29)

The Supreme Court case most on point is *Hudson v. McMillian*. In *Hudson*, an inmate sued after an alleged assault, in which he suffered minor bruises and swelling of his face and lip, as well as a cracked dental plate. *See* 503 U.S. 1, 4, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The defendants in that case argued that these injuries were "minor" and therefore could not be redressed through an Eighth Amendment suit, but the Court insisted that "[t]he dissent's theory that use of force [must] show serious injury *in addition to* the unnecessary and wanton infliction of pain misapplies *Wilson* and ignores the body of our Eighth Amendment jurisprudence." *Id.* at 10, 112 S.Ct. 995. Therefore, *Hudson* primarily stands for the proposition that a showing of "significant" or "serious" injury is not necessary to make an Eighth Amendment claim. *Id.* at 8, 112 S.Ct. 995.

*Hudson* dictates that we must assess the degree of force employed in relation to its apparent need for it. In discussing this balance the Court used language indicating that *de minimis* force may, in extreme instances, violate the Eighth Amendment. The statement in *Hudson* that there is no constitutional violation for "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind," *id.* at 9-10, 112 S.Ct. 995 (citations omitted), counsels that, where the force is "repugnant to the conscience of mankind," even a *de minimis*

use of force could be constitutionally significant.

We need not now resolve whether *de minimis* force would support a constitutional claim in this case, however, because Brooks's allegations rise far above the *de minimis* level. Three correctional officers allegedly assaulted Brooks by repeatedly punching him in the head, stomping on his back and neck, slamming him into a wall, choking him, threatening him, and nearly rendering him unconscious—all while he was handcuffed to a waist restraint belt and, at some points, even restrained by leg shackles—simply because he did not promptly respond to an order to end a phone call. If a jury believes Brooks's version of the facts, there is no question that the defendants' use of force was excessive in light of the circumstances confronting them.

[9]   The defendants claim that Brooks's evidence does not support his claim, and that we cannot rely on his declarations because there is a requirement of objective or independent proof of something more than *de minimis* injury in order to state this kind of Eighth Amendment claim. The absence of medical evidence supporting Brooks's allegations of being violently beaten is conclusive proof, they submit, that the force used was *de minimis* by constitutional standards. In granting summary judgment in favor of the defendants, the District Court endorsed this view. The Court's conclusion finds support in an opinion of the Court of Appeals for the Fourth Circuit, which decided in a similar case (but with less egregious allegations) that evidence of only *de minimis* injury provided "conclusive evidence" that only *de minimis* force was used. *Norman v. Taylor*, 25 F.3d 1259 (4th Cir.1994) (en banc). Focusing on the following passage in *Hudson*:

The blows directed at Hudson ... are not *de minimis* for Eighth Amendment purposes. The extent of Hudson's inju-

ries thus provides no basis for dismissal. . . .

*Id.* at 1262 (quoting *Hudson*, 503 U.S. at 10, 112 S.Ct. 995), the *Norman* court concluded that the conjunction of these sentences negatively implied that certain injuries could be so insignificant as to warrant dismissal.

[10, 11] We disagree. Although the *Norman* reading is plausible, drawing instruction from Supreme Court passages through the use of the negative pregnant is risky and unsatisfactory. We find the better reading of these sentences to be the more straightforward one, drawn from the general teaching of *Hudson*: i.e., the absence of significant resulting injury is not a per se reason for dismissing a claim based on alleged wanton and unnecessary use of force against a prisoner. Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used (the blows). "[T]he constitutional touchstone is whether punishment is cruel and unusual." *Hudson*, 503 U.S. at 11, 112 S.Ct. 995 (emphasis added).

We acknowledge that *Hudson* itself leaves open the possibility that there is some minimum amount of injury required to make a wanton infliction of force claim. However, a thorough probe of the *Hudson* opinion indicates that the absence of proof of minor or significant injury should not mandate dismissal. As we read the opinion, the Supreme Court is committed to an Eighth Amendment which protects against cruel and unusual force, not merely cruel and unusual *force* that results in sufficient *injury*. In *Hudson*, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot survive without evidence that a deprivation was "harmful enough" (because contemporary standards of decency do not require that the government give succor to the medical and maintenance needs of inmates), the latter kind of claim has no such requirement:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Id.* at 9, 112 S.Ct. 995.

