

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CHARLES KENNEY,<br>　　　　Plaintiff, | : <br> : <br> : | Civil Action No. 1:CV-00-2143<br>Hon Judge McClure, Jr.,<br>　　　　(Presiding) |
| v. | : <br> : | |
| JAKE MENDEZ, Warden, et al.,<br>　　　　Defendants. | : <br> : | (Magistrate T.M. Blewitt) |

### PRO SE PLAINTIFF'S OBJECTIONABLE RESPONSE PURSUANT TO TITLE 28 USC 636(b)(1)(B)/SUPPLEMENTAL SUPPORTING AUTHORITIES

　　Plaintiff-John Charles Kenney, acting pro se in the above captioned civil action hereby submits "supplemental authorities" in support of his "Objectionable Response" dated June 25, 2002. That, Kenney submits these supporting authorities pursuant to Middle District Pa. Local Rules 7.5., 7.6., 7.10., and 56.1. This material herein substantiates Kenney's objections to the Magistrate's ("R & R") report and recommendation, dated June 17, 2002, at p. 4. Consequently, Kenney also submits this material for the convenience of the Court and defendants. As to why, he is entitled to "REVERSAL" in his favor.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　/s/ Kenney

　　　　　　　　　　　　　　　　JOHN CHARLES KENNEY/PRO SE
　　　　　　　　　　　　　　　　Register No. 05238-041

Dated: June 26, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CHARLES KENNEY,<br>　　　PLaintiff, | :<br>: | Civil Action No. 1:CV-00-2143<br>Hon. Judge McClure, Jr.,<br>　　　(Presiding) |
| v. | : | |
| JAKE MENDEZ, Warden, et al.,<br>　　　Defendants. | :<br>: | (Magistrate T.M. Blewitt) |
| | : | "Supplemental Authorities<br>　Supporting Plaintiff's<br>　Objectionable Response" |

## CERTIFICATE OF SERVICE

AND NOW comes John Charles Kenney, pro se plaintiff, certifies that a true copy of the foregoing "Supplemental Authorities," in support of his objectionable response has been served upon the defendant's representative below on this Thursday, June 26, 2002, by first class, postage pre-paid.

　　　　c/o The Honorable Terz
　　　　　　U.S. Attorney's Office
　　　　　　Federal Building, Ste. 316
　　　　　　U.S. District Courthouse
　　　　　　240 West Third Street
　　　　　　Williamsport PA 17701-6465

　　　　　　　　　　/s/ Kenney

　　　　　　　　　　John Charles Kenney, pro se
　　　　　　　　　　Register No. 05238-041

Frederick Ray, Appellant.

No. 99-3446.

United States Court of Appeals,
Third Circuit.

Argued Sept. 20, 2001.

Filed April 3, 2002.

Former state inmate brought § 1983 action against prison officials, alleging that he was assaulted by officers, retaliated against, and otherwise suffered violations of his constitutional rights. The United States District Court for the Middle District of Pennsylvania, Malcolm Muir, J., sua sponte dismissed complaint for failure to exhaust administrative remedies. Former inmate appealed. The Court of Appeals, Sloviter, Circuit Judge, held that: (1) as a question of first impression, failure to exhaust administrative remedies, pursuant to Prison Litigation Reform Act (PLRA), is affirmative defense to be pleaded by defendant; (2) district court not sua sponte dismiss action for failure to exhaust administrative remedies; and (3) inmate was not required to demonstrate compliance with administrative exhaustion requirement.

Reversed.

1. Federal Courts ⟸589

Appeal from a dismissal without prejudice is permitted under statute governing appeals from final district court decisions when plaintiff declares his intention to stand on his complaint or when he cannot cure the defect in his complaint. 28 U.S.C.A. § 1291.

2. Federal Courts ⟸589

Jurisdiction existed over appeal from dismissal without prejudice, for failure to exhaust administrative remedies, of former state inmate's § 1983 action against prison officers, given former inmate's assertion of his intent to stand on his complaint and his inability to pursue administrative remedies due to passage of time and his release from prison. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

3. Federal Courts ⟸763.1

Court of Appeals subjects district court decisions interpreting statutes to plenary review.

4. Federal Courts ⟸797

On review of a motion to dismiss, Court of Appeals accepts as true all factual allegations in the complaint.

5. Convicts ⟸6

The availability of administrative remedies to a prisoner is a question of law.

6. Convicts ⟸6

Inmate's failure to exhaust administrative remedies, before bringing federal action challenging prison conditions, in accordance with requirements of Prison Litigation Reform Act (PLRA), is an affirmative defense to be pleaded by defendant. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

7. Convicts ⟸6

District court could not sua sponte dismiss former state inmate's § 1983 action against prison officials for failure to exhaust administrative remedies, inasmuch as Prison Litigation Reform Act (PLRA) did not include failure to exhaust among categories justifying sua sponte dismissal, and whether former inmate had failed to exhaust administrative remedies could not be determined from face of complaint. Civil Rights of Institutionalized Persons Act, § 7(a), c, 42 U.S.C.A. § 1997e(a).

8. Federal Civil Procedure ⟸1824

Generally, sua sponte dismissal is inappropriate unless the basis for dismissal is apparent from the face of the complaint.

9. Convicts ⟸6

In bringing action challenging prison conditions, inmate was not required to demonstrate compliance with administrative exhaustion requirement imposed by Prison Litigation Reform Act (PLRA), inasmuch as no provision of PLRA required pleading exhaustion with particularity. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

Jon Romberg, Craig T. Moran (Argued), John P. Campbell (Argued), Seton Hall Law School, Newark, NJ, Attorneys for Appellant.

D. Michael Fisher, Attorney General, J. Bart DeLone (Argued), Deputy Attorney General, Calvin R. Koons, Senior Deputy Attorney General, John G. Knorr, III, Chief Deputy Attorney General, Chief, Appellate Litigation Section, Office of Attorney General, Appellate Litigation Section, Harrisburg, PA, Attorneys for Appellees.

Before SLOVITER, NYGAARD and McKEE, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Frederick Ray, a former inmate in the Pennsylvania state prison system, appeals from the order of the District Court dismissing sua sponte Ray's complaint against prison officials filed pursuant to 42 U.S.C. § 1983 (2001).[1] The District Court dismissed Ray's complaint based on its determination that Ray had not "demonstrated" that he had exhausted his administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2001).

Ray argues that the District Court erred in dismissing his complaint for two reasons. His principal argument is that the PLRA's exhaustion requirement is an affirmative defense, to be alleged and proved by the defendants. This is a question of first impression for this court. Other courts of appeals have divided on this issue. Ray's alternate argument is that even if we were to decide that the PLRA exhaustion requirement is not an affirmative defense, the District Court erred by imposing an improperly heightened pleading standard that required Ray not only to plead but also to prove his exhaustion in the complaint.

