FILED
WILLIAMSPORT, PA

SEP - 3 2002

MARY E. D'ANDREA, CLERK
Per ___KLW___
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CHARLES KENNEY, | : | Civil Action No. 1:CV-00-2143 |
| Plaintiff, | : | Honorable Judge J.E. Jones, III |
| | : | (Presiding) |
| v. | : | |
| | : | |
| JAKE MENDEZ; | : | (Magistrate Judge T.M. Blewitt) |
| JESUS "JESSE" GONZALEZ; | : | |
| JAMES "JIMMY" SCARBOROUGH; and | : | |
| KELLY M. KEISER, | : | |
| Defendants. | : | |

**PRO SE AMENDMENT TO AMEND COMPLAINT PURSUANT TO THE FEDERAL RULES
OF CIVIL PROCEDURE 28 USCA §§ 59(e) AND RULE 15**

PLAINTIFF-John Charles Kenney, is solely acting pro se in the above captioned civil action, he hereby submits a "Pro Se Amendment" to amend his previously filed complaint of December 12, 2000. Kenney "wishes" to submit the instant amendment to his complaint in order to cure some deficiencies and to clarify some discrepancies. Because a final judgment [1/] has not, yet been entered by the presiding, i.e., district court judge. That, the instant amendment is properly before this Honorable U.S. District Court.

Unfortunately, defendants on September 29, 1999, had "violently" beat Kenney upon his noddle and ophthalmic during his incarceration while he was at U.S. Penitentiary Allenwood, or ("Allenwood-USP"), located in White Deer, Pennsylvania. The indisputed injuries caused to Kenney, inflicted by the defendants were, indeed, "NUMER-

---

[1/] Although, computerized docket entries reflect that the U.S. Magistrate entered summary judgment in favor of the defendants on June 17, 2002. That, Kenney has not, yet received a final judgment from the district court. Kenney had also "timely" filed written objections to the Magistrates proposed findings on June 25, 2002, that were followed by supporting supplemental authorities on June 26, 2002. On July 9, 2002 Kenney filed a "Pro Se Reply Response" to Defs: Opposition response. Again, Kenney has not received any response from the Magistrate, nor the District Court regarding his "Pro Se Reply."

OUS," thereby sustaining a "valid" <u>Eighth</u> <u>Amendment</u> claim. (See In-
jury Assessment Follow-Up, dated 9/29/99)(follow-up injury sheet
was initially attached to the 12/12/00 complaint, which reflects
"six-smitten-blows"). Due to defendants' miscreant acts committed
upon and against Kenney. That, he had instituted this <u>Bivens</u> action,
suing each of the four-defendant perpetrators (named in the caption
of this action) in either their individual and official capacities,
or both.

### PRO SE LIBERAL CONSTRUCTION GOVERN THIS AMENDMENT

Under the familiar teachings of <u>Haines v. Kerner</u>, 404 U.S. 519-
520-21 (9172)("pro se prisoner complaints however inartfully pleaded
are held to less stringent standards than formal pleadings drafted
by lawyers."). Therefore, Kenney **must** be given "a measure of toler-
ance." <u>United States ex rel. Montgomery v. Brierly</u>, 414 F.2d 552,
555 (3rd Cir. 1969). Given this liberal tolerance, coupled with lee-
way affordedd to Kenney in this proceeding. (See "leeway" previously
afforded to Kenney by the Court on January 4, 2002. That, Kenney
seeks this Court's indulgence in construing this instant amendment.

### PRESENTATION OF THE AMENDED ISSUES

1) Discovery is needed in order for Kenney to "fairly" present
his case against the defendants;

2) Kenney on February 20, 2002 had demanded a civil trial by
jury pursuant to <u>Civ. R. Proc.</u> RULE 38(b). On February 27, 2002 Ken-
ney submitted a brief in support of his 38(b) motion. However, the
Magistrate "gelidly" ignored this issue "entirely," thus never ruled
upon it. Therefore, Kenney wishes to "renew" his previous demand for
a civil trial by jury;

3) Oddly, defendants contend that Kenney "untimely" filed his inmate grievance appeals (intra-prison-levels). However, the Magistrate in its June 17, 2002 Order found that, "[p]laintiff submits **PROOF** that he has, in fact, proceeded through each of the required administrative steps." (See Order, dated 6/17/02, at p. 4)(reflecting)(emphasis added). Kennney's written objections, dated 6/25/02, and his supplemental authorities submitted 6/26/02, and his "Pro Se Reply Response" of 7/9/02. Demonstrates that, Kenney has, indeed, satisfied exhaustion; (See also Attachments One & Two hereto);

4) Since commencement of this action, favorable (relevant) opinions supporting Kenney's case has been decided. Kenney "now" wishes to submit them; (See authorities cited and quoted herein); see also Attachs one & two hereto;

5) The Magistrate had committed "clear error" for failing to provide Kenney with a "fair notice" that his case was going to enter summary judgment phase. This unexpected "surprise" substantially prejudiced Kenney. Where the rug was "snatched" out from underneath him. Kenney never had the opportunity to prepare for such a phase, as one for summary judgment;

6) The Magistrate on January 4, 2002 had opined that Kenney has "an arguably meritorious claim has been stated." (See Magistrate's Order, dated 1/4/02). Based on the "substantial" merits of this case and Kenney's "staggering" inability to fairly present it. That, Kenney "DESPERATELY" moves for the appointment of counsel based upon the following.

## NECESSITY OF AMENDMENT AND AUTHORITIES IN SUPPORT

In Kenney's "struggling" pro se stance in prusuit of relief. That, it is merely incumbent upon him to rely on the following au-

thorities available to him in support of this amendment. Kenney "chiefly" relies on an Honorable Third Circuit case and another. See Hamilton v. Leavy, 117 F.3d 742, 750 (3rd Cir. 1997)("remanding with instructions to appoint counsel for [inamte-plaintiff] and to permit him to undertake discovery and to permit him to amend his complaint.")(LEWIS, J.); see also Soto v. Brooklin Correctional - Facility, 80 F.3d 34, 37 (2nd Cir. 1996)("Om remand, the District Court should first permit reasonable discovery . . . and leave to amend."). Because Kenney has, "a colorable Eighth Amendment claim," as in Hamilton. Id. 117 F.3d at 749. But, is "ill-equipped" [2/] to represent himself or to litigate this claim." Id. at 749. Kenney also has psychiatric problems similar to those of Hamilton. Id. at 749. Therefore, Hamilton neatly fits Kenney in his endeavors eloquently described in this amendment.

## FAILURE TO AFFORD NOTICE

When the Magistrate "instantaneously" granted defendants' motion on judgment of the pleadings (Doc. 91). Thereby, entering summary judgment in their favor on June 17, 2002. This "prejudiced" Kenney, because, he had not the opportunity to prepare for a RULE 56 phase. See Loma Linday, 213 F.3d 1001, 1006 (8th Cir. 2000)("We suggest that, **on remand,** the District Court give plaintiffs an appropriate opportunity to respond to defendants' motion, this time with a clear understanding that the motion is being treated as one for summary judgment."). Therefore, the Magistrate entered an "erroneous" ruling warranting remand.

---

2/ Kenney on June 4, 2001 was found "NOT GUILTY ONLY BY REASON OF INSANITY in this Court by a federal jury. See United States v. John C. Kenney, Criminal No. 4:CR-99-0280. Kenney has an extensive psychiatric history past and current.

4

## DISCOVERY-ISSUE

When this Court by Order on March 4, 2002 vacated a prior
Order of April 13, 2001. Vacating Kenney's removal from the juris-
diction (of Pennsylvania). The vacation prohibited Kenney from at-
tempting to obtain discovery. (See Order, dated March 8, 2002)(gran-
ting [Kenney] an extension of time to respond to Defendants' motion
for judgment on the pleadings). As result of the vacation, defendants
"immediately" transferred Kenney from the (Pennsylvania) jurisdic-
tion on March 25, 2002. Kenney was in transit, until April 3, 2002.
Is when, he had arrived at his current place of confinement, at U.-
S. Penitentiary Pollock, located in Pollock, Louisiana. Therefore,
Kenney never had the time to adequately prepare, nor attempt to ob-
tain discovery. Thus, Kenney does not even know how to apply for
discovery. Therefore, he should be permitted discovery, as in Hamil-
ton, supra, 117 F.3d at 749-50; and Soto, supra, 80 F.3d at 37. Thus,
counsel should be appointed to assist  Kenney with discovery. See
Young v. Quinlan, 960 F.2d 351, 358 (3rd Cir. 1992)("suggesting dis-
trict court to consider appointing counsel to assist [Young] with
discovery and trial.")(NYGAARD, J.)(REMANDED). As in Young, Kenney
too requires appointed counsel to assist him with discovery for
his (previously demand for a civil trial by jury). Therefore, Kenney
request this Honorable Court to appoint him counsel to assist him
with his civil trial.

## SATISFACTION OF EXHAUSTION PURSUANT TO 42 USCA § 1997e(a)

It is "undisputed" that 28-days, **before** Kenney filed this ac-
tion. That, he has in fact proceeded through each of the required
administrative steps. (Order, dated 6/17/02 p. 4)(reflecting). Al-

though, Kenney's grievance appeals were "rejected" intraprison-

levels, as untimely. Such rejections <u>do</u> <u>not</u> bar Kenney's action.

According to the "puissant" force of relevant caselaw expounded by

Honorable Judge S.L. ROBINSON in, <u>**Santiago v. Fields**</u>, **170 F.Supp.2d**

**453, 458 (D.Del. 2001)**, determining that:

> "In the case at bar, plaintiff pursued his administra-
> tive remedies by filing a grievance form.  Although
> plaintifff allegedly failed to appeal the rejection
> of his grievance form, the court finds that defendants
> have presented insufficient evidence to suggest that
> plaintiff was adequately notified of the rejection
> and his obligation to appeal it so as to preserve his
> right to sue. Thus the court <u>determins that plaintiff</u>
> <u>has exhausted his administrative remedies.</u>"

<u>Santiago</u>, 170 F.Supp.2d at 458 (Emphasis added).