Requiring objective or independent proof of minor or significant injury, would ignore this teaching and place protection from injury, instead of protection from wanton force, at the hub of the Eighth Amendment. *See Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993) ("No actual injury needs to be proven to state a viable Eighth Amendment claim."). *But see Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.1999) ("[T]o support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than *de minimis* physical injury."). This is not to say, as the *Hudson* court observed, that the degree of resulting injury is not highly relevant to the determination of the unreasonableness of the force used; rather, it merely says that the absence of objective proof of non-*de minimis* injury does not alone warrant dismissal. If we were to adopt the District Court's reasoning, a prisoner could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted in visible (or palpable or diagnosable) injuries that were *de minimis*.[7]

## D.

In sum, in light of *Hudson*, the District Court's ruling cannot stand. The defendants' acts are not shielded from constitutional scrutiny simply because Brooks did not proffer objective evidence of more than *de minimis* injuries. We have, throughout the opinion, used the language of *de minimis*, minor, and significant injury as if there were such categories, because the problem presented to us by the District Court, the Fourth Circuit's opinion in *Norman*, and the defendants, required us to respond to their effort to make such delineations. However, we do not deem these differences constitutionally significant; rather, an essential aspect of our holding is that a plaintiff's claim does not turn on these definitions.

[12] Therefore, our opinion should not be read to conclude that the superficial lacerations and abrasions that Brooks indisputably suffered were *de minimis* or *minor*. Regardless of the category of the injury, Brooks adduced evidence of the use of wanton, unnecessary force resulting in severe pain. This creates a disputed issue of material fact for the trier of fact to resolve. Accepting Brooks's allegations as true, as we must, a jury could find that the defendants acted not merely in good faith to maintain or restore discipline, but rather out of malice for the very purpose of causing harm. *See Hudson*, 503 U.S. at 7, 112 S.Ct. 995. On this record, we cannot say as a matter of law, viewing the facts in the light most favorable to Brooks, that excessive force was not used. Accordingly, it was improper to grant summary judgment on this claim.

We will reverse the District Court's judgment with respect to the Eighth Amendment excessive force claim and remand the case for further proceedings consistent with this opinion. In all other respects, the judgment of the District Court will be affirmed.

7. In his concurring opinion in *Hudson*, Justice Blackmun observed that requiring significant (i.e., externally observable) injury would not constrain prison officials from lashing prisoners with leather straps, whipping them with rubber hoses, beating them with naked fists, shocking them with electric currents, asphyxiating them short of death, intentionally exposing them to undue heat or cold, or forcibly injecting them with psychosis-inducing drugs.

*Hudson*, 503 U.S. at 14, 112 S.Ct. 995 (Blackmun, J., concurring in the judgment).

We note in this regard that Brooks cannot seek independent medical advice from a specialist or his personal physician to corroborate his allegations regarding his injuries (or that he suffered from high blood pressure as a result of the attack, *see supra* n. 2). Therefore, when courts do focus on the injury, it is important that they recognize that "an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate 'record evidence' on his behalf . . . [u]nder these circumstances, his affidavits . . . are about the best that can be expected from him [at the summary judgment phase of] the proceedings." *Norman v. Taylor*, 25 F.3d 1259, 1265 (4th Cir.1994) (Hall, J., dissenting).

**Dana HEDGES; George Hedges, on behalf of C.D. Minor, Appellants**

**v.**

**Ralph MUSCO, Individually and as Principal of Northern Highlands Regional High School; Greg McDonald; Cathy Kiely; Northern Highlands Regional High School Board of Education; Alan Geisenheimer, individually and as President and a member of the Northern Highlands Regional High School Board of Education; William Beisswanger, individually and as President and a member of the Northern Highlands Regional High School Board of Education; Mary Laurent; Barclay Blayman; Harold De Niear; Lynnette Krueger; Patricia Dubie; Linda Kempey; Nora Oliver; Tina Malizia; Neal Strohmeyer, individually and as members of the Northern Highlands Regional High School**