I.

FACTS AND PROCEDURAL HISTORY

In his complaint, Ray alleges that while he was a prisoner at the Pennsylvania State Correctional Institution at Huntingdon, he was twice assaulted by officers, who retaliated by filing groundless misconduct charges against him when he told them he would sue. Ray, while still a

---

[1] Ray's notice of appeal was filed pro se. This Court sought representation for Ray from Professor Jon Romberg, Associate Director of the Center for Social Justice at Seton Hall University School of Law. Ray's appeal was handled by John P. Campbell and Craig T. Moran, who were at the time of briefing students at Seton Hall Law School under the supervision of Professor Romberg. Mr. Campbell and Mr. Moran had graduated by the time they argued before us, both capably, and we extend our appreciation to them and to Professor Romberg.

prisoner and using a printed form complaint provided to prisoners, filed a § 1983 complaint pro se in the District Court for the Middle District of Pennsylvania against the officers who allegedly assaulted him and other prison officials. In his complaint, Ray alleged that various officers and certain prison procedures violated his First, Fifth, Eighth and Fourteenth Amendment rights.

On the first page of the form complaint, under a caption entitled "Exhaustion of Administrative Remedies," the form asked "Is there a grievance procedure available at your institution?"; "Have you filed a grievance concerning the facts relating to the complaint?"; and "Is the grievance process completed?" Ray checked "Yes" in response to all three questions. App. at 4.

Shortly after Ray filed his complaint, the District Court referred it to a Magistrate Judge. The Magistrate Judge filed a report and recommendation, recommending dismissal for failure to exhaust administrative remedies. According to the Magistrate Judge, "[W]hile the plaintiff alleges that he filed various grievances with respect to the claims which he now raises in his complaint, there is no indication from the plaintiff's complaint that he took any further action to properly exhaust his administrative remedies." Supp. at 7.

Ray filed objections to the Magistrate Judge's report, alleging that he had asserted the claims of assaults by prison guards as defenses to the misconduct charges made against him which charged him with a number of violations of prison rules. Those misconduct charges stemmed from the same altercations that are the subject of his § 1983 claims.

2. Both the Inmate Disciplinary Procedures and the Inmate Grievance System have since been modified.

The misconduct charges brought against Ray were brought under Pennsylvania Department of Corrections' Inmate Disciplinary and Restricted Housing Procedures, DC-ADM 801 (effective Sept. 20, 1994) ("Inmate Disciplinary Procedures"), Supp. App. at 1–11, which govern inmate violations of prison rules. The Inmate Disciplinary Procedures are distinct from the Consolidated Inmate Grievance Review System, DC-ADM 804 (effective Oct. 20, 1994) ("Inmate Grievance System"), Supp. at 45, which is designed to address inmate-initiated grievances.[2] In his objections to the Magistrate Judge's Report, Ray asserted that grievances may not be filed for claims related to disciplinary proceedings. App. at 16–17.

In the disciplinary proceeding against Ray, a hearing examiner had dismissed all of the charges save one. The Inmate Disciplinary Procedures provide that "[n]o appeals from a finding of not guilty are permitted." DC-ADM 801 VI(D)(1)(b), Supp. App. at 8. It is unclear whether prison officials interpret this clause to permit appeals from dismissals where no culpability determination is made, such as the dismissed misconduct charges against Ray.

Ray attached to his objections to the Magistrate Judge's Report handwritten copies of a number of the misconduct charges, along with the letter from the Chief Hearing Examiner denying Ray's appeal, which constituted the final administrative disposition of Ray's appeal of the one guilty charge. That letter notes, "[i]t appears [that the charging officer,] having reviewed the entire record of these misconducts; including the misconduct report, the hearing report and relevant documents, your appeal to the Program Review Committee and their response, your appeal

3. Although the defendants in the action below made no appearance before this court, the Commonwealth of Pennsylvania appeared as

to the Superintendent and his response." App. at 23. This litany of appeals precisely tracks the full panoply of available administrative appeals provided for by the Inmate Disciplinary Procedures. The Commonwealth does not argue otherwise.

On May 3, 1999, before the defendants were served, the District Court dismissed Ray's complaint based on its assessment that Ray had not demonstrated exhaustion of administrative remedies.[3] The District Court stated that Ray had "not attached copies of [his various] grievances to his objections [to the Magistrate Judge's report]." Supp. at 3. The District Court also observed that Ray had not set forth the specific steps that he had taken to exhaust administrative remedies and concluded by noting, "[A]ny appeal from this order will be deemed frivolous, without probable cause and not taken in good faith." Supp. at 4.

## II.

### JURISDICTION AND STANDARD OF REVIEW

[1, 2] The District Court dismissed Ray's complaint without prejudice. Appeal from a dismissal without prejudice is permitted under 28 U.S.C. § 1291 when a plaintiff "declares his intention to stand on his complaint, or when he cannot cure the defect in his complaint." *Booth v. Churner*, 206 F.3d 289, 293 n. 3 (3d Cir.2000) *aff'd* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

Ray states that he "intends to stand on his Complaint." Br. of Appellant at 1. He also contends that he can no longer pursue administrative remedies due to the passage of time and his release from prison. We have previously exercised jurisdiction

an amicus curiae, filing a brief in support of the District Court's decision. A deputy attorney general ably argued the case.

when "both parties agree that the time is long past for [the inmate-appellant] to pursue his normal administrative remedies [preventing him from] curling] the defect in his complaint on which the District Court based its dismissal." *Booth*, 206 F.3d at 293 n. 3. Accordingly, we have jurisdiction over the appeal.

[3–5] This court subjects district court decisions interpreting statutes to plenary review. *Gibbs v. Gross*, 160 F.3d 962, 964 (3d Cir.1998); *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1063 (3d Cir. 1992). On review of a motion to dismiss, we accept as true all factual allegations in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The availability of administrative remedies to a prisoner is a question of law. *See, e.g., Snider v. Melindez*, 199 F.3d 108, 113–14 (2d Cir.1999).