Mounting cases, see also: <u>Pearson v. Vaughn</u>, 102 F.Supp.2d

282, 288 n. 13 (E.D.Pa. 2000)("no time time limit exists when a

response to a grievance will be in the form of a grievance re-

jection."). Hon. Judge BRODY in <u>Pearson</u> adopting the reasoning of

<u>Millier v. Tanner</u>, 196 F.3d 1190, 1194 (11th Cir. 1999)(determi-

ning that although an inmate-plaintiff failed to appeal the de-

nial of his grievance, plaintiff exhausted his administrative

remedies . . . "); <u>Irvin v. Zamora</u>, 161 F.Supp.2d 1125, 1135 (S.-

D.Cal. 2001)("As long as the basic purpose of exhaustion are ful-

filled there does not appear to be any reason to require a prisoner

plaintiff to present fully developed legal and factual claims at

the administrative level.")(emphasis added); <u>Curry v. Scott</u>, 249-

F.3d 493, 505 (6th Cir. 2001)(no heightened pleading [grievance]

requirement can be imposed upon would-be § 1983 plaintiff[]); <u>accord</u>

<u>**Ray v. Kertes**</u>, **285 F.3d 287, 295-97 (3rd Cir. 2002)("we find that**

**the District Court erred in dismissing the complaint for failure**

to meet the heightened pleading requirement.")(SLOVITER, J.)(RE-VERSING dismissal of complaint). The "bombardment of Santiago, Pearson, Miller, Irvin, Curry, and Ray, supra. Compels this Court to "REVERSE" the Magistrate's June 17, 2002, Order in Kenney's favor. Thereby, precluding summary judgment for the defendants.

## MOTION FOR LEAVE TO APPOINT COUNSEL

The right to appoint civil counsel, however, is not absolute. But, on the same token the U.S. Constitution mandates that plaintiffs and defendants have fair trials. See **Bailey v. Systems Innovation, Inc, 852 F.2d 93, 98 (3rd Cir. 1988)([its] "abundantly clear that fairness in a jury trial, whether criminal or civil in nature, is a vital constitutional right.")(citations omitted)**. No doubt that Kenney has a "colorable" Eighth Amendment claim. (See Order, dated 1/4/02)(reflecting meritorious claim by this Court). In light of that above. That it would be an "awesome travesty" to deny Kenney the appointment of counsel, where he is, **"ill-equipped to represent himself or to litigate this claim." Hamilton, supra, 117 F.3d at 749.** When, Kenney was found "NOT GUITLY ONLY BY REASON OF INSANITY" by this Court on June 4, 2001. See **U.S. v. Kenney**, at **4:CR-99-0280. (M.D.Pa.)(McClure, J.)**. The verdict alone in Kenney's companion case ably demonstrates that he is, indeed, ill-equipped. Not to mention previous "unrebutted" medical evidence submitted to this court in the instant case. Honorable Third Circuit Court Justice LEWIS in Hamilton explicated that:

> "[T]he record indicates that Hamilton may be ill-equip-ped to represent himself or to litigate this claim in-asmuch as there is unrebutted medical evidence that he suffers from a paranoid delusional disorder. The dis-trict court's failure to consider the weight of this fact demonstrates that more serious consideration

> **should have been given to Hamilton's request for the appointment of counsel. We will therefore reverse on this issue and remand to the district court with instructions to appoint counsel for Hamilton."**

Hamilton, supra, 117 F.3d at 749 (Emphasis added).

Besides, Kenney does not know how to apply, nor attempt to apply for discovery, even though, he has a colorable claim. See Hamilton. Id at 749 ("**Hamilton does have a colorable Eighth Amendment claim. We will, therefore, remand this issue to the district court with instructions to permit Hamilton to pursue full and reasonable discovery.")(emphasis added)**. Moreover, this Court has repeatedly appointed counsel for inmate-plaintiff(s). See Maclean v. Secor, 876 F.Supp. 695, 698 n. 1 (E.D.Pa. 1995)(Court appointed counsel for inmate-plaintiff in a civil case against the BOP)(BRODY, J.); Gibbs v. Ryan, 160 F.3d 160-62 (3rd Cir. 1998)(district court had granted inmate-plaintiff appointed counsel to assist in filing an appeal.); Fuente v. Wagner, 206 F.3d 335, 338 n. 2 (3rd Cir. 2000)(counsel appointed to represent inmate-plaintiff even in an unsuccessful "excessive force" claim.); Young v. Quinlan, supra, 960 F.2d at 358 (suggesting district court to consider appointing counsel to assist inmate plaintiff with discovery and trial.)(NYGAARD, J.); Santiago v. Fields, supra, 170 F.Supp.2d at 460 (court granting inmate-plaintiff civil counsel to represent him in his "excessive-force" case.)(ROBINSON, J.); Pearson v. Vaughn, supra, 102 F.Supp.2d at 284 ("**I granted plaintiff's motion for appointment of counsel.") (BRODY, J.);** Parham v. Johnson, 126 F.3d 454, 460 (3rd Cir. 1997) (court appointed counsel for inmate-plaintiff to argue meritorious, and complexity of issue involved); Lastly, Ray v. Kertes, supra, 285

8

F.3d at 289 n. 1 **(Hon. Third Circuit Justice appointing civil representation for inmate-plaintiff)(SLOVITER, J.).**

"Propounded" by these interpretive authorities above. Teaches, Kenney that this Court has "vary" broad discretionary powers in the appointment of counsel. Therefore, Kenney request the Court to appoint him counsel, because he is "ill-equipped" to represent himself, thus, he is unable to litigate beyond this stage of the proceedings. Based upon Kenney's "umpteen" request throughout this case, is a sheer indication. That, Kenney does not know how to proceed any further. Thus, his catatonic state of mind prohibits him from litigating. Kenney's "exacerbated-conniption" no doubt warrants serious consideration for the appointment of counsel in this particular case. Therefore, Kenney must, as he does request this Court to appoint him competent civil counsel.

## CONCLUSION

For all the reasons contained herein, where there exists issues of material facts that a reasonable minded juror could conclude in Kenney's favor. That, this Honorable Court should allow Kenney leave to amend, thus appoint him counsel.

Respectfully submitted,

JOHN CHARLES KENNEY/PRO SE
Register No. 05238-041
USP-Pollock
P.O. Box 2099
Pollock, Louisiana 71467-2099

Dated: August 28, 2002

9

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CHARLES KENNEY,            :    Civil Action No. 1:CV-00-2143
                    Plaintiff,  :    Honorable Judge J.E. Jones, III
                                         (presiding)
            v.                  :

                                :

JAKE MENDEZ;                    :
JESUS "JESSE" GONZALEZ;         :    (Magistrate Judge T.M. Blewitt)
JAMES "JIMMY" SCARBOROGH; and   :
KELLY M. KEISER,                :
                    Defendants. :

### SUBMISSION OF INTERVENING PRECEDENT AND REVISED AUTHORITIES IN SUPPORT OF PRO SE AMENDMENT

PLAINTIFF-John Charles Kenney, acting pro se in the above captioned action hereby submits the following "Intervening Precedents and Revised Authorities" in support of his amended complaint. Since, commencement of this action of 12/12/00. The following authorities have been decided, thereby, "fortifying" Kenney's claims. **"Failure To Afford Notice:"** Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1006 (8th Cir. 2000). See, p. 4; **"Grievance Appeal Rejections:"** Santiago v. Fields, 170 F.Supp.2d 453, 458 (D.Del.Cal. 2001); Irvin v. Zamora, 161 F.Supp.2d 1125, 1135 (S.D.Cal. 2001); Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001); Ray v. Kertes, 285 F.3d 287, 295-97 (3rd Cir. 2002). See, p. 6; **"Appointment Of Counsel:"** Santiago, supra,; Ray, supra,. See, p. 8-9. **"Recent Opinion Added**."** See **Montgomery v. Pinchak, 294- F.3d 492, 505-06 (3rd Cir. 2002)("Montgomery's ability to meet the evidentiary requirements of the defendants' summary judgment motion was prejudiced by the District Court's refusal to appoint counsel. Under these circumstances, we will vacate the District Court's grant of summary judgment, and remand this case for further proceedings consistent with this opinion.")(FUENTES, J.)(Vacated and remanded).**

A

"Discovery:" Peate v. McCann, 294 F.3d 879, 885 (7th Cir. 2002) ("Once again, in light of the remand for trial, it will be open to the district court to consider alternative options that will permit [Inmate]-Peate additional discovery . . .")(WOOD, J.). "The Failure To Intervene:" Smith v. Mensinger, 293 F.3d 641, 655 (3rd Cir. 2002)("We also hold that correctional officers have a duty to intervene when other officers use excessive force irrespective of the rank of the offending officers.")(MCKEE, J.); see also, Peate, 294 F.3d at 883 ("At a minimum, [prison-official] actions could demonstrate a disregard for Peate's safety . . . "). Defendant-Scarborough pinned Kenney's limbs, while defendant-Gonzales had "repeatedly" struck Kenney with LARGE-SHARP-METAL-KEYS. Defendant-Keiser stood mute while defendants-Gonzalez and Scarborough had violently beat Kenney. (See Initial Complaint, p. 2)(reflecting.); see also Brooks v. Kyler, 204 F.3d 102, 109 (3rd Cir. 2000)(superficial lacerations and abrasions  inflicted by defendants upon the inmate-plaintiff constituted "excessive force" resulting in Eighth Amendment violation)(BECKER, C.J.).

Tandemly, these above authorities confutely girt Kenney's entire complaint. Thereby, fortifying his claims in his complaint. Based upon this fortification that, Kenney here presents them for support of his amended complaint, as necessary.