## III.

### DISCUSSION

**A. Exhaustion As An Affirmative Defense**

Ray argues the District Court erred in dismissing his complaint for failure to exhaust administrative remedies and in failing to recognize that the PLRA exhaustion requirement in 42 U.S.C. § 1997e(a) is an affirmative defense. Ray does not dispute that the language of § 1997e(a) requiring administrative exhaustion of claims with respect to prison conditions applies "to claims of excessive force by prison guards. If there had been any question about that, it was settled by the Supreme Court's recent decision in *Porter v. Nussle*, ___

U.S. ——, 122 S.Ct. 983, —— L.Ed.2d —— (2002), where the Court explicitly so held. Nor does Ray dispute that he must have satisfied the exhaustion requirement before he could file this action. The principal question here is not the substantive one of whether exhaustion is required but the procedural issue of which party has the burden of pleading exhaustion or its absence.[4]

In support of his argument that failure to exhaust the prison's administrative remedies is an affirmative defense that must be pleaded and proven by the defendants, Ray relies on this court's decision in *Williams v. Runyon*, 139 F.3d 568 (3d Cir.1997), a Title VII case, where we stated that "failure to exhaust administrative remedies is an affirmative defense in the nature of statute[s] of limitations." *Id.* at 573. Just as the imperative language in the PLRA's exhaustion requirement does not, of itself, act as a jurisdictional bar, neither does the mandatory phrasing determine the burden of pleading. For example, although statutes of limitations are very often phrased in mandatory language, *see, e.g., Jackson*, 89 F.Supp.2d 48, 56–57 (D.D.C.2000), they are quite clearly affirmative defenses, *see e.g.,* Fed. R. Civ. Proc. 8(c) (listing the statute of limitation as an affirmative defense); *Gruber v. Price Waterhouse,* 911 F.2d 960, 963 (3d Cir.1990).

Courts in addition to this one have treated the exhaustion requirements of Title VII and the Age Discrimination in Employment Act (ADEA) as affirmative defenses. *See, e.g., Wyatt v. Terhune*, 280 F.3d 1238 (9th Cir. Feb.12, 2002), 2002 U.S.App. LEXIS 2217, at *19–20 (discussing the PLRA's exhaustion requirement).

4. Neither the District Court nor the Commonwealth has suggested that the mandatory language of § 1997e(a)—"no action *shall* be brought" (emphasis added)—makes the exhaustion requirement a jurisdictional one. As this court held in *Nyhuis v. Reno*, 204 F.3d

Ray argues that the purposes for the exhaustion requirement in Title VII suits are similar to those for the exhaustion requirement in PLRA suits and therefore the same pleading requirement should follow. We have, in another context, described the purposes that underlie a statutory requirement of exhaustion of administrative remedies. In *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 370 (3d Cir.1986), we listed the following as the purposes of the exhaustion doctrine:

1) promotes administrative efficiency by "preventing premature interference with the agency processes,"

2) respects executive autonomy by allowing an agency the "opportunity to correct its own errors,"

3) facilitates judicial review by affording courts the benefit of the agency's experience and expertise, and

4) serves judicial economy by having the agency or other tribunal rather than the district court, compile the factual record.

*Id.* at 370 (quoting *Cerro Metal Prods. v. Marshall,* 620 F.2d 964, 970 (3d Cir.1980)).

Ray notes that in *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir.2000), we ascribed similar reasons for the exhaustion requirement in the PLRA. Indeed, in *Nyhuis* we did discuss, as underlying the exhaustion requirement of § 1997e(a), "[W]e agree with the clear majority of courts that 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction."

65, 69 n. 4 (3d Cir.2000), "[W]e agree with the clear majority of courts that 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction."

ment of § 1997e(a), the concern with the heavy volume of frivolous prison litigation in the federal courts and the concomitant burden of expending significant and scarce judicial resources to review and refine legal claims which are "untidy, repetitious and redolent of legal language." *Id.* at 74. These reasons are not dissimilar from those discussed in *Heywood*.

Although this is the first time we have faced how the PLRA's exhaustion requirement should be pled,[6] six other circuits have considered the issue.[6] The Second, Seventh, Ninth and D.C. Circuits have held that the exhaustion requirement is an affirmative defense, akin to a statute of limitations. *See, e.g., Wyatt*, 280 F.3d 1238, 2002 U.S.App. LEXIS 2217, at *18; *Jackson v. District of Columbia*, 254 F.3d 262, 267 (D.C.Cir.2001); *Massey v. Wheeler,* 221 F.3d 1030, 1034 (7th Cir.2000); *Snider v. Melindez*, 199 F.3d 108, 111–12 (2d Cir.1999); *Massey v. Helman*, 196 F.3d 727, 734–35 (7th Cir.1999); *Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 536 (7th Cir.1999) ("Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations."); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) ("[Under requiring] that prisoners filing § 1983

5. In its brief, Pennsylvania suggests this circuit confronted the procedural characterization of the PLRA's exhaustion requirement in *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000), and *Nyhuis*. In both *Booth* and *Nyhuis* the plaintiff-prisoners explicitly conceded their failure to exhaust administrative remedies. *Booth*, 206 F.3d at 293 n. 2 ("Booth concedes that he did not avail himself of either the intermediate or final review process."); *Nyhuis*, 204 F.3d at 66 (stating plaintiff "argues that he did not avail himself of the administrative process because it could not provide him with two of the three forms of relief that he seeks in the present action"). Both dismissals would thus fall within a district court's inherent power to dismiss sua sponte a complaint which facially violates a bar to suit.

6. The district courts in this circuit are divided on whether the PLRA exhaustion requirement is an affirmative defense or some form of heightened pleading. Compare cases putting pleading burden on defendant, *see, e.g., Santiago v. Fields*, 170 F.Supp.2d 453, 458 (D.Del. 2001); *Gregory v. PHS, Inc.*, 2001 WL 1182779 (D.Del. Sept. 21, 2001), 2001 U.S. Dist. LEXIS 15765, at *7–10, with those that hold it is plaintiff's burden, *see, e.g., Bensinger v. Hollandhull,* 2001 WL 162231 (E.D.Pa. Dec.18, 2001), 2001 U.S. Dist. LEXIS 21014, at *8 ; *Rivera v. Whitman,* 161 F.Supp.2d 337, 343 (D.N.J.2001); *Payton v. Horn,* 49 F.Supp.2d 791, 797 (E.D.Pa.1999) (citing *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir.1998)); *White v. Fauver,* 19 F.Supp.2d 305, 312 (D.N.J.1998).

the PLRA, ... a defendant ... may also assert an affirmative defense the plaintiff's failure to comply with the PLRA's [exhaustion] requirement]."); *see also Jackson,* 89 F.Supp.2d at 56–58; 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1271, at 76 (Supp.2001); Kathryn F. Taylor, Note, *The Prison Litigation Reform Act's Administrative Exhaustion Requirement: Closing the Money Damages Loophole,* 78 Wash. U. L.Q. 955, 965 & n. 73 (describing the different practices, and arguing in favor of characterizing exhaustion as an affirmative defense). Some dicta in the Fifth Circuit supports this view. *Wendell v. Asher,* 162 F.3d 887, 890 (5th Cir.1998) ("Rather, the amended statute imposes a requirement, rather like a statute of limitations, that may be subject to certain defenses such as waiver, estoppel, or equitable tolling.").