Respectfully submitted,

Dated: August 28, 2002

JOHN CHARLES KENNEY/PRO SE
Register No. 05238-041
USP-Pollock
P.O. Box 2099
Pollock, Louisiana 71467-2099

B

IN THE UNITED STATES DISTRICT COURT
FOR THE  MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CHARLES KENNEY,                     :    Civil Action No. 1:CV-00-2143
            Plaintiff,                      Honorable Judge J.E. Jones, III
                                         :        (Presiding)
        v.                               :

JAKE MENDEZ;                             :    (Magistrate Judge T.M. Blewitt)
JESUS "JESSE" GONZALEZ;                  :
JAMES "JIMMY" SCARBOROUGH; and           :
KELLY M. KEISER,                         :    "PRO SE LEAVE FOR AMENDMENT"
           Defendants.                 :

## CERTIFICATE OF SERVICE

NOW COMES, John Charles Kenney, acting pro se certifies that on this Wednesday, August 28, 2002. That, I had forwarded defendants' representative a true copy of the foregoing "PRO SE LEAVE FOR AMENDMENT" by placing said contents in a post paid, self addressed envelope, mailed first class to the below address:

c/o The Honorable Terz
   U.S. Attorney's Office
   Federal Building, Ste. 316
   U.S. District Courthouse
   240 West Third Street
   Williamsport PA 17701-6465



JOHN CHARLES KENNEY/PRO SE
Register No. 05238-041

<u>Pro Se</u> Plaintiff-Kenney's
Attachment/Exhibits In Support Of His Amended Complaint
Civil Action No. 1:CV-00-2143

**FILED**
WILLIAMSPORT, PA

SEP - 3 2002

MARY E. D'ANDREA, CLERK
Per _____ <u>kw</u>
Deputy Clerk

# ATTACHMENT
# ONE

*Utility District No. 1 v. Broadview Television Co.*, 91 Wash.2d 3, 586 P.2d 851 (1978), Sharp claims that "where a contract has omitted clear terms of payment or left them to unsuccessful future negotiations, the contract becomes unenforceable." Def.'s Reply Mem. at 3. The court disagrees with Sharp's broad proposition.

The Supreme Court of Washington has made clear that "[i]t is not necessarily fatal to the formation of a contract that the parties did not agree on the exact amount to be paid by the purchaser". *Howard v. Fitzgerald*, 58 Wash.2d 403, 363 P.2d 386, 388 (1961). In that particular case, the court held that a seller's offer to sell equipment at a "reasonable value" and inventory at "wholesale value" was not fatal to the formation of a contract. *Id.*; *see also Combs v. Frigid Foods Prods., Inc.*, 67 Wash.2d 862, 410 P.2d 780, 782 (1966) ("An agreement is not unenforceable for lack of definiteness of price or amount if the parties specify a practicable method by which the amount can be determined by the court without any new expression by the parties themselves.").

In the case at bar, the price term of the TSA has two components: A base of $144,200, and an annual increase "not to exceed 6% ... [and] to be mutually agreed upon by the parties." This sort of fee augmentation arrangement is typically referred to as an "escalator clause" and is normally enforceable provided its terms are sufficiently definite. *See* 17A Am.Jur. Contracts 2d § 207 (1991). Ackerley does not dispute that an amount "to be mutually agreed upon" is ambiguous. That is why their claim for relief is only for the base price of $144,200. Sharp, however, argues that the ambiguity of the entire TSA unenforceable. Sharp is mistaken. In *Seattle-First National Bank v. Earl*, 17 Wash. App. 830, 565 P.2d 1215 (1977), pet. denied,

89 Wash.2d 1017 (1978), the Washington Court of Appeals was faced with a similar situation. In that case, a dispute had arisen over an escalator clause in a lease. The lease's escalator clause tied annual rent increases to a "cost-of-living index for City of Spokane." *Id.* at 1217. However, after the lease had been entered into, the parties discovered that there was no such thing as a cost-of-living index for Spokane. The lessor filed suit to reform or rescind the contract. The court refused to reform the contract. The court refused to incorporate an existing cost-of-living index for Seattle, and court likewise refused to rescind the contract. The proper remedy, according to the court, was simply to give the escalator clause no effect and to otherwise hold the lease enforceable. *See id.* at 1219. This court therefore holds that, in the instant case, the TSA is not unenforceable under Washington law for lack of definiteness as to price.

The cases cited by Sharp are on point. In *Washington Chocolate*, goods for sale in the purported contract were "Chocolate Coatings ... at current price list." *Wash. Chocolate*, 138 P.2d 196 (Wash.1943). The court held that a description was too indefinite to "bind" binding contract given that "different prices were charged to different [buyers, sellers]." *Id.* at 198–99. The case at bar is distinguishable in that there was a base price to which the parties did agree (and which Sharp actually paid in 1999 and 1999–2000). Moreover, the contract was wholly executory, whereas Sharp has alleged that Ackerley has wholly performed its obligations under the TSA. *See id.* at 199.

*Randall* is altogether inapposite as it concerned an ambiguity as to contract duration, *see Randall*, 153 P.2d at 715, and *Snohomish County P.U.D. No. 1* actu-

ally runs counter to Sharp's argument, *see Snohomish County P.U.D. No. 1*, 686 P.2d at 857 ("[A] contract which has been fully performed, even though it may be too indefinite to enforce in an action for specific performance, or to support a recovery of damages for failure to perform, is enforceable to the extent that performance has made its terms certain.").

In sum, the TSA is not unenforceable under Washington law for lack of definiteness as to price.

### Sufficiency of the Pleadings

(1) Finally, Sharp argues that the complaint must be dismissed because "there [are] no specific allegations that plaintiff performed during 2000–2001." Def.'s [Reply Mem.] at 6 (emphasis added). Apparently Sharp believes that an "absence of ... averments of [Ackerley's] performance ... is somehow fatal to Ackerley's" claim. *Id.* at 7.

The plain language of Fed.R.Civ.P. 9(c) would seem to indicate otherwise. According to Rule 9(c), "[i]n pleading performance or occurrence of conditions precedent ... it is sufficient to aver generally that ... conditions precedent have been performed or have occurred." Perhaps because this language is so straightforward, there is relatively little case law interpreting the Rule. The court knows of no Second Circuit case passing on the matter, but other circuits have made clear long ago that a general averment of performance is sufficient to withstand a motion to dismiss. *See Fitz-Patrick v. Commonwealth*, 355 F.2d 726, 729 (5th Cir.1960) ("Rule 9(c) specifically exempts the pleader from the necessity of alleging detailed facts to show the performance of conditions precedent."); *Topping v. Fry*, 147 F.2d 715, 718 (7th Cir.1945) ("We think the complaint sufficiently complied with Rule 9(c) which permits a general

averment that all conditions precedent have been performed or have occurred."). In its complaint Ackerley has pleaded that "Ackerley Media fully performed its obligations as required by the contract for the 2000–2001 NBA season." Compl. ¶ 19. That alone is sufficient for Rule 9(c) purposes.

### IV. CONCLUSION

For the foregoing reasons, defendant Sharp's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) must be DENIED.



**Noel L. SANTIAGO, Plaintiff,**

v.

**Michael FIELDS, Barry Newman, Robert Flint, William Harriford and Kevin Senato, Defendants.**

No. 00–105A–SLR.

United States District Court, D. Delaware.

Oct. 17, 2001.

Prisoner brought § 1983 action against corrections officers for civil rights violations, cruel and unusual punishment, and assault. Defendants moved to dismiss. The District Court, Sue L. Robinson, J., held that: (1) prisoner had exhausted his administrative remedies; (2) factual dispute precluded summary judgment on issue of whether defendants used excessive force against prisoner; (3) defendants were not entitled to qualified immunity; and (4)

State had not waived Eleventh Amendment immunity.

Motion granted in part and denied in part.

**1. Federal Civil Procedure ⇐2533.1**

Motion to dismiss for failure to state a claim was treated as motion for summary judgment, where parties referred to matters outside the pleadings, in prisoner's § 1983 action for cruel and unusual punishment. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**2. Convicts ⇐6**

Before filing a civil action on an excessive force claim, a prisoner must exhaust his administrative remedies, even if utilizing his administrative remedies is not available through the administrative process. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**3. Convicts ⇐6**

Prisoner had exhausted his administrative remedies, as required before filing civil action on an excessive force claim, even though prisoner allegedly failed to appeal rejection of his grievance form; defendants presented insufficient evidence to suggest that prisoner was adequately notified of the rejection and his obligation to appeal it so as to preserve his right to sue. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**4. Sentencing and Punishment ⇐1548**

In cases where inmates challenge use of force by prison officials as excessive, the Eighth Amendment is key source of protection. U.S.C.A. Const.Amend. 8.

**5. Prisons ⇐13(4)**

Pivotal inquiry in prisoner's claims of excessive force is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

**6. Prisons ⇐13(4)**

In analyzing prisoner's claims of excessive force by corrections officials, court must consider (1) need for application of force, (2) relationship between the need and amount of force that was used, (3) extent of injury inflicted, (4) extent of the threat to safety of staff and inmates, reasonably perceived by responsible officials on basis of facts known to them, and (5) any efforts made to temper severity of a forceful response.

**7. Federal Civil Procedure ⇐2491.5**

In a prisoner's claims for use of excessive force by corrections officers, defendants cannot prevail on motion for summary judgment if it appears that evidence, viewed in light most favorable to plaintiff, will support a reliable inference of wantonness in infliction of pain.

**8. Federal Civil Procedure ⇐2491.5**

Genuine issues of material fact exist as to whether prison officers used excessive force against prisoner, precluding summary judgment for officers in prisoner's § 1983 action for cruel and unusual punishment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**9. Civil Rights ⇐214(2)**

Government officials performing discretionary functions have "qualified immunity" and are immune from liability from civil damages, given that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

See publication Words and Phrases for other judicial constructions and definitions.

**10. Civil Rights ⇐214(2)**

A right is "clearly established" for purposes of qualified immunity

when contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.

See publication Words and Phrases for other judicial constructions and definitions.

**11. Civil Rights ⇐214(1, 2)**

When analyzing a qualified immunity defense, court must first ascertain whether plaintiff has alleged violation of a constitutional right at all, then inquire whether that right was clearly established at time defendant acted, and finally determine whether reasonable person in official's position would have known that his conduct would violate that right.