The Commonwealth relies on the contrary position held by the Sixth Circuit. In *Brown v. Toombs,* 139 F.3d 1102 (6th Cir.1998), that court read the "plain mandatory language of the [PLRA] regarding exhaustion of remedies, the legislative purpose underlying the plain language, and the sound policy on which it is based, [as] requiring

cases involving prison conditions ... allege (statement of Sen. Dole); see also *Nyhuis*, 204 F.3d at 73 (observing "'Congress amended' section 1997e(a) largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts'") (quoting *Alexander v. Hawk*, 159 F.3d 1321, 1326 n. 11 (11th Cir.1998)) (citing 141 Cong. Rec. H14078-02 (daily ed. Dec. 6, 1995)). Second, Congress wished to reinforce the power of prison administrators to control prison problems, minimizing the "interference" of federal courts in matters of prison administration. See, e.g., *Alexander*, 159 F.3d at 1326 n. 11 ("Congress desired 'to wrest control of our prisons from the lawyers and the inmates and return that control to the competent administrators appointed to look out for society's interests as well as the legitimate needs of prisoners.'") (quoting 141 Cong. Rec. 26,553 (1995) (statement of Sen. Ky)); see also Taylor, *supra* at 964 (stating purpose behind the administrative exhaustion requirement is to give "prison administrators ... an opportunity to correct the inmate's problem on their own") (citing 141 Cong. Rec. 14,573 (1995) (statement of Sen. Ky)).

Although we agree with the *Brown* court that the plain language of the PLRA requiring that prisoners exhaust their administrative remedies before filing suit reflects the Congressional policy underlying the PLRA, the pleading rule *Brown* adopted does not necessarily follow. Congress appears to have had two primary concerns in enacting § 1997e(a). First, Congress expressed a desire to lessen the burden frivolous prison claims placed on federal courts. See, e.g., 141 Cong. Rec. 26,548 (1995) ("Frivolous lawsuits filed by prisoners tie up the courts, waste valuable legal resources, and affect the quality of justice enjoyed by law-abiding citizens.")

These policies are not inconsistent with construing the exhaustion requirement of § 1997e(a) as an affirmative defense. Under § 1997e(c)(1) and (2), courts have the power to dismiss frivolous lawsuits sua sponte, handily fulfilling the first congressional policy and making it unnecessary to view § 1997e(a) as authorizing the same action. The second policy, that of giving prison administrators the opportunity to control the situation within the prison, is addressed by the exhaustion requirement itself. The rules of pleading and proof do not bear on that issue. In fact, an opinion by Judge Easterbrook of the Seventh Circuit suggests that prison officials may choose to waive exhaustion, presumably so that they can secure judicial imprimatur for some intractable disputes. See, e.g., *Perez*, 182 F.3d at 536 ("Filing suit before exhausting prison remedies therefore is not the sort of defect that judges must notice even if the defendant is happy to contest the suit on the merits.").

We return therefore to our decision in *Williams* holding that defendants must plead and prove failure to exhaust as an affirmative defense. See *Williams*, 130 F.3d at 573. Although we recognize that the substance of the PLRA is different from that of Title VII, we note that *Williams* was relied on by the Seventh Circuit when it held that lack of exhaustion to be an affirmative defense in the PLRA context, *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir.1999). We see no good reason not to do the same, particularly because of the similar policies underlying both exhaustion requirements.

In their discussion of categorizing affirmative defense, Wright and Miller recommend resort to "considerations of policy [and] fairness." Wright & Miller, *supra* § 1271, at 444. According to those authors,

"[f]airness" probably should be viewed as a shorthand expression reflecting the judgment that all or most of the relevant

information on a particular element of a claim is within the control of one party or that one party has a unique nexus with the issue in question and therefore that party should bear the burden of affirmatively raising the matter.

*Id.* at 445. Applying this consideration to the exhaustion requirement, it appears that it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion. "[P]rison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners." *Wyatt*, 280 F.3d 1238, 2002 U.S.App. LEXIS 2217, at *20. Prison officials and their attorneys can also readily provide the court with clear, typed explanations, including photocopies of relevant administrative regulations. Pro se prisoners will often lack even such rudimentary resources.

[6] We thus join the many other circuits that have held that failure to exhaust is an affirmative defense to be pleaded by the defendant.[8]

### B. The District Court's Pleading Requirements

[7] In addition to holding that failure to exhaust is an affirmative defense, we find that the District Court erred in dismissing the complaint for failure to meet the heightened pleading requirement it imposed and in doing so sua sponte. The District Court's sua sponte dismissal is inconsistent with the statutory structure of the PLRA. Subsection (c) of § 1997e, entitled "Dismissal," provides for sua sponte dismissal by a district court for certain 124, 127 (3d Cir.1997) (observing affirmative defenses may be considered on a Rule 12(b)(6) motion if the defense would "present[ ] an insuperable barrier to recovery by the plaintiff").

---

7. The position of the Eighth Circuit is not clearly defined. In *McAlphin v. Morgan*, 216 F.3d 680, 682 (8th Cir.2000), the court, after citing Brown, dismissed the prisoner's complaint, noting he failed to attach evidence of exhaustion. See also *Jarrett v. Norris*, 2001 WL 708868 (8th Cir.2001) ("Although Jarrett submitted numerous grievances regarding his medical care, he did not present proof that he fully exhausted as to all of the claims in his complaint."); *Gill v. Herndon*, 2001 WL 476952 (8th Cir.2001) ("Gill failed to attach to his complaint any proof of administrative exhaustion."). In fact, Gill did not even attach proof of his initial grievances that were embodied in administrative records."). Recently, however, in *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir.2001), the court stated, without citation to Brown or McAlphin, that "we recognize that reliance upon the PLRA exhaustion requirement is an affirmative defense under Fed.R.Civ.P. 8(c)," and cited the Seventh Circuit's decision in Massey.

8. We do not suggest that defendants may not raise failure to exhaust as the basis for a motion to dismiss in appropriate cases. The issue is not raised by this case, and neither party has stated its position. See, e.g., *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d

enumerated reasons: The section provides:

**(c) Dismissal**

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c).