**12. Civil Rights ⇐214(2)**

In court's analysis of a government official's qualified immunity defense, if on objective basis it is obvious that no reasonably competent official would have denied that actions were lawful, defendant is not immune from suit; however, if officials of reasonable competence could disagree on issue, immunity should be recognized.

**13. Federal Civil Procedure ⇐2491.5**

...key question as to whether corrections officers used excessive force precluded summary judgment, for officers based on qualified immunity, in prisoner's § 1983 action for violation of Eighth Amendment prisoner's right against excessive force was clearly established at time of events, and there was genuine dispute on whether force used was excessive. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**14. Civil Rights ⇐269**

Eighth Amendment protected corrections officers from liability, in their official capacities, from prisoner's § 1983 action for use of excessive force; Delaware had not waived prisoner's suit or waived im-

munity. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983.

**15. Federal Courts ⇐265, 267, 269**

In the absence of consent, a suit in federal court in which state or one of its agencies or departments is named as defendant is proscribed by Eleventh Amendment. U.S.C.A. Const.Amend. 11.

**16. Federal Courts ⇐269**

Eleventh Amendment's preclusion of a state from suit in federal court includes state officials when state is the real, substantial party in interest. U.S.C.A. Const. Amend. 11.

**17. States ⇐191.10**

Relief sought nominally against an official is in fact against the sovereign, if decree would operate against the latter.

**18. Federal Courts ⇐266.1**

A state may waive its immunity under Eleventh Amendment, but such waiver must be in form of an unequivocal indication that state intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment. U.S.C.A. Const.Amend. 11.

____

Noel L. Santiago, Smyrna, DE, pro se.

Gregory E. Smith, Dept. of Justice, Wilmington, DE, for defendants.

**MEMORANDUM ORDER**

SUE L. ROBINSON, District Judge.

**I. INTRODUCTION**

On November 30, 2000, plaintiff Noel L. Santiago filed this action alleging civil rights violations under 42 U.S.C. § 1983 and violations of his Eighth Amendment right to be free from cruel and unusual im-

456

punishment. (D.I. 2, 3) Plaintiff alleges that defendants are also liable for assault arising out of an unwarranted beating that occurred on July 19, 2000. (Id.) Plaintiff seeks compensatory and punitive damages. (Id. at 4)

Currently before the court is defendants' motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies and for failure to state a claim. (D.I.12) For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

**II. BACKGROUND**

Plaintiff is an inmate within the Delaware Department of Correction and at the time of the complaint was housed at the Multi-Purpose Criminal Justice Facility ("Gander Hill") in Wilmington, Delaware. (D.I. 16 at ¶1) Plaintiff has since been transferred to the Delaware Correctional Center in Smyrna, Delaware. (Id. at ¶2) Plaintiff alleges that on or about July 19, 2000 he was assaulted by four correction officers and a sergeant of the Quick Response Team. (D.I. 2 at 3) Plaintiff contends that defendants used excessive force against him in that they kicked and struck him several times in the face and back and used a sweep that caused him to fall face first to the floor. (Id.) Plaintiff alleges that, during the assault, he was handcuffed behind his back and defendants were insinuating that the assault was being carried out because plaintiff was a party in a pending lawsuit about the living conditions at Gander Hill. (Id.)

After the assault, plaintiff alleges defendants took him to the infirmary for examination and treatment of his injuries. (Id.) Plaintiff contends that he received x-rays and other medical treatment on July 20, 2000. (Id.) Plaintiff alleges that upon be-

ing escorted from the infirmary to 1F/Pod Cell #5 by defendants, they again engaged in assaulting him. (Id.) Defendants again allegedly struck plaintiff in the face and back and employed another legsweep, causing plaintiff to fall to the floor. (Id.) While on the floor, plaintiff contends that defendant Sergeant Kevin Senato sprayed "tear gas" in his face. (Id.) Plaintiff maintains that during both encounters he did not resist or threaten defendants in any way or break any prison rules that warranted such treatment. (Id.)

Plaintiff filed a grievance form on August 3, 2000. (Id., Ex. A) He claims that prison officials have yet to respond to his grievance. (Id. at 2)

According to an affidavit submitted by Sergeant Senato, plaintiff was transported to the disciplinary unit because of an unrelated incident on July 19, 2000. (D.I. Ex. C at ¶3) Sergeant Senato admits that physical force was used, but only after plaintiff became "unruly and violent," that the force used was appropriate and proportional to plaintiff's actions. (Id. at ¶4) Plaintiff allegedly resisted as fully as possible and suffered a bloody nose as a result of the encounter. Sergeant Senato admits that a can of mace was used on plaintiff, but the use was necessitated by plaintiff locking his jaw on, and attempting to bite off, Sergeant Senato's left middle finger. (Id.) Sergeant Senato was left with the mark of plaintiff's teeth and a deep bone bruise. (Id.) Sergeant Senato also denies that the assault was in retaliation of any lawsuit and maintains that he was not aware that plaintiff was a party to any lawsuit. (Id. at ¶7) Attached to Sergeant Senato's affidavit is a letter from plaintiff to Sergeant Senato apologizing for his behavior. (Id. at 4)

Defendants also submit an affidavit of Sergeant Mary Moody, who was responsi-

ble for resolving informal inmate grievances at all times relevant to this action. (Id., Ex. A at ¶1) While plaintiff alleges that prison officials have not responded to his grievance, Sergeant Moody contends that she has reviewed all records of grievances filed by plaintiff, and that plaintiff's grievance has not been rejected as untimely and plaintiff has not appealed the rejection. (Id. at ¶¶ ii, iii)

**III. STANDARD OF REVIEW**

[1] Since the parties have referred to matters outside the pleadings, defendants' motion shall be treated as one for summary judgment. See Fed.R.Civ.P. 56. "A party is entitled to summary judgment only when the court concludes there is no genuine issue of material fact and the party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that no material issue of fact is in dispute. See Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has carried its burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 587, 106 S.Ct. 1348 (quoting Fed. R.Civ.P. 56(e)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a reasonable jury could conclude that the position of the person with the burden on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir.1995). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the

burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court, however, must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995).

**IV. DISCUSSION**

**A. Exhaustion of Administrative Remedies**

[2] Defendants argue that plaintiff did not exhaust his administrative remedies prior to filing this action pursuant to the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a).[2] Before filing a civil action on an excessive force claim, a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir.2000), cert. granted, 531 U.S. 956, 121 S.Ct. 377, 148 L.Ed.2d 291 (2000), aff'd, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). See also Ahmed v. Sromovski, 103 F. Supp.2d 838, 843 (E.D.Pa.2000) (quoting Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir.2000) (stating that with respect to the PLRA, "§ 1997e(a) 'specifically mandates that in-

correctional facility until such administrative remedies as are available are exhausted.

2. 42 U.S.C. § 1997e(a).

Cite as 270 F.Supp.2d 453 (D.Del. 2001)

mate-plaintiffs exhaust their available administrative remedies."). The courts are split, however, on whether assault and excessive force constitute "prison conditions" for purposes of exhaustion under 42 U.S.C. § 1997e(a). *See e.g. Booth,* 206 F.3d at 293–98; *contra Nussle v. Willette,* 224 F.3d 95, 106 (2d Cir.2000), *cert. granted, Porter v. Nussle,* --- U.S. ---, 121 S.Ct. 2213, 150 L.Ed.2d 207 (June 4, 2001) (00-853).

[3] In the case at bar, plaintiff pursued his administrative remedies by filing a grievance form. Although plaintiff allegedly failed to request the rejection of his grievance form, the court finds that defendants have presented insufficient evidence to suggest that plaintiff was adequately notified of the rejection and his obligation to appeal it so as to preserve his right to sue. Thus, the court determines that plaintiff has exhausted his administrative remedies.

**B. Plaintiff's Eighth Amendment Claim**

[4-7] In cases where inmates challenge the use of force by prison officials as excessive, the Eighth Amendment is their key source of protection. *See Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The pivotal inquiry in claims of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), construed in *Whitley,* 475 U.S. 312, 106 S.Ct. 1078. The court must consider: 1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of injury inflicted; 4) the threat to the safety of staff and inmates, as reasonably perceived by respon-

sible officials on the basis of the facts known to them; and 5) any efforts made to temper the severity of a forceful response. *See Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (citations omitted). Defendants do not prevail on a motion for summary judgment if "it appears that the evidence, viewed in the light most favorable to plaintiff, will support a reliable inference of wantonness in the infliction of pain." *... at 322,* 106 S.Ct. 1078; *see also Sample v. Raettgers,* 704 F.2d 491, 495 (10th Cir.1983) (finding wantonness when prison guard intended to harm inmate).

[8] Defendants maintain that ... used force necessary only to subdue plaintiff and protect their safety when he came combative on July 19, 2000. They rely on an affidavit from Sergeant ... which states that plaintiff's claims of excessive force were unwarranted. ... the application of some force may ... been necessary to transfer plaintiff ... disciplinary unit, plaintiff claims that ... was handcuffed behind his back at ... time, reducing the threat of harm to defendants. Thus, the court finds that ... exists a genuine issue of material fact ... whether defendants used excessive ... against plaintiff.

**C. Qualified Immunity**

[9, 10] Defendants contend that ... cannot be held liable in their individual capacities under the doctrine of qualified immunity. (D.I. 13 at ¶ 8) Government officials performing discretionary functions are immune from liability for civil damages, given that their conduct does ... violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear ...

reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *accord In re City of Philadelphia Litig.,* 49 F.3d 945, 961 (3d Cir.1995).