Availing here is an application of the principle of *expressio unius est exclusio alterius*—when a statute specifically enumerates some categories, it impliedly excludes others. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Section 1997e(c) explicitly provides for sua sponte dismissals in four instances: for, (1) the basis is apparent from the face of the complaint, *See, e.g., Rycoline Prods., Inc.* [...] *C & W Unlimited*, 109 F.3d 883, 886 (3d Cir.1997); *see also Snider*, 199 F.3d at 111–13 (discussing extensively sua sponte dismissals in the § 1997e(a) context). (4) seeks monetary relief from a defendant who is immune from such relief. § 1997e(c), Congress demonstrated a capacity to clearly authorize sua sponte dismissal when it so desired. Notably absent from the list is any reference to failure to exhaust. The final sentence of § 1997e(c)(2) that "the court may dismiss the underlying claim [for the four specified reasons] without first requiring the exhaustion of administrative remedies" shows that Congress had not forgotten about the need for exhaustion, but chose not to include failure to exhaust among grounds for which the court could dismiss sua sponte.[9] Inasmuch as the omission of failure to exhaust from the categories implicitly permitting sua sponte dismissal found in § 1997e, the same section of the PLRA that sets out the exhaustion requirement, the inference is inescapable that Congress did not intend to include failure to exhaust among the categories justifying sua sponte dismissal.[10]

9. The statutory structure also belies any possibility that a failure to exhaust is included in (c)(1)'s broad rubric of "failure to state a claim upon which relief can be granted." As one court observed:

Any argument that Congress intended the broad categories in Section 1997e(c)(1) to include dismissal for failure to exhaust is demolished by Section 1997e(c)(2), which grants the court power to dismiss *sua sponte*, without requiring exhaustion of administrative remedies. It makes little sense to permit dismissal for failure to exhaust and then state the court may dismiss without first requiring the exhaustion of administrative remedies.

*Jackson*, 89 F.Supp.2d at 57 (quoting 42 U.S.C. § 1997e(c)(2)); *see also Snider*, 199 F.3d at 112 ("[F]ailure to state a claim," as

---

[8] As a general proposition, sua sponte dismissal is inappropriate unless pleading standards are inconsistent with the "liberal system of 'notice pleading' set up by the federal rules." *Id.; see also Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876–77 (3d Cir.1995). In *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), the Supreme Court applied the same rationale in the PLRA context, criticizing "the creation of new rules by federal judges." *Id.* at 596, 118 S.Ct. 1584. The Court pointed out that "Congress has already fashioned special rules [in the PLRA]," concluding that "[i]f there is a compelling need to frame new rules of law ..., presumably Congress either would have dealt with the problem in the [PLRA], or will respond to it in future legislation." *Id.* at 596–97, 118 S.Ct. 1584.

Most recently, in *Swierkiewicz v. Sorema*, 122 S.Ct. 992, 70 USLW 4152 (Feb. 26, 2002), the Court, in a unanimous opinion, reiterated that courts may not require greater particularity in pleading than the Federal Rules require. As Justice Thomas wrote:

Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts.

*Id.* at 4154 (footnote omitted). As we previously noted, no provision of the PLRA requires pleading exhaustion with particularity.

Ray asks us to use this occasion to clarify that a Pennsylvania inmate may satisfy his or her exhaustion obligation in the course of the proceedings charging the inmate with misconduct under the Inmate Disciplinary Procedures. We decline to so

used in Sections 1997e(c) ... of the PLRA, does not include failure to exhaust administrative remedies.").

10. Moreover, failure to exhaust was not included when the PLRA amended the provision authorizing prisoner in forma pauperis suits to provide explicitly for sua sponte dismissal for certain specified reasons. 28 U.S.C. § 1915(e)(2). (2001) (amended Pub.L. 104-134, 110 Stat. 1321-74 (1996) (permitting dismissals "at any time" if action is frivolous or malicious, inter alia)). Congress also instituted a screening process for prisoner suits against governmental entities and their employees. *See* 28 U.S.C. § 1915A(a)–(b)(1) (directing dismissal "before docketing, if feasible," for, among other grounds, claims which seek monetary relief from defendants immune from such redress).

---

[8] Ray's failure to exhaust was not apparent from the complaint or other documents before the District Court. On the first page of his complaint, under a caption entitled "Exhaustion of Administrative Remedies," Ray alleged that the grievance process had been completed. Also, Ray's objections to the Magistrate Judge's Report and Recommendation were filed in the District Court. In those objections, Ray again noted his exhaustion, this time with more particularity, stating "Plaintiff did exhaust administrative remedies by exhausting the appeal process for all misconduct mentioned in the complaint." App. at 111. Ray also attached to his objections copies of several misconduct charges, and a handwritten copy of the final disposition of the sole misconduct of which he was found guilty. Without further inquiry, the District Court was not in a position to reach the conclusion that Ray failed to exhaust his administrative remedies.

[9] The District Court also stated that Ray's complaint was deficient because "Ray has not demonstrated that he has exhausted administrative remedies." Supp. at 2 (emphasis added). In so stating, the court imposed the additional requirement that a prisoner must demonstrate compliance with the exhaustion requirement. We view that holding as inconsistent with the Supreme Court's teachings in *Leatherman*, where the Court explained that courts should narrowly interpret statutory language to avoid heightened pleadings standards. 507 U.S. at 168, 113 S.Ct. 1160.

hold.

That issue should be considered in the first instance by the District Court because it may require information regarding how prison administrators interpret the scope of the Inmate Disciplinary Procedures, the Inmate Grievance System, and the interaction between them.

## IV.

## CONCLUSION

For the reasons set forth, we will reverse the decision of the District Court dismissing Ray's complaint.

⊙ KEY NUMBER SYSTEM

James HARVEY, Plaintiff-Appellee,

v.

Robert F. HORAN, Jr., Commonwealth's Attorney, County of Fairfax, Defendant-Appellant.

Jennifer Thompson; Karen R. Pomer; Jeri Elster, Amici Curiae.

No. 01-6703.

United States Court of Appeals, Fourth Circuit.

Filed: March 28, 2002.

## ORDER

Appellee filed a petition for rehearing and rehearing en banc.

Judge King voted to grant panel rehearing. Chief Judge Wilkinson and Judge Niemeyer voted to deny.

No member of the Court requested a poll on the petition for rehearing en banc.

Chief Judge Wilkinson filed an opinion concurring in the denial of rehearing en banc.

Judge Luttig filed an opinion respecting the denial of rehearing en banc.

The Court denied the petition for rehearing and rehearing en banc. Entered at the direction of Chief Judge Wilkinson for the Court.

WILKINSON, Chief Judge, concurring in the denial of rehearing and rehearing en banc.