[11, 12] When analyzing a qualified immunity defense, the court must first ascertain "whether plaintiff has [alleged] a violation of a constitutional right at all." *Larsen v. Senate of the Com. of Pa.,* 154 F.3d 82, 86 (3d Cir.1998). Next, the court must inquire whether the right was "clearly established" at the time the defendants acted." *In re City of Philadelphia Litig.,* 49 F.3d at 961 (quoting *Acierno v. Cloutier,* 40 F.3d 597, 606 (3d Cir. 1994)). Finally, the court must determine whether "a reasonable person in the official's position would have known that his conduct would violate that right." *Open ... v. Chester County Sheriff's ...,* 24 F.Supp.2d 410, 419 (E.D.Pa. ... (quoting *Wilkinson v. Bensalem ...,* 822 F.Supp. 1154, 1157 (E.D.Pa. ... citations omitted)). If on an objec... "it is obvious that no reasonably ... [official] would have lawfully," defen... actions were lawful," however, ... are not immune from suit; however, ... officials] of reasonable competence ... disagree on this issue, immunity ... be recognized." *In re City of ...phia Litig.,* 49 F.3d at 961-62 ... *Malley v. Briggs,* 475 U.S. 335, ... S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

... the case at bar, plaintiff has ... stated a claim for an Eighth ... excessive force violation.

... also contend that they are immune from personal liability under the State ... Tort Claims Act. *See* 10 Del. C. § 4001; *see ... v. New Castle County Vo-Technical ... District,* 574 F.Supp. 813 (D.Del. ... 4011(c) extends immunity ... to employees. *See* 10 Del. C. ... However, [a]n employee may be

Also, at the time of the events at issue, plaintiff's Eighth Amendment right against excessive force was clearly established. Because the court finds that there exists a genuine issue of material fact as to whether defendants used excessive force against plaintiff, defendants are not entitled to qualified immunity at this time.[2]

**D. Eleventh Amendment Immunity**

[14-18] Defendants contend that they cannot be held liable in their official capacities under the Eleventh Amendment. (D.I. 13 at ¶ 7, 10-11) "[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This preclusion from suit includes state officials when "the state is the real, substantial party in interest." *Id.* at 101, 104 S.Ct. 900 (quoting *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign, if the decree would operate against the latter." *Id.* (quoting *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963)). A State, however, may waive its immunity under the Eleventh Amendment. Such waiver must be in the form of an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't. of ...*

personally liable for acts or omissions causing ... bodily injury ... for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent." *Id.* The court finds that defendants are not entitled to immunity under the State Tort Claims Act at this time.

*Corrs.*, 749 F.Supp. 572, 578 (D.Del.1990) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). Because the State of Delaware has not consented to plaintiff's suit or waived its immunity, the Eleventh Amendment protects defendants from liability in their official capacities.

## V. CONCLUSION

Therefore, at Wilmington, this 17th day of October, 2001;

IT IS ORDERED that defendants' motion to dismiss (D.112) is denied with respect to plaintiff's claims against defendants in their individual capacities and granted with respect to plaintiff's claims against defendants in their official capacities.

IT IS FURTHER ORDERED that plaintiff's motion for representation by counsel (D.116) is granted. The court will direct the Clerk of Court to refer representation of plaintiff to a member of the Federal Civil Panel.



**Eric AMARO, Plaintiff,**

v.

**Stanley TAYLOR, Raphael Williams, M. Jane Brady, C/O Mason, C/O Harri-ford, Sgt. Sheets, Sgt. Senato, Lt. Taylor, Lt. Polk and Qrt Members 4-12 Shift, Defendants**

**No. 00–741–SLR.**

United States District Court, D. Delaware.

Oct. 25, 2001.

Prisoner brought § 1983 action against corrections officials, alleging cruel and unusual punishment and assault and battery. Defendants moved to dismiss. The District Court, Robinson, J., held that: (1) prisoner exhausted his administrative remedies; (2) three officials had no personal involvement in alleged incidents; and (3) remaining defendants were not entitled to qualified immunity.

Motion granted in part and denied in part.

**1. Federal Civil Procedure ⟂657.5(1)**

Where plaintiff is a pro se litigant, court has obligation to construe complaint liberally.

**2. Convicts ⟂6**

Before filing civil action on excessive force claim, a prisoner must exhaust administrative remedies, even if ultimate relief sought is not available through administrative process. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

**3. Convicts ⟂6**

A prisoner has exhausted his available administrative remedies when he has filed a grievance to which prison officials respond. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

**4. Civil Rights ⟂194**

Prisoner exhausted his administrative remedies, as required for filing § 1983 rights action on excessive force; prisoner filed grievance form over beating and prison officials failed to respond. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a); 42 U.S.C.A.

**5. Federal Courts ⟂269**

Eleventh Amendment barred prisoner's action for cruel and unusual punishment and assault and battery against Corrections Commissioner, Warden, and Attorney General in their official capacities. U.S.C.A. Const.Amends. 8, 11.

**6. Civil Rights ⟂207(2)**

Doctrine of respondeat superior is not available basis for prisoner's § 1983 action for cruel and unusual punishment and assault and battery against Corrections Commissioner, Warden, and Attorney General in their official capacities; officials had no personal involvement in alleged beating of prisoner. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**7. Civil Rights ⟂205(1)**

Doctrine of respondeat superior is not available basis for liability under § 1983; personal involvement by a defendant is required in a civil rights action. 42 U.S.C.A. § 1983.

**8. Civil Rights ⟂204.1, 234**

Allegations of personal direction or of actual knowledge and acquiescence by a defendant are adequate to demonstrate defendant involvement, for purpose of § 1983 liability; such allegations are required to be made with appropriate particularity. 42 U.S.C.A. § 1983.

**9. Civil Rights ⟂214(2)**

Government officials performing discretionary functions are immune from liability for civil damages under doctrine of qualified immunity," provided that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. 42 U.S.C.A. § 1983.

See publication Words and Phrases for other judicial constructions and definitions.

**10. Civil Rights ⟂214(2)**

For purposes of qualified immunity of § 1983 defendant official, a right is "clearly established" when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.

See publication Words and Phrases for other judicial constructions and definitions.

**11. Civil Rights ⟂214(1)**

In analyzing a qualified immunity defense, court must first ascertain whether plaintiff has alleged violation of a constitutional right at all.

**12. Civil Rights ⟂214(2)**

In analyzing a qualified immunity defense to allegations of civil rights violation, court must inquire whether right allegedly violated by government official was clearly established at time defendant acted, and then determine whether a reasonable person in official's position would have known that his conduct would violate that right; if officers of reasonable competence could disagree on this issue, immunity should be recognized.

**13. Civil Rights ⟂214(7)**

Corrections officers were not entitled to qualified immunity in prisoner's § 1983 action for cruel and unusual punishment and assault and battery; Eighth Amendment right against excessive force was clearly established such that no reasonably competent officer would conclude that alleged actions were consistent with governing legal principles. U.S.C.A. Const. Amend. 8; 42 U.S.C.A. § 1983.

Nancy Eileen Whinnery, West Chester, PA, for plaintiff.

Gregory E. Smith, Department of Justice, Wilmington, DE, for defendants.

# ATTACHMENT TWO

Furthermore, a mere assertion that plaintiff has suffered emotional distress as a result of defendant's actions will not suffice to establish the prima facie case for the tort. Pennsylvania requires that the plaintiff substantiate the claim that she feels distress, "a minimal element of the tort," with "competent medical evidence." *Kemp v. Philadelphia Housing Authority,* 1999 U.S.Dist. LEXIS 16130, at *3, 1999 WL 975121 (E.D.Pa. Oct. 5, 1999) (citing *Nowosad v. Villanova Univ.,* 1999 U.S.Dist. LEXIS 7319, 1999 WL 322466 (E.D.Pa. May 19, 1999)). Plaintiff admits that she has never seen a mental health professional to discuss her "severe emotional turmoil." (Pl.'s Dep., at 183), and can offer no evidence as to how the rumors and allegations have affected her emotional or psychological state. Thus, plaintiff cannot sustain the prima facie elements of a claim for intentional infliction of emotional distress and defendant is entitled to summary judgment as a matter of law.



Richard PEARSON, Plaintiff,

v.

Donald VAUGHN, et al., Defendants.

No. CIV. A. 97-6942.

United States District Court,

E.D. Pennsylvania.

June 26, 2000.

Prisoner brought § 1983 action against prison official, alleging that they failed to protect him against attack by other inmates in violation of his Eighth Amendment rights. Upon defendant's motion for summary judgment, the District Court, Anita B. Brody, J., held that: (1) deputy superintendent could not be held liable

Motion granted in part and denied in part.

**1. Convicts ⚖6**

Before filing a federal lawsuit, an inmate must exhaust his administrative remedies under Prison Litigation Reform Act (PLRA), even if first the ultimate relief sought is not available through the administrative process. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**2. Convicts ⚖6**

An inmate's failure to comply with Prison Litigation Reform Act's (PLRA) exhaustion requirement constitutes an affirmative defense to inmate's federal claim. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**3. Civil Rights ⚖194**

Prisoner substantially complied with his available administrative remedies under Prison Litigation Reform Act with respect to his Eighth Amendment claims where he sought to be in administrative custody and after being but was told that his grievance regarding his desire to be removed from general population and placed in administrative custody was "not addressed" under the grievance process. U.S. Const.Amend. 8; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**4. Civil Rights ⚖205(1)**

Liability under § 1983 cannot be imposed vicariously or under the theory of respondeat superior. 42 U.S.C.A. § 1983.

**5. Civil Rights ⚖207(2), 231**

Allegations of participation or actual knowledge and acquiescence must be made particularly, and the mere fact that a defendant may hold a supervisory position is not sufficient to find liability under § 1983. 42 U.S.C.A. § 1983.

**6. Civil Rights ⚖204.1**

A defendant must have participated in and had knowledge and acquiesced in the alleged violation for liability to attach under § 1983. 42 U.S.C.A. § 1983.

**Civil Rights ⚖207(2)**

... deputy superintendent could not be held liable for violation of inmate's Eighth Amendment rights for failure to protect him from attacks by other inmates where constitutional violation resulting from inmate's placement back in general population after a stabbing. U.S. Const.Amend. 8; 42 U.S.C.A. § 1983.

**Civil Rights ⚖174(4)**

... official has a duty to protect inmates from attacks by other inmates.

**Civil Rights ⚖135, 207(1)**

... order to impose liability under the State Correctional Institution official for breach of duty to protect inmates from attacks by other inmates, inmate must show that he was incarcerated under conditions posing a risk of serious harm, and that official knew and disregarded an excessive risk to inmate's health and safety; both the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference. 42 U.S.C.A. § 1983.