There is no doubt that Harvey should receive the biological evidence in this case for DNA testing using technology that was unavailable at the time his Virginia conviction became final. In fact, the panel opinion suggested that the state courts could order DNA testing. *See Harvey v. Horan*, 278 F.3d 370, 380 (4th Cir. 2002) (stating that "state courts are free in ways that we are not to set the ground rules by which further collateral attacks on state convictions such as Harvey's may be entertained"). And that is precisely what state courts have now done. The question before us, is thus not whether Harvey should or will receive the DNA evidence. He should and he will. Rather, the question is whether a § 1983 action brought in federal court in the first instance is the appropriate vehicle for him to access that evidence.

I nonetheless confess myself puzzled over the discussion herein. Their points have been extensively addressed in the earlier majority and concurring opinions. No member of the court requested a vote on the suggestion for rehearing en banc and my brother agrees "that a denial of rehearing en banc is not the proper disposition of this particular case." *Post* at ___. However, inasmuch as my colleagues undertaken an extended discussion of their own, I tender this brief response.

HARVEY v. HORAN    299
Cite as 285 F.3d 298 (4th Cir. 2002)

offenders prey will have any assurance of justice.

### A.

The panel opinion identifies the multiple procedural problems Harvey's § 1983 claim faces. *See Harvey*, 278 F.3d at 374-80. Yet the separate opinion would throw each and every one of these considerations to the winds. As Harvey's case shows, state courts, if given a chance, can rise to their responsibilities. Yet my good colleague would not only deny them that chance, but do so in unprecedented fashion, encouraging state prisoners to press their claims initially in federal court while disregarding all state court procedures and all state legislative avenues of redress.

This is not to say that the federal courts are uncharitable with respect to claims of innocence. For example, Rule 33 of the Federal Rules of Criminal Procedure authorizes motions for a new trial on the basis of newly discovered evidence. And the seminal case of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), allows a state prisoner to press a claim of innocence in federal court on the ground that "the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt." 443 U.S. at 321, 99 S.Ct. 2781. *See also Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (stating that "actual innocence" is not itself a constitutional claim," but that it can serve as a "gateway" through which a habeas petitioner can "have his other-wise barred constitutional claim considered on the merits").

It is important however that claims of innocence should be entertained, where possible, in the first instance by the court, or at least by the court system, that initially heard the case. Such a rule, ostensibly directed to considerations of venue or comity, actually serves a larger purpose. It

### I.

### A.

The threshold question posed by Harvey's § 1983 action relates to the nature of constitutional right he asserts. There are two possibilities here, one procedural and the other substantive. The procedural is the right to press and proclaim one's innocence in a federal forum in the first instance when seeking access to DNA testing, even where the judgment to be challenged is a state conviction.

The American criminal justice system rightly sets the ascertainment of truth and the protection of innocence as its highest goals. The average school child is aware (or so we hope) that the accused is clothed with a presumption of innocence and that the prosecutor must prove beyond a reasonable doubt that a crime was committed. Moreover, the concern with innocence does not end at trial. Elaborate post-conviction procedures are rightly in place to ensure not only that a trial was fair, but also that no individual has been wrongly convicted.

Our system however does not allow any person to press a claim of innocence at any time, at any place, and in any manner. The assertion of innocence, just as the assertion of any right, is intertwined with orderly process. It matters, for example, that a Virginia prisoner has sought here to bypass Virginia's system of criminal justice altogether, and proceed directly into federal court under § 1983. Such disregard of process is an anomaly in an area where criminal defendants, above all, rely on proper process to protect their rights. What Alexander Bickel termed "the morality of process" in the political system has application to criminal justice as well. Alexander M. Bickel, *The Morality of Consent* 123 (1975). Shorn of process, neither the innocent nor the public upon whom

**1190** 196 FEDERAL REPORTER, 3d SERIES

the pre-offer costs. *See Knight v. Snap-On Tools Corp.*, 3 F.3d 1398, 1405 (10th Cir.1993).

The district court granted Deposit's motion to amend the judgment to find that First National was not entitled to post-offer costs, and amended the judgment to award no costs to First National. The district court accepted Fidelity & Deposit's reasoning that First National was not favorable than the $67,333.49 settlement offer. The district court, however, made no findings regarding whether Fidelity & Deposit or First National was the prevailing party. Accordingly, we remand this issue for the district court to decide which party, if any, is entitled to costs under Rule 68.

VACATED and REMANDED for further proceedings consistent with this opinion.



Tracy Anthony MILLER,
Plaintiff-Appellant,

v.

Charlie Poole TANNER, Lt., et al., Defendants-Appellees.

No. 98-9153.

United States Court of Appeals,
Eleventh Circuit.

Nov. 18, 1999.

State prison inmate brought § 1983 claim alleging excessive force by prison guards. The United States District Court for the Northern District of Georgia, No. 4:96-cv-148-HLM, Harold L. Murphy, J., dismissed claim for failure to exhaust administrative remedies. Inmate appealed. The Court of Appeals, Tjoflat, Circuit Judge, held that: (1) inmate did not fail to exhaust his administrative remedies, as required under Prison Litigation Reform Act (PLRA), by failing to sign and date prison grievance form, and (2) inmate did not fail to exhaust remedies by failing to appeal after being told unequivocally that institutional-level denial of his grievance appeal was precluded.

Reversed and remanded.

**1.** Federal Courts ⇐776

Court of Appeals reviews de novo dismissals for failure to exhaust administrative remedies under Prison Litigation Reform Act (PLRA). Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**2.** Constitutional Law ⇐328

Prison inmates have constitutional right of access to the courts.

**3.** Civil Rights ⇐209

Inmate incarcerated in state prison must first comply with grievance procedures established by state department of corrections before filing federal lawsuit under § 1983. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**4.** Civil Rights ⇐209

In deciding if inmate bringing § 1983 rights suit exhausted his administrative remedies under Prison Litigation Reform Act (PLRA), court does not review effectiveness of those remedies, but whether remedies were available to and exhausted. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**5.** Civil Rights ⇐209

State prison inmate did not fail to exhaust his administrative remedies, as required under Prison Litigation Reform Act (PLRA) to bring §1983 claim, [...] sign and date prison grievance [...]

MILLER v. TANNER
Cite as 196 F.3d 1190 (11th Cir. 1999)
**1191**

where prison had detailed set of standard operating procedures (SOP) relating to inmate grievances, but SOPs did not require that an inmate sign or date a grievance form when submitting it to his or her counselor, nor require that inmates file other grievances under penalty of perjury, but, rather, only required inmate's receipt of response from warden. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**6.** Civil Rights ⇐209

State prison inmate did not fail to appeals the district court's dismissal of his 42 U.S.C. § 1983 claim because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, *see* 42 U.S.C. § 1997e(a) (Supp. II 1996). We find that Miller did exhaust the administrative remedies set forth in the Georgia Department of Corrections' ("the GDC") procedures.[1] Accordingly, we reverse the district court's grant of summary judgment.