**12. Federal Civil Procedure ⚖2191.5**

Because prisoner presented sufficient evidence to create a genuine issue of material fact as to whether prison official was deliberately indifferent to prisoner's safety, summary judgment in favor of official was precluded on basis of qualified immunity on prisoner's Eighth Amendment claim for failure to protect him from attacks by other inmates. U.S.C.A. Const. Amend. 8; 42 U.S.C.A. § 1983.

Genuine issues of material fact existed as to whether prisoner, who suffered a serious assault when housed in general population, faced a substantial risk of serious harm and whether prison official was deliberately indifferent to prisoner's safety, precluding summary judgment in favor of official on prisoner's Eighth Amendment claim for failure to protect him from attacks by other inmates. U.S.C.A. Const. Amend. 8; 42 U.S.C.A. § 1983.

Paul Hetznecker, Hetznecker & Meehan, Philadelphia, PA, for Plaintiff.

Dalinda E. Carrero, Office of Atty. General, Philadelphia, PA, for Defendants.

**EXPLANATION & ORDER**

ANITA B. BRODY, District Judge.

Plaintiff Richard Pearson ("Plaintiff"), an inmate currently housed at the State Correctional Institution at Somerset ("Somerset") and formerly incarcerated at the State Correctional Institution at Graterford ("Graterford"), brought this suit under 42 U.S.C. § 1983 against Graterford officials, Superintendent Donald Vaughn, Deputy Superintendent William Wilhier, Deputy Superintendent Thomas Stachelek, and Unit Manager John Murray. Plaintiff claims that when housed at Graterford in 1996, defendants failed to protect him against attack by other inmates in violation of his Eighth Amendment rights. Plaintiff contends that defendants violated his Eighth Amendment right to be free

from cruel and unusual punishment by housing him in the general population at Graterford and failing to place him in administrative custody in February 1996, although he was stabbed when incarcerated though the was stabbed when incarcerated in general population at Graterford in 1994. Plaintiff seeks money damages. Defendants Vaughn and Murray move for summary judgment.[1]

## I. PROCEDURAL HISTORY

Plaintiff filed his pro se complaint on November 7, 1997. On April 13, 1998, I granted plaintiff's motion for appointment of counsel. Defendants Vaughn and Murray filed their motion for summary judgment on September 8, 1999. Plaintiff's response was filed on October 5, 1999. In response to defendants' argument that plaintiff had failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), plaintiff contended that he was not required to exhaust his administrative remedies. Plaintiff argued that the use of the administrative process would be futile because the grievance procedure could not provide him with the monetary relief that he seeks in this case.

On February 15, 2000, the Third Circuit issued its opinion in *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir.2000). On March 9, 2000, because plaintiff's futility argument was rejected in *Nyhuis*, I ordered plaintiff to show cause why this case should not be dismissed for failure to exhaust available

1. Defendants Vaughn and Murray bring this motion for summary judgment. These same defendants filed an answer to plaintiff's complaint. Plaintiff's response discusses only these defendants.

2. I ordered the parties to submit a joint stipulation of facts by June 5, 2000. To date, I have not received such a stipulation. On June 8, 2000, defendants provided their proposed stipulation of facts to my chambers. Defendants attached a letter stating that they were unable to contact plaintiff's counsel regarding a joint stipulation. Rather than delay the resolution of defendants' motion for summary judgment, I have set forth the following

administrative remedies. On March 2[?], 2000, plaintiff submitted a supplement[al] [...] before being transferred to State Correctional Institution Camp Hill ("Camp Hill") [...] response regarding the exhaustion issue. [...] Defendants filed a reply on April 6, 200[0] [...] In their reply, defendants argue that [...] cause plaintiff has failed to exhaust [...] Acknowledgment of Orientation forms in which plaintiff indicated that he did not [...] plaint should be dismissed. (Defs. Rep[ly] at 4, 6)

On April 24, 2000, I held a hearing [...] regarding whether plaintiff exhausted [...] administrative remedies, specifically to [ad]dress the February 27, 1996 and March [...] 1996 Consolidated Inmate Grievance S[ystem] tem forms ("grievance rejection") [...] plaintiff attached to his supplemental [re]sponse.

## II. FACTS[2]

Plaintiff was housed at Graterford [on] three separate occasions. In 1994, 199[?] 1996. In March 1994, while imprison[ed] [at] Graterford in general population, he [was] stabbed six times by several inmates [in a] hallway corridor.[3] As a result of th[ese inju]ries, plaintiff was hospitalized. Acc[ording] to plaintiff, the Graterford Program [Re]view Committee ("PRC") subsequent[ly de]termined that he should be removed [...] and never returned to the general po[pula]tion at Graterford because of the dan[ger] [...]

approximately 2½ weeks, [...] before being transferred to State Correctional Institution Camp Hill ("Camp Hill") for classification.

While at Camp Hill, plaintiff signed two Acknowledgment of Orientation forms in which plaintiff indicated that he did not [need] separation from any named inmates at Camp Hill or any other state institution. (Defs. Mot. Summ. J. Ex. D-5 and Ex. D-[?]) According to plaintiff, he signed these forms because he did not know the names of the inmates from whom he needed to be separated. In addition, plaintiff believed that his only enemies were housed at Graterford and because of the 1994 assault. On plaintiff's Diagnostic Classification Report, [he] signed his name under the words "no [...] files." (Defs.Mot.Summ. J Ex. D-4). Plaintiff then left Camp Hill and returned [to] Dallas.

On February 8, 1996, plaintiff was [transferred] from Dallas to Graterford for a [parole] board hearing, and placed in the general population on B-Block. Defendant Murray was B-Block Unit Manager. According to plaintiff, he told Murray [about] the 1994 assault at Graterford [...] [Murray] told plaintiff that he would be removed [and loc]ked in this cell until he left Graterford. Plaintiff did not identify the particular inmates from whom he sought separation. During this conversa[tion], plaintiff requested that he be re[moved]

occurred, that he be double-locked in his cell or placed in administrative custody. Plaintiff claims that defendant Murray responded that plaintiff had been cleared for admittance into the general population, and there was no need for plaintiff to be placed in administrative custody.

On February 21, 1996, plaintiff was stabbed in the prison law library by three unknown inmates. Following the incident, plaintiff was treated for three puncture wounds on the back of his left shoulder blade. After the attack, plaintiff was interviewed by prison officials from the security office. He told them that he had been stabbed at Graterford in 1994. During the interview, plaintiff alleges that the security officers learned that plaintiff's custody records were still at Dallas. According to plaintiff, the security officers told him that he should never have been housed in general population at Graterford. Following the stabbing, plaintiff was placed in administrative custody. After he was released from medical hold, plaintiff returned to Dallas.

Plaintiff testified at his July 1999 deposition that he did "not recollect" filing a grievance requesting not to be housed in general population prior to the February 21, 1996 incident. (Pearson Dep. at 83). At the April 24, 2000 hearing("hearing"), plaintiff testified that on February 9, 1996, he filed a grievance claiming that he should be removed from general population and placed in administrative custody. (Tr. 28-29, 45-46, 48, 51). Plaintiff testified that he did not receive copies of "a lot of the grievances" he filed. (Tr. at 26).[7]

---

1. facts. Many of the facts are undisputed. Where facts are in dispute, I have accepted plaintiff's version of events, drawing all reasonable inferences in plaintiff's favor.

3. In 1994, plaintiff was housed on the same unit where he was returned to Graterford in 1996. (Defs. Dep. at 21, 67).

The 1994 attack was the basis of a complaint filed by plaintiff in 1996, which was dismissed by the applicable statute of limitations. (Defs. Mot. Summ. J at 2)

2. [...] housing blocks, C and H, are [separated] from the rest of the prison. (Pear[son Dep.] 28-30). In March 1994 and [...] 1996, plaintiff was housed on the "New Side". The [...] 1996, plaintiff was housed on the "Old Side", on [...] (Pearson Dep at 49, 67).

[...] plaintiff, he had two unknown [...] [According to] plaintiff, he had been previously harmed [...]

7. I gave plaintiff until May 12, 2000 to supplement the record by providing the court with a copy of the grievance filed February 9, 1996 and any other documents relevant to the exhaustion issue. Plaintiff did not produce any documents.

ruary 27, 1996, approximately one week after the incident, Mary Ann Williams ("Williams"), grievance coordinator at Graterford, wrote "Mr. Pearson. Your custody level is not addressable under the grievance process. You should inform your counselor and security of your desire to remain under AC status." (Hearing Ex. B). Robert S. Bitner, ("Bitner"), Chief Hearing Examiner at the Department of Corrections, testified that administrative custody is considered a custody level. (Tr. at 82). On the bottom of a grievance rejection form dated March 5, 1996, Williams wrote "Mr. Pearson. You have already filed a second grievance requesting to be removed from general population and placed in administrative custody and in response, he received the March 5, 1996 grievance rejection. (Tr. at 32). On March 4, 1996, plaintiff filed Grievance No. 0617-96 requesting that he be returned to Dallas because he feared for his safety at Graterford. (Defs. Mot. Summ. J. Ex. D-11; Hearing Ex. C). On March 7, 1996, Williams responded that plaintiff would remain at Graterford until medical hold was lifted. (Defs. Mot. Summ. J. Ex. D-11; Hearing Ex. D). Plaintiff did not appeal this response. Bitner testified, in the April 24, 2000 hearing, that he is responsible for handling all inmate grievance and misconduct appeals to final review. (Tr. at 71). Bitner also testified that based on his review of plaintiff's records, plaintiff did not file to final review a grievance appeal claiming that he had should have been placed in administrative custody or that he

8. In plaintiff's response to defendants' motion, plaintiff acknowledges that monetary damages are not available against defendants in their official capacities. Therefore, summary judgment will be granted as to plaintiff's claims for monetary damages against defendants in their official capacities.

institution. (Tr. at 09).