Before ANDERSON, Chief Judge, TJOFLAT, Circuit Judge, and FAY, Senior Circuit Judge.

Appeal from the United States District Court for the Northern District of Georgia.

John C. Jones, Ralph Williams Ellis, David Joel Marmins, Asst. Atty. Gens., Atlanta, GA, for Defendants-Appellees.

Nicholas A. Lotito, Davis, Zipperman, [Kirschenbaum] & Lotito, Glenn Garrison [...], Christopher C. Marquardt, Alston [...] LLP, Atlanta, GA, for Plaintiff-Appellant.

TJOFLAT, Circuit Judge:

Tracy Miller, a Georgia prison inmate, appeals the district court's dismissal of his 42 U.S.C. § 1983 claim because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, *see* 42 U.S.C. § 1997e(a) (Supp. II 1996). We find that Miller did exhaust the administrative remedies set forth in the Georgia Department of Corrections' ("the GDC") procedures. Accordingly, we reverse the district court's grant of summary judgment.

I.

In his complaint, filed with the district court on May 22, 1996, Miller alleged that upon arriving at Hays State Prison ("Hays") on April 18, 1996, appellee Tanner and eleven prison guards, including appellees Poole, Blalock, and Martin, dragged him from the transport van and beat him for being a "troublemaker" who filed numerous grievances at his former prison.[2] Miller further alleged that after being beaten, he was taken to the prison infirmary where appellee Dr. Derrick refused to treat him, forcibly x-rayed him, [...]

administrative remedies makes it unnecessary for us to decide these other issues.

**2.** The question presented in this appeal is whether appellant exhausted his administrative remedies. The facts relating to that question are undisputed. Although the facts underlying the grievance are in dispute, they are irrelevant as to the exhaustion question. Our offer appellant's version merely as back[ground]

**1192**                                                                    **196 FEDERAL REPORTER, 3d SERIES**

and ordered him shackled to a metal bed. Miller alleged that appellees were indifferent to his medical needs as a paraplegic with a neurogenic bladder. Instead of treating him, appellees housed him in an unaccommodated unit, left him on the concrete floor of his cell, allowed him to become covered in feces and urine, denied him the use of a wheelchair or leg braces, and denied him physical therapy.[3]

On November 12, 1996, Miller amended his complaint, presenting the following additional allegations: that on April 22, 1996 he obtained an inmate grievance form from his counselor at Hays, and that he filed that grievance on April 25. Miller failed to sign or date the grievance form. On May 2, 1996, Kyla Wilbanks, the Hays grievance clerk, sent Miller a memorandum stating that his grievance was denied because "[he] did not sign or date [his] grievance form." This memorandum also stated that "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal."[4] After his grievance(s) is closed."[4] After his grievance was denied, Miller filed a section 1983 civil rights action, alleging that appellees violated his Eighth Amendment right to be free of cruel and unusual punishment by using excessive force against him and being deliberately indifferent to his medical needs.

Appellees moved the district court to dismiss Miller's complaint, as amended, for failure to allege a constitutional violation. The district court denied their motion. After filing an answer, appellees filed a motion, styled "Defendants' Motion to Dismiss and Motion for Summary Judgment," in which they argued that appellant failed to exhaust his administrative remedies before bringing suit. Appellees contended that Miller failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a), because he did not sign and date the grievance form.

On August 28, 1998, the district court granted appellees' motion and dismissed Miller's case without prejudice.[5] The court found that Miller failed to exhaust his administrative remedies because he did not follow the GDC's grievance procedures, which required that he sign and date his grievance form. This appeal followed.

## II.

[1] We review de novo dismissals for failure to exhaust administrative remedies under section 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998).

[2, 3] Prison inmates have a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996) (stating that prisoners must be afforded reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts) (quotation marks omitted).

1997e(a) sets forth the procedures prisoners must follow in exercising their mental right of access to the courts. Under this provision, prisoners must exhaust any administrative remedies available to them before filing a suit in federal court.

5. The district court's order "granted" Defendants' Motion to Dismiss…" Because the court relied on at least one of the affidavits in support of their motion for decision, we assume that the court granted a motion for summary judgment in the same breath, dismissed Miller's complaint, as amended, without prejudice. The standard of review of the district court's summary judgment is…

3. In his complaint, Miller also alleged instances of excessive force that occurred on May 9, 1996. Miller admits that he did not exhaust his administrative remedies as to these instances because he did not file a grievance after they occurred. On appeal, therefore, we address only the allegations in Miller's complaint that relate to the April 18, 1996 incidents.

4. Miller attached this memorandum to his amended complaint; the memorandum therefore became part of his allegations.

---

**MILLER v. TANNER**                                                    **1193**
Cite as 196 F.3d 1190 (11th Cir. 1999)

based on violations of constitutional rights. Specifically, section 1997e(a) provides that:

[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). An inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.

[4, 5] In deciding if Miller exhausted his administrative remedies, we do not review the effectiveness of those remedies, but rather whether remedies were available and exhausted. See Alexander, 159 F.3d at 1326. There is no dispute that the GDC made administrative remedies available to prisoners. Before deciding whether Miller followed the proper procedures to exhaust those remedies, we must first determine what the procedures were that he had to follow.

The GDC has a detailed set of Standard Operating Procedures (the "SOPs") relating to inmate grievances. These procedures provide inmates and their counselors a step-by-step guide to filing a grievance. For instance, the "Jurisdiction" section of the SOPs explains what kinds of harms form the basis of a grievance, what kinds of harms cannot be grieved, and what kinds of harms must be grieved through more specialized processes such as the Administrative Segregation appeal process. See Georgia Dep't of Corrections, SOPs, at 3–4 (1996). The "Procedures for Filing a Grievance" section of the SOPs is similarly specific.