On March 5, 1996, plaintiff wrote defendant Vaughn regarding the February 21, 1996 stabbing, requesting that Vaughn inform his family about the incident, and to make a phone call to his family. (Defs. Mot.Summ. J. Ex. D-12).

## III. DISCUSSION

Defendants Vaughn and Murray have moved for summary judgment. In their motion for summary judgment, defendants argue that: 1) plaintiff's claims should be dismissed because he failed to exhaust administrative remedies; 2) the Eleventh Amendment bars damages against defendants Vaughn and Murray in their official capacity; 3) defendants Vaughn and Murray did not violate plaintiff's constitutional rights; and 4) defendants Vaughn and Murray are entitled to qualified immunity. (Tr. at 29-29,45-

### A. Failure to Exhaust

The PLRA, in relevant part, provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

9. First, a plaintiff-inmate must file a grievance for initial review to the Facility Grievance Coordinator within fifteen working days after the events upon which the grievance is based. See DC-ADM 804. Extensions of this time may be granted for good cause. Within ten working days after receipt of the grievance by the Grievance Coordinator, "the grievant shall be provided

plaintiff must exhaust administrative remedies, even if the ultimate relief sought is not available through the administrative process. See Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000) (stating that the PLRA exhaustion requirement applies to § 1983 actions); Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) (stating that the PLRA exhaustion requirement applies even if it is administrative remedy scheme will be satisfactory if it is substantial." Nyhuis, 204 F.3d at 77-78.

Defendants argue that plaintiff's failure to exhaust his available administrative remedies as required by § 1997e(a) mandates dismissal of this action. Plaintiff contends that he has exhausted his administrative remedies. Plaintiff testified he filed a grievance on February 9, 1996, asking prison officials to remove him from general population and place him in administrative custody. In the February 27, 1996 grievance rejection. Therefore, plaintiff argues that he has exhausted his administrative remedies because he was told by Williams that his custody status was not addressable under the grievance process. Defendants argue that the February 27, 1996 rejection was not written in response to plaintiff's alleged February 9, 1996 grievance.

The record supports plaintiff's assertion that the February 27, 1996 rejection was issued in response to plaintiff's February 9, 1996 grievance requesting to be removed from general population and placed in administrative custody. In the February

mative defense in their answer. If an affirmative defense, the defendants have the burden of pleading and proving the defense in a motion for summary judgment or at trial. See Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997) (stating that in the context of a Title VII case, the failure to exhaust administrative remedies is an affirmative defense, and the inmate must raise it). Although the PLRA's exhaustion requirement constitutes an affirmative defense. See e.g., Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000); Jenkins v. Haubert, 179 F.3d 19, 29 (2d Cir. 1999); Jackson v. District of Columbia, 89 F.Supp.2d 48, 57 (D.D.C. 2000). If a condition precedent to filing suit, plaintiff has the burden of proof. See Jackson, at 55 (noting that the Sixth Circuit requires inmate-plaintiffs to allege and show that they exhausted their administrative remedies and to attach documentary evidence of exhaustion to their complaint). As the discussion in this order will demonstrate, regardless of upon whom the burden is placed, plaintiff has exhausted his administrative remedies as to his claim that he should have been removed from general population and placed in administrative custody.

12. In addition to plaintiff's testimony that he filed a grievance on February 9, 1996, seeking removal from general population and placement in administrative custody, other evidence on the record supports his assertion.

**288**

ary 27, 1996 document, Williams referred to plaintiff's "desire to remain under AC status."¹² Defendants contend that Williams was responding to a request by plaintiff to remain in administrative custody after already being housed there; not a request to be moved from general population. However, I do not find this argument convincing. Rather, as plaintiff argues, the phrase, "remain under," seems to indicate that plaintiff sought to be placed in administrative custody and remain there until he was returned to Dallas.¹³ Furthermore, despite their claim that Williams was responding to a grievance filed by plaintiff seeking to stay in administrative custody after the stabbing, defendants have not produced documentary evidence of such a grievance. The record before me supports plaintiff's assertion that Williams' February 27, 1996 rejection was responding to plaintiff's February 9, 1996 grievance.

13. The fact that the grievance rejection was dated February 27, 1996 does not necessarily indicate that the rejection was not in response to plaintiff's February 9, 1996 grievance. Though a grievance officer has up to ten days to respond to an inmate's grievance, Bitner testified that no time limit exists when a response to a grievance will be in the form of a grievance rejection. (Tr. at 88-89).

14. In his deposition, plaintiff testified that he asked defendant Murray to be placed in administrative custody until he was transferred back to Dallas. (Pearson Dep. at 79). In his grievance, plaintiff may similarly have asked that he be placed in administrative housing

Because Williams told plaintiff that his grievance regarding the desire to be moved from the general population was placed in administrative custody, plaintiff cannot assert in this claim that plaintiff failed to exhaust this claim. See Miller v. Tanner 196 F.3d 1190, (11th Cir.1999) (determining that although an inmate-plaintiff failed to appeal the denial of his grievance, plaintiff exhausted his administrative remedies because plaintiff was told "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal. The grievance procedure is closed."). To the extent possible, plaintiff complied with the February 27 grievance rejection... and remain there until he was returned to Dallas.

15. I recognize that the February 9, 1996 grievance, a copy of the February 9, 1996 grievance... also note, however, plaintiff's testimony that he did not receive copies of numerous grievances he filed.

16. It is somewhat unclear what standards contend that plaintiff should have followed... following receipt of this rejection... less, plaintiff has exhausted...

**Eighth Amendment**

In order to bring a successful § 1983 claim, a plaintiff must demonstrate: (1) that the challenged conduct was committed by a person acting under color of state law; (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law. See Kneipp v. Pennsylvania, 36 F.3d 1263-66 (3d Cir.1994); Carter v. City of Philadelphia, 989 F.2d 117, 119 (3d Cir.1993). It is undisputed that defendants were acting under color of state law. Therefore, the issue is whether defendants violated plaintiff's Eighth Amendment rights... I will first address plaintiff's claim that defendant Vaughn violated his Eighth... vation.

Liability under § 1983 cannot be premised solely on the grounds of respondeat superior. See Rode v. Del... 845 F.2d 1195 (3d Cir.1988)... ly to attach. See Martinez v... 444 U.S. 277, 285, 100 S.Ct... F.2d 481 (1990). A defendant... participated in or had knowl... acquiesced in the alleged viola... Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir.1997). Allegations of participation or actual knowledge and acquiescence must be made with particularity. Rode, at 1207, and the mere fact that a defendant may hold a supervisory position is insufficient to find liability. Williams v. Horn, 971 F.Supp. 948, 947 (E.D.Pa. 1997).

[8] To show personal involvement by defendant Vaughn, plaintiff points to deposition testimony of defendant Vaughn that he signed the Extraordinary Occurrence Report outlining the 1994 stabbing of plaintiff. (Vaughn Dep. at 28). Plaintiff also asserts that "as superintendent (sic) had the responsibility to ensure that plaintiff was not placed back in general population" when he returned to Graterford. (Plaintiff. Resp. at 193). Plaintiff also states Vaughn was "in charge of the institution at Graterford." (Plaintiff. Resp. at 193). Defendants assert that defendant Vaughn cannot be held liable under Section 1983 because he was not personally involved in the alleged constitutional deprivation.

Plaintiff has not offered any evidence demonstrating that Vaughn has personal involvement in the alleged violation of plaintiff's Eighth Amendment rights. With respect to the 1996 incident, Vaughn stated that he was not involved in deciding plaintiff's placement in general population. (Vaughn Dep. at 83). Both plaintiff and defendant Vaughn's conduct must have a connection to plaintiff's injury... Vaughn testified that before the February 21, 1996 incident, plaintiff did not contact him about his desire to be removed from general population. (Pearson Dep. at 83; Vaughn Dep. at 77). Plaintiff's reliance on defendant Vaughn's supervisory role is not an appropriate basis for liability in this case. Therefore, because plaintiff has failed to show any participation, knowledge or acquiescence in the alleged consti-tutional violation, I will grant summary judgment as to defendant Vaughn.

## 2. *Murray*

[9-11] Plaintiff asserts that defendant Murray violated his Eighth Amendment right by failing to protect him from the physical injuries sustained in the February 21, 1996 attack. A prison official has a duty to protect inmates from attacks by other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To prevail on a failure to protect claim, an inmate must make two showings. First, an inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834, 114 S.Ct. 1970. Second, an inmate must show that the official "knows of and disregards an excessive risk to inmate health and safety"; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. To survive a summary judgment motion, a plaintiff must show: "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997) (internal citations omitted).

### a. Substantial risk of serious harm

A prisoner must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. In determining whether the risk of an inmate being assaulted by other inmates is suffi-

ciently serious to trigger constitutional protection under the Eighth Amendment, "the focus must be, not the extent of physical injuries sustained in the attack, but rather the existence of a substantial risk of serious harm." *Thomas v. Vaughn*, No. 97-0928, 1998 WL 647270 * 5 (E.D. Pa. September 21, 1998) (internal citation omitted). Defendants claim that plaintiff's general fear for his safety does not establish a substantial risk of serious harm. In support of this assertion, defendants point to two cases in which courts have held that "he is incarcerated under conditions posing a general fear of harm is not sufficient to establish that plaintiff faced a substantial risk of serious harm." *See Farmer v. Brennan*, No. 96-353[...], 1997 WL 51558 *2 (9th Feb.6, 1997) (unpublished disposition); *Davis v. Scott*, 94 F.3d 444, 447 (8th 1996).[8]

In this case, plaintiff has presented dence upon which a factfinder could clude that plaintiff was subjected to a stantial risk of serious harm. Plaintiff defendant Murray that he had suffered serious assault at Graceford while [...] in general population in 1994 and [...] for his safety in general population [...] defendant Murray's deposition, he [...] alleged comments did not pro[...] rely with the names of particular [...] whom he feared would harm him, [...] Murray did not act with delibera[...] regerce to plaintiff's safety.