…the grievance procedures required that inmates make their allegations under penalty of perjury, then signing the form would be necessary. Such a rule would operate much like the signature and oath requirements on…

tifies that the signer believes the allegations asserted are true—provides the basis for bringing perjury charges against the signer. Cf. Cori v. Smith, 370 F.2d 418, 420 & n. 1 (9th Cir.1966); Lamberti v. United States, 22…

The SOPs do not require that an inmate sign or date a grievance form when submitting it to his or her counselor. The only time the SOPs require a signature from an inmate is when the inmate receives a response from the warden/supervisor. At that time, the inmate is required to sign the grievance form confirming that a response was received. See id. at 12. Further, the SOPs do not require that inmates file their grievances under penalty of perjury.[6]

The SOPs set forth the hierarchy for running the grievance system at each Georgia prison. At the top is the warden/supervisor, followed by the Grievance Coordinator, and then the counselors. See SOPs at 5. The counselors assist inmates in filing their grievances by distributing grievance forms, assisting prisoners in preparing such forms (particularly prisoners for whom English is a second language), and receiving completed forms. See id. at 5–6. When a counselor receives a grievance form, he or she is required to "complete the receipt portion of the form indicating the inmate's name, I.D. Number, and the date the inmate submitted the grievance." Id. at 6 (emphasis in original). Next, the counselor signs the receipt portion of the grievance form and returns one copy to the inmate. See id. A counselor is also required, by the next business day, to submit to the Grievance Coordinator the information necessary to enter the grievance into the Inmate Grievance Management System database. Id. This information includes the inmate's name and the date on which the inmate filed his or her grievance. Thus, once the Grievance Coordinator enters the grievance into the database, which presumably occurs within a few days, anyone in the GDC is able to find out that a grievance was filed, by whom, and on what date.

Appellees argue that the GDC's grievance procedures required that Miller sign and date his grievance form. According to appellees, this is "a common sense procedural requirement" because otherwise the GDC would have no way of knowing who filed the grievance or when it was filed. If the GDC thought signing and dating the form was a common sense requirement, it should have included the requirement in its grievance SOPs. The SOPs require many other specific steps, such as that the form be completed in blue or black ink, that the counselor sign the form, that the counselor fill out the inmate's name and the date on which the grievance was filed, and that the inmate sign upon receipt of the warden/superintendent's response. SOPs at 5–6. Certainly, if the GDC thought to provide for all of these steps, it would have included the "common sense" requirement of a signature and date if it had thought such a requirement useful to the grievance procedure. But it did not. The GDC's grievance procedures simply do not require that an inmate sign and date a grievance form when it is submitted.

Further, it is not true, as appellees asserted at oral argument, that without a signature and date the GDC would have no way of knowing who filed the grievance or when. Under the SOPs, a counselor must be informed that an appeal was properly exhausted; administrative remedies since he had informed that an appeal was properly filed. We find that Miller was not required in order to exhaust his administrative remedies, to file an appeal after being unequivocally that appeal of an institutional-level denial was precluded. He exhausted his administrative remedies by his April 25, 1996 grievance form.

### III.

For the foregoing reasons, we find that Miller exhausted his administrative remedies as required by 42 U.S.C. [...]. Therefore, we REVERSE the court's dismissal of Miller's complaint, and REMAND this case [...]

[6] Even if Miller was not required to sign and date his grievance form to exhaust his administrative remedies, appellees argue, he was required to appeal the [...]

institutional-level denial of his grievance to satisfy section 1997e(a)'s exhaustion requirement. Again, we disagree. The 1996 memorandum Miller received on May [...] denying his grievance at the institutional level stated "[w]hen any grievance is terminated at the institutional level, you do not have the right to appeal. The above listed grievance(s) is closed." This statement unambiguously told Miller that this appeal was futile, even prohibited. In other words, appealing might be treated as insubordination and that there might be harmful consequences for disobeying the rules.

Appellees point us to a statement in the original grievance, which stated, "[i]f your appeal, return this form and the appeal form to your counselor or grievance coordinator, within four (4) calendar days receipt of the warden/superintendent's response." This is of no importance because it only told Miller what to do if his appeal by the person charged with [...] complied with properly. What [...] ance form told Miller to do if the [...] appeal, therefore, is irrelevant [...] mining whether he properly exhausted administrative remedies since he had [...] informed that an appeal was prohibited. We find that Miller was not required in order to exhaust his administrative remedies, to file an appeal after being [...] unequivocally that appeal of an institutional-level denial was precluded. He exhausted his administrative remedies by his April 25, 1996 grievance form.

district court for further proceedings consistent with this decision.

SO ORDERED.

---



# SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,

### v.

# UNIQUE FINANCIAL CONCEPTS, INC., Ernest J. Patti, et al., Defendants-Appellants.

### No. 99-4033.

United States Court of Appeals, Eleventh Circuit.

Nov. 18, 1999.

Securities and Exchange Commission (SEC) brought suit to enjoin securities violations. The United States District Court for the Southern District of Florida, No. 98-7147-CV-SH, Shelby Highsmith, J., found that defendants' activities were subject to Securities Act and issued preliminary injunction. Defendants appealed. The Court of Appeals, Black, Circuit Judge, held that: (1) common enterprise prong of *Howey* test was satisfied; (2) "expectation of profits" prong was satisfied; and (3) scheme whereby investors' funds were pooled and distributed on pro rata basis alleged purpose of trading foreign currency options involved "commodity pool," in concurrent jurisdiction of SEC and Commodities Futures Trading Commission (CFTC).

Affirmed.

1. Federal Courts ⇐815

Decision to grant preliminary injunction is reviewed for abuse of discretion.

2. Federal Courts ⇐776, 862

Questions of law supporting preliminary injunction are reviewed de novo, while findings of fact are reviewed for clear error.

3. Injunction ⇐138.18

When preliminary injunction is challenged on basis of jurisdiction, plaintiff need only establish reasonable probability of ultimate success upon question of jurisdiction when action is tried on merits.

4. Securities Regulation ⇐5.10

*Howey* test for determining whether transaction is "investment contract" within meaning of Securities Act has three elements: (1) investment of money, (2) common enterprise, and (3) expectation of profits to be derived solely from efforts of others. Securities Act of 1933, § 2(a)(1), as amended, 15 U.S.C.A. § 77b(a)(1).

See publication Words and Phrases for other judicial constructions and definitions.

5. Securities Regulation ⇐5.10

Common enterprise exists, as required to satisfy *Howey* test for determining whether transaction is "investment contract," where transaction is "investment contract," where fortunes of investor are interwoven with and dependent on efforts and success of those seeking the investment or of third parties. Securities Act of 1933, § 2(a)(1), as amended, 15 U.S.C.A. § 77b(a)(1).

6. Securities Regulation ⇐5.10

Unlike more stringent concept of horizontal commonality for determining common enterprise prong of *Howey* test for investment contract, concept of vertical commonality does not require investor funds to be pooled nor does it require profits to be shared on pro rata basis. Securities Act of 1933, § 2(a)(1), as amended, 15 U.S.C.A. § 77b(a)(1).

7. Securities Regulation ⇐5.10

In order to qualify as investment contract under Securities Act, it is enough