### b. Deliberate indifference

Plaintiff must also show that the harm [...] red resulted from defendant Murray's [...] berate indifference to plaintiff's safety. *Hamilton*, 117 F.3d at 747. Plaintiff [...] present evidence 1) that the defen[...] was aware of facts from which the [...] infer a substantial risk of serious [...] and 2) that defendant actually drew [...] inference. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. When evaluating [...] er a prison official was deliberately [...] ed, a court must "focus [on] what a [...] ant's mental attitude actually was [...] rather than what it should have [...] or should be)." *Hamilton*, 117 F.3d [...] (quoting *Farmer*, 511 U.S. at 837, [...] S.Ct. 1970).

[...] dants contend that defendant [...] did not act with deliberate indif[...] by failing to place plaintiff in ad[...] rative custody. In support of this [...] on, defendants argue that their actions [...] violate clearly established statutory or con[...]

The inmates on plaintiff's enemies [...] no longer incarcerated at the prison [...] at 446. However, the inmate told [...] cials that he believed friends of t[...] enemies would try to harm him if the [...] was returned to general population [...] When returned to general population [...] never did recall having any conver[...] plaintiff. (Murray Dep. at 25). [...] fied that plaintiff did not re[...] to be removed from general [...] (Murray Dep. at 40). Plain[...] ed Murray informed plaintiff [...] [...]ticked plaintiff's file. Mur[...] fied that because plaintiff was [...] general population, housing [...]

tiff testified that prison officials [...] security office told plaintiff that he [...] had not been housed in general [...] tion because he was attacked at Gra[...]

[...] When plaintiff requested that [...] ed in administrative custody, [...] plained that he had suffered a [...] sault at Graceford. Defendant [...] not recall having any conver[...] plaintiff. (Murray Dep. at 25). [...] fied that plaintiff did not re[...] to be removed from general [...] (Murray Dep. at 40). Plain[...]

### C. *Qualified Immunity*

[12] Defendant Murray argues that he is shielded from liability by qualified immunity. "As government officials engaged in discretionary functions, [d]efendants are qualified[y] immune from suits brought against them for damages under section 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherwood v. Mulvihill*, 113 F.3d 396, 398-99 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Thus, *Harlow* provides the court with an objective standard against which to measure the official's actions. When applying this objective standard, the court must resolve two issues: (1) Has the plaintiff stated a violation of a constitutional or federal statutory right? *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); and (2) If so, was that right clearly established, i.e., were the "contours of the right . . . sufficiently clear that a reasonable official would understand that what [he or she] is doing violates that right"? *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523

Taking plaintiff's version of the facts as true, I conclude that a genuine question of fact exists regarding the substantial risk of serious harm and defendant Murray's deliberate indifference, granting summary judgment as to defendant Murray is not appropriate.

Because a genuine issue of material fact [...] plaintiff in administrative custody was un[...] necessary. However, according to plain[...] tiff, Murray could not have checked his file because his records were still at Dallas. Plaintiff was not placed in administrative custody until after the February 21, 1996 stabbing.

---

[18.] In *Turner*, a inmate who was a material witness against his former cellmate, claimed that prison officials failed to protect him by placing him in general population. 1997 WL 51558 *2. According to the inmate, he notified officials that his cellmate had friends at the prison and he could not identify those inmates whom he feared. *See id.* The court determined that plaintiff had expressed only a general fear of harm by other inmates and failed to create a general issue of triable fact as to the risk of serious harm." *Id.*

Similarly, in *Davis*, an inmate alleged that prison officials had failed to protect him from an assault by another inmate. 94 F.3d at 445.

(1987); *see also Rouse v. Plantier,* 182
F.3d 192, 200 (3d Cir.1999).

Defendant Murray asserts that he did
not violate a clearly established constitu-
tional right because plaintiff expressed
only a general fear for his safety. At the
time of the events at issue, the law clearly
established that prison officials have a
duty to protect prisoners from attacks by
other prisoners. *See Farmer v. Brennan,*
511 U.S. at 833, 114 S.Ct. 1970. "A prison
official's deliberate indifference to a sub-
stantial risk of serious harm to an inmate
violates the Eighth Amendment." *See id.*
at 828, 114 S.Ct. 1970. Because plaintiff
has presented sufficient evidence to create
a genuine issue of material fact as to
whether defendant Murray was deliberate-
ly indifferent to plaintiff's safety, granting
summary judgment on the basis of quali-
fied immunity is not appropriate.[19]

**AND NOW,** this — day of June, 2000,
**IT IS ORDERED** that:

1. Defendants' motion for summary
judgment (Docket Entry # 27) is
**GRANTED** as to defendant Vaughn.

2. Defendants' motion for summary
judgment (Docket Entry # 27) is
**GRANTED** as to plaintiff's claims for
money damages against defendant Mur-
ray in his official capacity; and

3. Defendants' motion for summary
judgment (Docket Entry # 27) is **DE-
NIED** as to defendant Murray in his
individual capacity.

---

[19] The following issues in this case remain
unresolved: 1) in plaintiff's complaint, he
brings suit against defendants under 42
U.S.C. § 1983, § 1985, § 1986 alleging that

defendants violated his right to equal protec-
tion under the Fourteenth Amendment; 2)
whether defendants Winder and Smith
remain part of this litigation.



---

Carl CLARK, David Barger and Edward
Schwab, individually, and on behalf of
all others similarly situated, Plain-
tiffs,

v.

WITCO CORPORATION, Defendant.

No. CIV. A. 98-300 ERIE.

United States District Court,
W.D. Pennsylvania.

Jan. 13, 2000.

Former employees brought action
against employer to recover severance
benefits under division-specific employee
handbook after their division was sold. On
the District Court, McLaughlin, J., held
that: (1) severance policy in employee
handbook, applied to determine rights of
terminated employees' rights, and (2) sev-
erance policy in handbook, applied to de-
termine employees' rights, and (2) sev-
erance policy was reasonable under the
der plan.

Motion granted.

1. Pensions ⟂68, 122
Employer's division-specific employee
handbook had adequate amendment proce-
dure, and thus subsequently enacted per-
sonnel policy in employee's company-wide
personnel manual, not severance policy in
handbook, applied to determine rights of
employees affected by sale of division,
even if revised amendment procedure in
manual was not disseminated to employ-
ees; handbook and manual were intended
to be read together, manual's purpose was
to "keep current with the latest develop-
ments in personnel policy and procedures
as they are approved," and manual stated
that had authority to amend policy

Cite as 102 F.Supp.2d 292 (W.D.Pa. 2000)

ployee Retirement Income Security Act of
1974, § 402(b)(3); 29 U.S.C.A. § 1102(b)(3).

2. Pensions ⟂68
Employer's denial of severance bene-
fits to employees who continued their
division was reasonable under severance
policy that expressly provided that em-
ployees were not entitled to receive bene-
fits if their termination of employment
was result of "sale of ... stock or assets." Employee Retirement
Income Security Act of 1974, § 2 et seq., 29
U.S.C.A. § 1001 et seq.

---

John Paul Garhart, Arthur D. Martinu-
Quinn, Buseck, Leemhuis, Toohey &
Kroto, Inc., Erie, Pa, for Plaintiffs.

Thomas A. Donovan, Kirkpatrick &
Lockhart, Pittsburgh, PA, Kenneth A.
Margolis, Laura Sack, Kauff, McClain &
McGuire, New York City, for Defendant.

**MEMORANDUM OPINION
AND ORDER**

McLAUGHLIN, District Judge.

This civil action arises out of the sale of
Witco's specialty and blending and packaging
division in Bradford, Pennsylvania. Plain-
tiffs claim they are entitled to severance
benefits because the sale effectively ended
their employment relationship with the
company. Presently pending before the
Court is Defendant's Motion to Dismiss or,
in the alternative, for Summary Judgment.
For the following reasons, the motion is
granted.

**I. Background**

Defendant Witco Corporation ("Witco")
is a global specialty manufacturer with
facilities located throughout the United
States and around the world. *See*
Donovan Aff. ¶ 2. In the past, it owned
the Sonneborn/Amalie Division which was
located in Bradford, Pennsylvania. *See id.*
¶ 4. Witco owned a refinery and blending
and packaging plant in Bradford, Pennsylvania

(" Bradford Refinery"). *See id.* ¶ 5. Plain-
tiffs David Barger, Carl Clark and Ed-
ward Schwab are all former employees of
Witco; they for worked for Witco at the
Bradford Refinery until February 28, 1997,
the date it was sold. *See* Barger Aff. ¶¶ 2-
3; Clark Aff. ¶¶ 2-3; Schwab Aff. ¶¶ 2-3.

On October 1, 1976, Witco issued a
handbook ("Bradford Handbook") which
was a site-specific procedures manual.
*See* Tabakman Aff. ¶ 19. It complemented
and did not supersede or supplant the
more comprehensive Witco Personnel
Manual. *See id.* The Bradford Handbook
included a severance benefit policy which
provided, "In any instance where the Com-
pany terminates employment through no
fault of the employee and provided the
employee has not reached age sixty-five
(65) or has not become totally disabled,
such employee shall be entitled to a lump
sum severance pay." Sack Aff. Ex. A at
20. The severance benefit would be calcu-
lated according to years of service but was
not to exceed fifty days pay. *See id.*

Between 1978 and 1997, Witco adopted
at least eight different severance policies,
including in 1978, 1981, 1983, 1987, 1991,
September 1995, November 1995 and 1997.
*See* Tabakman Aff. ¶ 20. Each of these
policies provided that employees whose
employment was continued by a successor
company were not eligible for severance
benefits. *See id.* In November of 1995,
Witco announced that it planned to divest
its Lubricants Group. *See id.* ¶ 6. It in-
formed its employees that it had designed
a severance program for Lubricants Group
employees not offered employment with
the buyer or within Witco, according to
the 1976 program was more generous
than that established in the 1976 hand-
book. *See id.* ¶ 7. The letter provided, "If
you are not offered employment with the
prospective buyer(s), or within Witco, you
will be entitled to ... an enhanced sever-
ance pay program [which will provide] 1½
weeks pay for each year of service, with a
minimum of 12 weeks and a maximum of
52 weeks." *Id.* Ex. A. It also stated,